# In the United States Court of Federal Claims

## No.  17-1812C
### (Filed: January 24, 2020)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| \* | |
| **GIESECKE & DEVRIENT GMBH,** \* | **Patent Infringement; Motion** |
| \* | **for Attorney Fees; 35 U.S.C. §** |
| **Plaintiff,** \* | **285; Exceptionality;** |
| \* | **Prevailing Party.** |
| **v.** \* | |
| \* | |
| **THE UNITED STATES,** \* | |
| \* | |
| **Defendant,** \* | |
| \* | |
| **CSRA, INC.,** \* | |
| \* | |
| **Third-Party Defendant,** \* | |
| \* | |
| **GEMALTO, INC.,** \* | |
| \* | |
| **Third-Party Defendant,** \* | |
| \* | |
| **IDEMIA IDENTITY** \* | |
| **& SECURITY USA, LLC,** \* | |
| \* | |
| **Third-Party Defendant,** \* | |
| \* | |
| **HID GLOBAL CORP.,** \* | |
| \* | |
| **Noticed Nonparty.** \* | |
| \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Jay F. Utley, Brian C. McCormack, W. Bart Rankin, D. Yoon Chae, Baker & McKenzie, LLP, 1900 N. Pearl Street, Suite 1500, Dallas, TX 75201, for Plaintiff.

Lionel M. Lavenue, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Two Freedom Square, 11955 Freedom Drive, Reston, VA 20190, for noticed nonparty HID Global Corporation.

---

**OPINION AND ORDER**

---

**WILLIAMS**, Senior Judge.

This matter comes before the Court on noticed nonparty HID Global Corp.'s ("HID"), motion seeking attorney fees and costs pursuant to 35 U.S.C. § 285. After almost a year of litigation, Plaintiff Giesecke & Devrient GmbH ("Giesecke") withdrew its infringement claims against HID's products. Because HID is a prevailing party and the case is exceptional under 35 U.S.C. § 285, HID's motion is granted as to entitlement to attorney fees.[1]

## Background and Procedural History[2]

Giesecke is a German technology company offering "pioneering passport technologies . . . used for secure and efficient border controls." First Am. Compl. ¶¶ 2, 9. Giesecke is the sole owner and assignee of U.S. No. Patent 7,837,119, (the '119 patent), entitled "Contactless Data Carrier," which "generally describes apparatuses and methods for reliably determining the deliberate use of a contactless data carrier." Id. ¶¶ 12, 15. The '119 patent describes a "contactless data carrier" as "all arrangements[] which have a microchip and an antenna connected to it and are adapted to exchange data with a suitable reading device." First Am. Compl., Ex. A at 7. The '119 patent states that such data carriers include "contactlessly readable identification documents, such as passports and identity cards with built-in microchip as well as, furthermore, RFID [Radio Frequency Identification] labels." Id.

HID is a corporation which provides the United States with two types of identity cards: Permanent Resident Cards (aka "Green Cards") and Global Entry cards (collectively, the "card-based products"). Ex. M to ECF No. 16; Fees Hr'g Tr. 7.[3]

## The Complaint and Giesecke's Infringement Theory for Card-based Products

On November 17, 2017, Giesecke filed its original complaint accusing the Government of infringing the '119 patent through use and manufacture of contactless data carriers and devices, such as United States Passport Cards ("ePassports") and other official identification cards, including HID's card-based products. Compl. ¶¶ 2, 12, 20, 26. The complaint states:

> On information and belief, examples of infringing contactless data carriers include, without limitation, electronically enabled machine readable travel documents

---

[1] This opinion confirms the Court's oral ruling on liability on July 8, 2019. ECF No. 111. The timing of issuance of this decision reflects the fact that following that ruling, the case was transferred to the Honorable Ryan T. Holte, and Plaintiff and HID agreed to mediate the issue of the quantum of attorney fees with the undersigned. However, that mediation was unsuccessful.

[2] This background is derived from Giesecke's first amended complaint, HID's motion for attorney fees, the parties' motion papers, and the hearing on HID's motion for attorney fees held on July 8, 2019.

[3] "Fees Hr'g Tr." refers to the July 8, 2019 hearing on HID's motion for attorney fees. ECF No. 111. "Mot. to Dismiss Hr'g Tr." refers to the October 30, 2018 hearing addressing HID's motion to dismiss the first amended complaint and Giesecke's motion for leave to file the second amended complaint. ECF No. 58.

(eMRTDs) . . . such as . . . United States Passport Cards, Permanent Resident Cards (a.k.a. Green Cards), and Global Entry cards, <u>that meet the requirements of the International Civil Aviation Organization (ICAO)</u> . . . .

Compl. ¶ 20 (emphasis added).[4]

The sole specific infringement theory Giesecke articulated as to the card-based products was based on ICAO-compliance--specifically compliance with Part 9 of ICAO Doc. 9303, which sets standards for machine readable travel documents. Compl. ¶¶ 20-43; ICAO Doc. 9303 (2015). The complaint does not contain any allegations describing how the card-based products infringe any '119 patent claims aside from repeated references to compliance with the ICAO Doc 9303 requirements and a statement that "the United States is a charter member of ICAO . . . and has been in compliance with ICAO standards at all relevant times." Compl. ¶ 21. In its sur-reply to HID's motion for attorney fees, Giesecke states that it "specifically based an infringement theory as it related to the accused card products on the content of the 2015 version of Part 9 of ICAO Doc. 9303." ECF No. 99 at 4.

At oral argument, counsel for Giesecke stated "[for] a card-based product, it is our allegation that if it practiced the [ICAO] 9303 standard, that would be the type of a product that would, in fact, in our view, practice one or more of the asserted claims." Fees Hr'g Tr. 48-49. Giesecke also argued that ICAO-compliance was not the sole basis on which the card-based products could infringe, and that the card-based products were included as "merely an example of the type of product that, if it practiced that [ICAO standard] would infringe." Fees Hr'g Tr. 47-48.

While the complaint includes the card-based products in a list of allegedly infringing eMRTDs (like ePassports) which meet the requirements of the ICAO, Doc. 9303 Part 9, it contains no other theory or factual allegations suggesting how the card-based products might infringe the '119 patent other than the card-based products' compliance with ICAO requirements.[5] Compl. ¶¶ 20-43; ICAO Doc. 9303 (2015).

In HID's view, however, the card-based products do not comply with the requirements of Part 9, or of other ICAO Parts, and thus cannot, by the ICAO's own definition, be enabled machine-readable travel documents, or eMRTDs. ECF No. 63, 7-11. HID argues that the card-based products work entirely differently than eMRTDs. ECF No. 63, 10-11; Fees Hr'g Tr. 7-35.

---

[4]   Giesecke's first amended complaint contains identical allegations against HID's card-based products. <u>See</u> ECF No. 1 ¶¶ 20-21; ECF No. 13 ¶¶ 20-21.

[5]   In contrast, the complaint does contain detailed factual allegations and analyses regarding how non card-based products--ePassports and their associated inspection systems--comply with the ICAO Doc 9303 standard and practice '119 patent claims 1, 14, and 24, which the complaint calls "exemplary infringed claim[s]." Compl. ¶¶ 26-43. The complaint states that these analyses "are provided merely as examples and should not be interpreted as limiting infringement to those types of contactless data carriers, methods, and/or reading devices." Compl. ¶ 25. The complaint continues that the analysis provided with regard to claims 1, 14, and 24 is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure and "does not represent Giesecke's preliminary or final infringement contentions." Compl. ¶ 42.

Thus, HID claims, the card-based products cannot infringe under Giesecke's own theory, and should never have been accused. ECF No. 68 at 8-9; Fees Hr'g Tr. 7-35. All of this, HID alleges, would have been uncovered had Giesecke conducted an adequate prefiling investigation. ECF No. 68 at 2.

**The Requirements of ICAO Doc. 9303 Part 9**

Part 9 delineates standards for the storage and reading of biometric data on eMRTDs.[6]  In order to comply with Part 9, eMRTDs must contain "a contactless integrated circuit, with a data storage capacity of at least 32 kB [256,000 bits]," and must carry the following symbol:



Figure 1.   Chip Inside symbol

ICAO Doc. 9303, Part 9 at 2. (2015).  If a product does not comply with these requirements, it "may not be called an eMRTD." Id.

HID argues that even a cursory inspection of its card-based products would have shown that they lack the "Chip Inside" symbol. ECF No. 63 at 8.  Additionally, HID contends, the card-based products have, at most, 768 bits of storage, falling far short of the 256,000 bits required to comply with Part 9.  Fees Hr'g Tr. 30.  According to HID, this storage discrepancy reflects the stark difference between how card-based products and eMRTDs, such as ePassports, work: the card-based products contain only a RFID number, which is used to retrieve information stored on remote servers. ECF No. 63, 8-11; Fees Hr'g Tr. 30.  The eMRTDs, by contrast, contain an authentication feature and store biometric and biographical information on the embedded chip itself, necessitating 256,000-bit storage capacity.  Fees Hr'g Tr. 7-35.

In sum, HID argues that its card-based products operate entirely differently than ICAO-compliant eMRTDs like ePassports and that a simple visual inspection would have shown that the card-based products lacked the "Chip Inside" symbol, did not comply with Part 9, and thus did not infringe under Giesecke's own theory. ECF No. 68 at 8-9; Fees Hr'g Tr. 7-35.

**HID Moves to Dismiss and Raises Rule 11: Giesecke Seeks Leave to Amend and Drops its Claims Against the Card-based Products**

The Court granted the Government's motion to notify interested parties on April 2, 2018, and Giesecke filed its first amended complaint on April 6, 2018. ECF Nos. 1, 10, 13.  On July 9, 2018, noticed nonparty HID filed a motion under Rule 12(b)(6) to dismiss all allegations relating

---

[6]     Part 9 is titled "Deployment of Biometric Identification and Electronic Storage of Data in MRTDs."  ICAO Doc. 9303, Part 9.

to card-based products in Giesecke's first amended complaint.[7]  ECF No. 41.  In its motion, HID argued that the first amended complaint "fail[ed] to allege *any facts* to support the claims of infringement with respect to the [card-based products]."  Id. at 7 (emphasis in original).  HID contended that the complaint only alleged facts and analysis relating to infringement by ePassports, and that Giesecke was required to set forth factual allegations "showing how each accused product or service specifically . . . meet[s] at least one claim limitation."  ECF No. 41 at 6 (quoting Comcast Cable Comm., LLC v. OpenTV, Inc,. 319 F.R.D. 269, 273 (N.D. Cal. 2017)) (emphasis omitted)).

On August 6, 2018, Giesecke filed its opposition to the motion to dismiss, arguing "the [complaint] makes the well-supported allegation that the [card-based products] comply with substantially the same ICAO standards and/or others as the [ePassports] and similarly meet the limitations of the Asserted Claims."  ECF No. 44 at 11.  Giesecke maintained this position until October 16, 2018, when Giesecke filed its motion for leave to amend the complaint.  ECF No. 52. Thus, Giesecke continued opposing HID's motion to dismiss for over three months after it was placed on notice of the deficiencies that HID identified in Giesecke's allegations against the card-based products.

In a footnote in its motion to dismiss, HID noted that Rule 11(b) required Giesecke to conduct a prefiling investigation and that, when a pleading is filed, an attorney "certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support."  Rule 11(b); ECF No. 41 at 8, n.3.  HID did not comment "at this time . . . on whether [Giesecke had] complied" with Rule 11, but "reserve[d] the right to do so."  ECF No. 41 at 8, n.3.  Giesecke, HID stated, "had a prefiling duty under [Rule 11(b)] to actually investigate and compare each of the accused products with the patent claims."  ECF No. 41 at 8, n.3 (emphasis in original).  HID argued that if the Court were to find that Giesecke had violated this duty, "sanctions could be appropriate" under Rule 11(c).  Id.

Briefing on HID's motion to dismiss was completed on August 20, 2018.  ECF No. 45.  On September 26, 2018, over two months after filing HID's motion to dismiss, counsel for HID sent a letter to counsel for Giesecke, which stated "this letter serves as formal notice that [HID] is preparing a motion for sanctions against [Giesecke] under Rule 11, and that HID plans to seek full recoupment of fees and costs."  ECF No. 52, Ex. 2 at 2.  HID cited the card-based products' lack of a "Chip Inside" symbol and claimed that "[e]ven the most limited inspection . . . would have shown that the accused card products do not operate as claimed in [the']119 patent] or in a manner similar to the US Passport."  Id. at 2-3.  The letter continued: "it is inconceivable that an industry veteran, like [Giesecke], which itself manufactures and tests card products complying with the doc 9303 standard, or its counsel, did not know of its pre-filing obligations to perform such a simple inspection."  Id.  HID did not, however, file a motion for sanctions under Rule 11.

On October 16, 2018, Giesecke filed a motion for leave to file a second amended complaint dropping the claims against the card-based products and making some minor clarifications to the other allegations.  ECF No. 52 at 1.  HID opposed this motion.  ECF Nos. 52, 54.  HID argued that permitting Giesecke to amend its complaint and having the claims against the card-based products dismissed without prejudice would leave HID with a "Damoclean sword hanging over our head, that [Giesecke] could bring the card-based products back into the case as to HID later."  Mot. to

---

[7]      Neither the Government nor any other noticed nonparty joined in HID's motion.  ECF No. 41.

Dismiss Hr'g Tr. 17.  Instead, HID asked the Court to grant its pending Rule 12(b)(6) motion and dismiss the claims against the card-based products with prejudice, thus ensuring the claims were "gone forever."  ECF No. 58 at 14.

At oral argument on October 30, 2018, counsel for Giesecke represented that Giesecke was removing the card-based products from the case, that it would not seek discovery against the card-based products, and that it would not add the products back into the suit and had no intention to file a separate suit against the card-based products that could implicate HID.  Mot. to Dismiss Hr'g Tr. 44-45.  Counsel for Giesecke stated at oral argument that it dropped its claims against the card-based products to "streamline the case . . . and that happens in almost every patent case."  Fees Hr'g Tr. 75.

On December 28, 2018, the Court granted Giesecke's motion to amend its complaint and dismissed the claims Giesecke sought to withdraw against several accused card-based technologies—including HID's Permanent Resident Cards and Global Entry Cards—without prejudice.  ECF No. 59.  The Court deemed dismissal of the withdrawn claims with prejudice to be inappropriate given that no adjudication of these claims had occurred.  See Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1416 (Fed. Cir. 2004) ("The dismissal of a claim with prejudice, however, is a judgment on the merits under the law of the Federal Circuit."); Davis v. United States, 961 F.2d 53, 57 (5th Cir. 1991) (holding that it was incorrect for the district court to dismiss case with prejudice without reaching the merits of the case).

## HID Moves for Attorney Fees, and Mediation is Unsuccessful.

On January 28, 2019, HID filed its motion for attorney fees and costs under 35 U.S.C. § 285, or, in the alternative, this Court's inherent authority.  ECF No. 63.  HID argued that it was entitled to attorney fees under Section 285 because Giesecke failed to conduct an adequate prefiling investigation.  ECF No. 63 at 1-2.  HID claimed that a brief visual inspection would have shown that the card-based products lacked the "Chip Inside" symbol and thus did not comply with Part 9, and argued that Giesecke's failure to take this simple step prior to bringing infringement claims and subjecting HID to substantial litigation costs makes this case exceptional under Section 285.  ECF No. 63 at 7 (internal quotations omitted).  HID also claimed that it was a prevailing party because its motion to dismiss caused Giesecke to amend its complaint to drop its contentions against HID.  ECF No. 63 at 14.  Alternatively, HID argued that this Court should exercise its inherent authority to award attorney fees and costs.  ECF No. 63 at 1, 15; Fees Hr'g Tr. 11.

Opposing HID's fees motion, Giesecke argued that its prefiling investigation was adequate and that HID was not a prevailing party under Section 285 because Giesecke voluntarily dismissed its claims against HID's card-based products.  ECF No. 72 at 2, 6; Fees Hr'g Tr. 58-62, 99-107. Giesecke also argued its conduct did not meet the high threshold for an exercise of the Court's inherent power to award attorney fees and that HID's fees motion violated Rule 54(d)(2)(B), the rule governing post-judgment motions for attorney fees, as it failed to state the amount sought. ECF No. 72 at 19, 20; Fees Hr'g Tr. 58.

On February 27, 2019, the Court granted HID's motion to bifurcate the issues of entitlement to, and quantum of, attorney fees.  ECF No. 76.  On July 8, 2019, the Court heard oral argument as to entitlement.  ECF No. 111.  In an off-record colloquy, the Court orally granted HID's motion as to entitlement to attorney fees.  Id.

On July 29, 2019, counsel for HID and Giesecke informed the Court that they wished to pursue settlement as to the quantum of any Section 285 fees through the Court of Federal Claims' Alternative Dispute Resolution ("ADR") program.   ECF No. 118.   On that same date, this case was reassigned to Judge Ryan T. Holte.   ECF No. 116.   On July 30, 2019, Judge Holte referred the matter of quantum to the undersigned for ADR.   ECF No. 118.   That ADR was ultimately unsuccessful.

This opinion memorializes and explains the Court's oral ruling as to HID's entitlement to attorney fees, but does not address the issue of quantum, which is now pending before Judge Holte.

## Discussion

The Patent Act states that a district court "in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  Thus, in order to award attorney fees, the Court must find that this case is "exceptional" and that HID is a "prevailing party."

## Exceptionality

The Supreme Court has held that an exceptional case

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.  District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Octane Fitness, LLC v.  ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014).

In Octane Fitness, the Supreme Court rejected a "rigid and mechanical formulation" of exceptionality in favor of a "flexible" and holistic approach.  572 U.S. at 550, 555.  The Court noted that since "there is no precise rule or formula for making these determinations . . . equitable discretion should be exercised."  Id. at 554 (internal citations omitted).  Courts are to consider the totality of the circumstances in their analysis, and the movant bears the burden of proving exceptionality by a preponderance of the evidence.  Id. at 557.

"The determination whether a case is 'exceptional' is indisputably committed to the discretion of the district court."  Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479, 482 (Fed. Cir. 2016) (citing Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 (2014)).  The exceptional-case determination is reviewed for abuse of discretion.  Highmark, 572 U.S. at 563.  "An abuse of discretion occurs when a district court's decision commits legal error or is based on a clearly erroneous assessment of the evidence."  Univ. of Utah v. Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften e.V., 851 F.3d 1317, 1322 (Fed. Cir. 2017) (affirming the district court's exceptionality determination, noting that "[t]he trial judge was in the best position to understand and weigh" the issues and that she "had no obligation to write an opinion that reveals her assessment of every consideration").

Courts making an exceptionality determination may consider the "frivolousness, motivation, [and] objective unreasonableness (both in the factual and legal components of the case)" of a party's allegations, as well as "the need in particular circumstances to advance

considerations of compensation and deterrence." Octane Fitness, 572 U.S. at 554, n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  A party's "unreasonable conduct," while "not necessarily independently sanctionable" under Rule 11, may nonetheless make a case exceptional.  Octane Fitness, 572 U.S. at 555.  "[A] case presenting . . . exceptionally meritless claims may sufficiently set itself apart" to be deemed exceptional.  Univ. of Utah, 851 F.3d at 1322 (quoting Octane Fitness); see also Nova Chems. Corp. v. Dow Chem. Co., 856 F.3d 1012, 1017 (Fed. Cir. 2017) (finding that "[t]he substantive strength of a party's litigating position[]—i.e., whether it is objectively baseless—[can] independently support an exceptional-case determination").

The Court concludes that this case is exceptional, considering the lack of basis in Plaintiff's ICAO-compliance infringement theory against the card-based products, Plaintiff's failure to provide any factual support for its prefiling investigation, and considerations of deterrence and compensation.  First, Giesecke's complaint articulates only one putative theory of infringement regarding the card-based products: ICAO-compliance.  This theory, however, should have been quickly neutralized by the card-based products' lack of both a "Chip Inside" symbol and the 32 kB storage required by the ICAO.  As HID points out, a basic visual inspection of the card-based products would have uncovered the lack of a "Chip Inside" symbol.  That Giesecke nonetheless "specifically based" its infringement theory on ICAO Doc. 9303 Part 9 strongly undermines the factual and legal sufficiency of this allegation.[8]  ECF No. 99 at 4.

At oral argument, counsel for Giesecke argued that it had a good faith basis for its claims because HID "may" produce cards that practice the '119 patent claims but do not comply with the ICAO requirements.  Fees Hr'g Tr. 54.  However, counsel for Giesecke could not identify any such cards or say whether HID ever produced them.  Fees Hr'g Tr. 53-54.  At any rate, Giesecke did not mention any such cards in its original or first amended complaint, or in its papers opposing HID's motion to dismiss or motion for attorney fees.  See generally ECF Nos. 1, 13, 44, 72, 99.

Further, Plaintiff provided the Court with no objective evidence detailing or explaining Giesecke's prefiling investigation.  In its response to HID's motion for attorney fees, counsel for Giesecke stated that its prefiling investigation lasted a year.  ECF No. 72 at 2.  Specifically, counsel for Giesecke represented that Giesecke first reviewed the '119 patent in order to determine its scope, then performed a preliminary claim construction, reviewed publicly available information, including that on HID's website, relating to all of the accused products, and visually inspected both the ePassports and the card-based products.  Id. at 2-3.  However, none of these representations were supported by declarations or documentary evidence despite the fact that conduct and adequacy of Giesecke's prefiling investigation were squarely at issue in the subject motion for fees.

---

[8]      In its response to the fees motion, Giesecke argues that, because its complaint references compliance with the ICAO requirements "and/or others," it did articulate other standards that the products could practice and infringe, such as the standard "specified under the Western Hemisphere Travel Initiative (WHTI)"  See ECF No. 72 at 12, n.4.  However, Giesecke did not reference the WHTI standard in the complaint or any other filings and failed to articulate how card-based technologies could practice or infringe the WHTI standard.  As noted above, Giesecke later stated that it "specifically based" its infringement theory "as it related to the accused card products on the content of . . . [ICAO Doc. 9303 Part 9]," without referencing the WHTI standard.

Although Giesecke claims that its prefiling investigation was memorialized in document form, it declined offers by the Court to review such materials in camera, as the following colloquy reflects:

> THE COURT: Okay. Now, [counsel for HID] suggested that in many of these cases there are two documents in the pocket of a plaintiff. One would be an expert opinion, and the other would be a prefiling memorandum. Those would be privileged. He suggested to me that typically courts review those in camera. You have not proffered those. Number one, do they exist? You just said there was an investigation. Was it memorialized somehow?

> COUNSEL FOR GIESECKE: Your honor, I – as I stand here today, I, frankly, am not sure in what fashion it was memorialized. Certainly there are documents that memorialize those efforts. You know, whether it was done in a type of memorandum as described by counsel, I can't represent for sure if that's the case or not, but what I will say with respect to those cases that were referred to and cited to in HID's briefing and discussed a bit this morning is that they all concern Rule 11. This is not a Rule 11 motion.

> \*       \*       \*

> THE COURT: I would, of course, give you the opportunity, if you wanted to, to file whatever prefiling investigation materials you have with the Court in camera, but you know that. You know that you have the right to ask for leave to do that, and you opted not to.

> COUNSEL FOR GIESECKE: Yes, your honor, and we appreciate the opportunity . . . .

Fees Hr'g. Tr. 55-56, 65-66.

Giesecke also claimed that it examined the requirements of ICAO Doc 9303, and subsequently "made the good-faith determination that products complying with ICAO Doc 9303 . . . would practice and infringe one or more of the '119 [p]atent's claims." ECF No. 72 at 3. Again, no contemporaneous documents or sworn statements support this post hoc description of Giesecke's prefiling process.

In sum, Giesecke never tendered any declarations, expert opinions, or documents supporting Plaintiff's prefiling investigation to the Court for in camera review. Thus, Giesecke presented the Court no evidence to support its claims of an extensive prefiling investigation, nor to explain how its investigation failed to detect the obvious lack of a "Chip Inside" symbol on the card-based products. ECF No. 99 at 5.

Other circumstances support a finding of exceptionality. Over three months after HID moved to dismiss the claims against the card-based products and some three weeks after HID's Rule 11 letter, Giesecke sought leave to file a second amended complaint to withdraw its claims against the card-based products. Up until that time, however, Giesecke had vigorously opposed

HID's motion, causing HID, the Court, and Giesecke itself to expend time and resources.[9]  In its second amended complaint, Giesecke dropped its allegations against HID's card-based products. Sec. Am. Compl. ¶ 20.

The Federal Circuit affirmed a finding of exceptionality under similar circumstances in Lumen View Tech. LLC v. Findthebest.com, Inc., 811 F.3d 479 (Fed. Cir. 2016).  In Lumen View, the plaintiff was the exclusive licensee of a patent directed to a method of "facilitating bilateral and multilateral decisionmaking" which required preference data from two parties.  Id. at 481.  The district court found that the plaintiff's claims against the defendant's accused products were "objectively unreasonable" because "'the most basic' pre-suit investigation would have shown that the accused . . . [product] feature only used the preference data of one party."  Id.  Though the plaintiff "maintain[ed] that it conducted a pre-suit investigation compliant with Rule 11," it did not provide any evidence of its prefiling investigation.  Id. at 482-83.  Considering what it termed the plaintiff's "baseless" allegations and the "absence of any reasonable pre-suit investigation," the district court found that the case was exceptional under Section 285.  Lumen View Tech., LLC v. Findthebest.com, Inc., 24 F. Supp. 3d 329, 337 (S.D.N.Y. 2014).  In its decision affirming the district court's finding of exceptionality, the Federal Circuit stated that even if the plaintiff's litigation conduct was "not quite sanctionable, the [trial] court reasonably determined that the case was exceptional."  Lumen View, 811 F.3d at 483; see also UltimatePointer, LLC v. Nintendo Co., No. C14-0865RSL, 2015 WL 3822577, at *2 (W.D. Wash. Mar. 11, 2015), aff'd sub nom. Ultimatepointer, L.L.C. v. Nintendo Co., 640 F. App'x 968 (Fed. Cir. 2016) (finding a case exceptional where the plaintiff's prefiling investigation was deficient and its claims against the majority of accused products were "unnecessary and unsupported").

Here, as in Lumen View, even a cursory prefiling investigation would have revealed that Giesecke's infringement allegations against the card-based products were untenable because those products lacked two readily verifiable characteristics covered by Part 9 of the ICAO standard--the "Chip Inside" symbol and the minimum 32-kB storage capacity.  Also similar to Lumen View, Giesecke has failed to proffer any evidence of its prefiling investigation.  While as in Lumen View, Plaintiff's litigation conduct here may not be sanctionable under Rule 11,[10] the lack of a reasonable basis for infringement allegations and absence of evidence of an adequate prefiling investigation weigh in favor of finding exceptionality.  See Lumen View, 811 F.3d at 484.

Considerations of compensation and deterrence also favor a finding of exceptionality here. As Chief Justice Roberts has observed, "patent litigation is particularly complex, and particularly costly."  F.T.C. v. Actavis, Inc., 570 U.S. 136, 170 (2013) (Roberts, C.J., dissenting).  As a result, "Congress enacted Section 285 not only to deter frivolous claims and bad faith litigation (which are already covered by other statutes and rules), but also [to deter] lawsuits that are simply exceptional in that they 'stand out.'"  Iris Connex, LLC v. Dell, Inc., 235 F. Supp. 3d 826, 845 (E.D. Tex. 2017).  Consequently, "the threat of Section 285 looming overhead provides a check

---

[9]      HID filed its motion to dismiss on July 9, 2018, and Giesecke filed its opposition on August 6, 2018.  ECF Nos. 41, 44.  Counsel for HID sent its letter raising Rule 11 on September 26, 2018, and Giesecke sought leave to file its second amended complaint dropping its claims against the card-based products on October 16, 2018.  ECF No. 52, Ex. 2.

[10]      In the instant case, HID did not seek sanctions under Rule 11.

and balance meant to deter exceptional cases by imposing a direct and significant financial risk." Id.

Unlike many Section 285 requests, this case is in the early stages of litigation--a circumstance which also contributes to its exceptionality, in that it did not take much development of a record--no discovery, no trial, and no fact-finding--for Giesecke to delete its allegation that the card-based products were infringing. Cf. Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd., No. CV 15-634-JFB, 2019 WL 1877189, at *7 (D. Del. Apr. 26, 2019) (holding that a "hotly contested" case resulting in trial verdict not exceptional); Brigham & Women's Hosp., Inc. v. Perrigo Co., 251 F. Supp. 3d 285, 293 (D. Mass. 2017), reconsideration dismissed, No. CV 13-11640-RWZ, 2017 WL 3298671 (D. Mass. Aug. 2, 2017) (finding no exceptionality where case was "vigorously litigated" through trial.)  In this Court's view, overly broad allegations of infringement which apparently implicate wrongly accused products, without evidence of a prefiling investigation, make this case "stand out" from others when considering deterrence of this type of litigation conduct.  Octane Fitness, 572 U.S. at 554.

In the highly competitive arena of dueling technologies, being wrongly accused of infringing a competitor's patent can have a deleterious effect.  It is costly to defend a complex patent lawsuit, and being accused of infringement may be damaging to one's "brand" or reputation. Here, HID was forced to expend resources from the time it received notice of the suit on April 4, 2018, until the Court's December 28, 2018 Order dismissing Giesecke's claims against the card-based products. ECF Nos. 10, 59.  As HID argues, these fees and costs could have been avoided if Giesecke had performed a cursory review of these products before it accused the card-based technology of infringing its patent or at least eliminated the card-based products from the suit as soon as it was on notice of its deficient allegations.

Plaintiff has made no showing that it had an objectively reasonable basis for including these products in this suit in the first place.  Plaintiff's amorphous theory about the card-based technologies' compliance with the ICAO standard was unsupported.

Accordingly, considering the totality of the circumstances and applying the preponderance of the evidence standard, the Court finds that this case is exceptional under 35 U.S.C. § 285. Octane Fitness, 572 U.S. at 554.

## HID Is a Prevailing Party Because Its Legal Relationship with Giesecke Has Been Materially Altered.

Under Section 285, a court may only award reasonable attorney fees to the prevailing party. The Supreme Court has found that a favorable judgment on the merits is not necessary for a defendant to be deemed a prevailing party for purposes of statutory fee-shifting.  CRST Van Expedited, Inc.  v.  EEOC, 136 S. Ct. 1642, 1651 (2016).  In CRST, the Court stated that the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties."  Id.  at 1646 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S.  782, 792-93 (1989)).  The Court stated that "[c]ommon sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits."  Id. at 1651.  The Court further stated that "[t]he defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reasons."  Id.

In the wake of CRST, the Federal Circuit in Raniere v. Microsoft Corporation, 887 F.3d 1298 (Fed. Cir. 2018), explained that that the post-CRST prevailing-party inquiry "is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision—'a judicially sanctioned change in the legal relationship of the parties'—effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" 887 F.3d at 1306 (quoting CRST, 136 S. Ct. at 1651). Here, the Court's refusal to even join HID as a party defendant completely rebuffed Giesecke's attempt to secure any relief against HID for infringement.

Giesecke argues that HID is not a prevailing party under Section 285 because voluntary dismissal of claims without prejudice does not confer prevailing party status under Raniere. ECF 72 at 6. Giesecke argues that HID's "only involvement in this matter was to file an unsuccessful Rule 12(b)(6) [motion to dismiss], and to unsuccessfully challenge Giesecke's [m]otion to [a]mend." Id. at 7. Giesecke minimizes the relief HID achieved--HID was never named as a party defendant.

Giesecke further argues that HID did not prevail because HID did not achieve its "primary focus," which was a dismissal of the claims asserted against it with prejudice. Id. Plaintiff's insistence that the dismissal had to be "with prejudice" to confer prevailing party status elevates form over substance. The moniker of a dismissal "without prejudice" should not be used to color what happened here. Under Rule 41(a)(2), a voluntary dismissal by court order is "without prejudice" unless the court finds that the defendant will suffer legal prejudice, such as when a plaintiff "does not seek dismissal until a late stage" in the litigation. See Puerto Rico Mar. Shipping Auth. v. Leith, 668 F.2d 46, 50 (1st Cir. 1981); Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc., 903 F.2d 352, 360 (5th Cir. 1990); Pace v. S. Exp. Co., 409 F.2d 331, 334-35 (7th Cir. 1969) (affirming denial of voluntary dismissal without prejudice where case had been pending for one and one-half years, considerable discovery had been conducted, and defendant had already briefed its motion for summary judgment.)

Dismissals "with prejudice" are typically reserved for adjudications of the merits of a claim. See Mich. Surgery Inv., LLC v. Arman, 627 F.3d 572, 576 (6th Cir. 2010); Jaramillo v. Burkhart, 59 F.3d 78, 79 (8th Cir. 1995). Here, the Court was not asked to go so far as to adjudicate Giesecke's claims against HID, and it would have made little sense to force the parties to go through a charade of a merits determination no one wanted simply to apply the moniker "with prejudice."

The Court recognizes that describing a dismissal as being "without prejudice" would permit a plaintiff to raise the identical claim again. This Court has been assured, however, that such is not Plaintiff's intent, as the following colloquy indicates:

THE COURT: So as an officer of the court, are you willing to stipulate, as you stand here today, that you will not seek discovery on the card-based products?

COUNSEL FOR GIESECKE: Yes, Your Honor. That's I think – what we clearly stated to [HID] is that we are removing the card-based products from the suit.

*      *      *

12

THE COURT: Now, earlier in this hearing, you represented, as an officer of the court, that you had no intention of adding the card-based products back into this lawsuit at any time.

COUNSEL FOR GIESECKE: That's correct, Your Honor

THE COURT: And that's still correct?

COUNSEL FOR GIESECKE: That's still correct.

 Mot. to Dismiss Hr'g Tr. 44-46.

As the Supreme Court noted in <u>CRST</u>, a defendant has attained prevailing party status and "fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision." 136 S. Ct. at 1651.  Given the material change in the legal relationship between HID and Giesecke, effected in the Court's December 28, 2018 Order eliminating card-based technologies (and HID) from this lawsuit, and reflected in Giesecke's representations that it would not seek discovery or re-assert its claims against the card-based products, HID is a prevailing party under Section 285.[11]

## <u>Conclusion</u>

HID's Motion for Attorney Fees is **GRANTED** as to entitlement.[12]


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**

---

[11]    To the extent that Giesecke argues that HID's motion for attorney fees should be dismissed under Rule 54 because the motion did not state the amount sought, this Court's February 27, 2019 Order bifurcating the issues of entitlement to and quantum of attorney fees defeats that argument. ECF No. 76.  Additionally, in any event, at the hearing, counsel for HID did provide a dollar estimate of the amount of HID's fees as of that time. Fees Hr'g Tr. 19-20.

[12]    As the Court finds that HID is entitled to attorney fees under Section 285, the Court does not reach HID's argument seeking attorney fees based on the Court's inherent authority.  ECF No. 63 at 15-16.