# In the United States Court of Federal Claims

No. 17-1812
(Filed:  10 June 2022[*])

```
*****************************************
GIESECKE & DEVRIENT GMBH,                *
                                         *
              Plaintiff,                 *
                                         *
v.                                       *
                                         *
THE UNITED STATES,                       *
                                         *   Patent Infringement; Motion for Attorneys'
              Defendant.                 *   Fees; Rule 11; Inherent Authority to
                                         *   Sanction; Equal Access to Justice Act
IDEMIA IDENTITY                          *   ("EAJA"); Bad Faith; Presuit Investigation.
& SECURITY USA, LLC,                     *
                                         *
              Third-Party Defendant,     *
                                         *
GEMALTO, INC.,                           *
                                         *
              Third-Party Defendant,     *
                                         *
HID GLOBAL CORP.,                        *
                                         *
              Noticed Nonparty.          *
                                         *
*****************************************
```

*John G. Flaim*, with whom were *Yoon Chae*, both of Baker & McKenzie LLP, *Jay F. Utley* and *Bart Rankin*, both of Forrest Weldon, all of Dallas, TX, for plaintiff.

*Phillip Charles Sternhell*, with whom were *Michel Souaya*, *Brian M. Boynton*, Acting Assistant Attorney General, *Gary L. Hausken*, Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, of Washington, DC, for defendant.

*Lionel M. Lavenue*, with whom was *Ben Cassidy*, both of Finnegan, Henderson, Farabow, Garrett & Dunner LLP, of Reston, VA, for HID Global Corporation.

## OPINION AND ORDER

---

[*] This opinion was initially filed under seal on 6 June 2022 pursuant to the protective order in this case.  The Court provided the parties the opportunity to submit proposed redactions on or before 10 June 2022.  On 10 June 2022, the parties confirmed by email they did not have any proposed redactions.  This opinion is now reissued for publication in its original form.

**HOLTE, Judge.**

Plaintiff Giesecke & Devrient GmbH ("Giesecke") filed the present action alleging the government infringed U.S. Patent No. 7,837,119 (the "'119 patent"). HID Global Corporation is a noticed nonparty under Rule 14 of the Rules of the Court of Federal Claims ("RCFC") and, after receiving the Court's notice, filed a motion to dismiss for failure to state a claim. Giesecke amended its complaint to remove allegations of infringement implicating HID-origin products, rendering HID's motion to dismiss moot and preventing HID from joining the case as a third-party defendant. HID moved for an award of attorneys' fees resulting from its involvement in the case. After bifurcating the issues of entitlement to, and quantum of, attorneys' fees, this court issued an opinion granting HID entitlement to attorneys' fees pursuant to 35 U.S.C. § 285. Following transfer of this case to the undersigned judge, the Court found it lacked jurisdiction to award attorneys' fees pursuant to § 285 and vacated the previous opinion. The Court ordered supplemental briefing and held oral argument on HID's alternative arguments concerning entitlement to attorneys' fees under legal theories other than § 285 and the quantum of fees. For the following reasons, the Court finds HID is not entitled to attorneys' fees and denies HID's motion. The Court also denies as moot HID's motion for quantum of fees.

## I.     Factual and Procedural History

### A.      Plaintiff's Patent Infringement Claim

Plaintiff is a German technology company and owner of U.S. Patent No. 7,837,119, titled "Contactless Data Carrier." *See* First Am. Compl. ¶¶ 2, 12, ECF No. 13. The '119 Patent "generally describes apparatuses and methods for reliably determining the deliberate use of a contactless data carrier," which are defined as "all arrangements[] which have a microchip and an antenna connected to [them] and are adapted to exchange data with a suitable reading device." *Id*. ¶ 12; Ex. A at 7, ECF No. 13-1. The contactless data carriers "include 'contactlessly readable identification documents, such as passports and identity cards with built-in microchip as well as . . . RFID [Radio Frequency Identification] labels.'" Op. & Order ("Order on Att'y Fees") at 2, ECF No. 137 (quoting Ex. A at 7). Giesecke alleged the government's "electronically enabled machine-readable travel documents (eMRTDs) . . . such as . . . United States Passport Cards, Permanent Resident Cards (a.k.a. Green Cards), and Global Entry cards" infringe the '119 Patent. *Id.* (quoting First Am. Compl. ¶ 20). This implicates HID because HID "provides the United States with . . . Permanent Resident Cards . . . and Global Entry cards." *Id.*

### B.      Plaintiff's Action Pursuant to 28 U.S.C. § 1498

On 4 April 2018, HID was notified of this litigation (along with thirty-four other third parties) as an interested party under RCFC 14(b). *See* Mot. for Notice to Third Parties Pursuant to Rule 14(b) at 1, ECF No. 7 ("[The government] moves this Court to issue a notice to the following third parties to appear, if they so desire, as parties and assert whatever interest they may have in this action."); Order, ECF No. 10; Notice to Third Parties Pursuant to Rule 14(b)(1) at 5, ECF No. 11 ("If you have an interest in the subject matter of this case . . . you may file a complaint or answer herein in accordance with Rule 14."). HID filed a first motion for an

extension of time to respond to the notice under RCFC 14(b) on 21 May 2018, ECF No. 24, and a second motion for an extension of time on 18 June 2018, ECF No. 35. On 9 July 2018, HID filed a Rule 12(b)(6) motion to dismiss "all allegations in the First Amended Complaint." HID's Rule 12(b)(6) Mot. to Dismiss ("HID MTD") at 1, ECF No. 41. HID argued plaintiff "fail[ed] to allege *any* facts to support the claims of infringement." *Id*. at 7. HID also "reserve[d] the right" to file a motion for sanctions against plaintiff under Rule 11 for failing to conduct an adequate prefiling investigation under Rule 11(b), but never filed a Rule 11 motion. *Id*. at 8 n.3.[2] On 6 August 2018, plaintiff responded in opposition to HID's motion, affirming its claim HID's card-based products infringed the '119 Patent. *See* Pl. Giesecke's Resp. in Opp'n to HID MTD ("Pl. Opp'n to MTD") at 12, ECF No. 44.

The parties held informal discussions regarding plaintiff's infringement contentions shortly after briefing on HID's motion to dismiss was complete. Oral Arg. on Attys' Fees Tr. ("Tr.") at 36:10–21, ECF No. 238; *see also* Joint Preliminary Status Report, ECF No. 46. During those discussions, the government made certain representations regarding technical aspects of the card-based products that would allegedly establish noninfringement of the '119 Patent. Tr. at 37:7–17. After those discussions, plaintiff proposed it would amend its complaint if the government would provide a declaration confirming those facts. HID's Resp. in Opp'n to Pl.'s Mot. for Leave to Amend Ex. 1 at 1, ECF No. 54-1; Tr. at 37:7–17. Two days later, HID served plaintiff with a letter laying out its theory of noninfringement and further threatening to pursue sanctions under Rule 11. *See* Pl.'s Opposed Mot. for Leave to Am. Compl. Ex. 2, ECF No. 52-2. Within three weeks of receiving HID's letter, plaintiff filed a motion for leave to file a second amended complaint to withdraw the claims against the card-based products. *See* Pl.'s Opposed Mot. for Leave to Am. Compl., ECF No. 52.

HID opposed plaintiff's motion to amend its complaint and requested this court rule on HID's motion to dismiss or, in the alternative, dismiss plaintiff's claims with prejudice. *See* HID's Resp. to Pl.'s Mot. for Leave to Am. at 1, ECF No. 54. This court granted plaintiff's motion for leave to file a second amended complaint on 28 December 2018, dismissed the relevant claims without prejudice, denied as moot HID's motion to dismiss, and did not join HID to the suit as a third-party defendant. *See* Op. & Order at 4, ECF No. 59. This court denied HID's request that plaintiff's claims be dismissed with prejudice because "dismissal of the withdrawn claims with prejudice [would] be inappropriate given that no adjudication of these claims had occurred." Order on Att'y Fees at 6 (citing *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004)).

## C.    HID's Bifurcated Motions for Attorneys' Fees

On 28 January 2019, HID filed a motion for attorneys' fees and costs resulting from its involvement in this case. *See* HID's Mot. for Att'ys Fees and Costs, ECF No. 63. HID sought to recover its "attorney fees and costs under 35 U.S.C. § 285, or, in the alternative, this Court's inherent authority." Order on Att'y Fees at 6. This court heard oral argument on the issue of entitlement to attorneys' fees on 8 July 2019. *See* Fee Hr'g Tr., ECF No. 111. At oral argument,

---

[2] On 26 September 2018, HID notified plaintiff it was "preparing a motion for sanctions against [plaintiff] under Rule 11." Order on Att'y Fees at 5. Despite HID's notice, it never filed a Rule 11 motion for sanctions.

the court raised jurisdictional concerns regarding "disputes solely involving private entities for money damages" before determining "if the Court doesn't have the authority to issue an opinion in this case, it would really eviscerate the authority of the Court to control its own docket . . . [and] discourage" frivolous cases. *Id.* at 86:5–24. In "an off-record colloquy," this court granted HID's motion as to entitlement to attorneys' fees. Order on Att'y Fees at 6.

On 29 July 2019, this case was reassigned to the undersigned Judge. *See* Order, ECF No. 116. Also on 29 July 2019, "counsel for HID and Giesecke informed the Court they wished to pursue settlement as to the quantum of any Section 285 fees [with Judge Mary Ellen Coster Williams, the previous judge assigned to the case,] through the Court of Federal Claims' Alternative Dispute Resolution ('ADR') program." Order on Att'y Fees at 7 (citing Order, EFC No. 118). Accordingly, HID's motion for attorneys' fees was referred to Judge Williams for ADR proceedings. *See* Order, ECF No. 118. ADR proceedings proved unsuccessful. Order on Att'y Fees at 7. On 24 January 2020, Judge Williams issued an opinion memorializing her July 2019 ruling from the bench granting HID entitlement to attorneys' fees, finding "HID is entitled to attorney fees under Section 285." Order on Att'y Fees at 13 n.12 ("HID is entitled to fees under Section 285, [so] the Court does not reach HID's argument seeking attorney fees based on the Court's inherent authority."). The 24 January order did "not address the issue of quantum" of attorneys' fees. *Id.* at 7.

On 10 February 2020, with ADR complete and the entirety of the case now before the undersigned Judge, HID filed its motion for quantum of attorneys' fees and costs. *See* HID's Mot. for Quantum of Att'ys Fees and Costs, ECF No. 140. On 9 March 2020, plaintiff filed its response to HID's motion. *See* Pl.'s Resp. to Mot. for Quantum of Att'ys' Fees and Costs, ECF No. 145. In response, plaintiff raised the question of this Court's jurisdiction to award attorneys' fees, expenses, and costs to third-party defendants under § 285. *Id.* at 5. HID filed a reply in support of its motion for quantum of attorneys' fees on 23 March 2020, ECF No. 147. On 30 March 2020, the Court held a telephonic status conference with the parties and discussed possible jurisdictional issues regarding HID's motion for attorneys' fees. *See* Status Conf. Tr., ECF No. 155. After briefing and oral argument on the issue, the Court issued an order holding it lacked jurisdiction to award attorneys' fees under § 285. *See* Op. & Order, ECF No. 168. The Court then ordered supplemental briefing on HID's entitlement to attorneys' fees under legal theories other than § 285, *see* Order, ECF No. 172, and held oral argument on HID's entitlement and quantum of attorneys' fees, *see* Order, ECF No. 223.

## II.    Summary of Arguments

HID argues the Court should exercise its inherent authority to award HID its attorneys' fees. Plaintiff's allegations implicating HID's products are frivolous and obviously flawed, according to HID, because the products "obviously cannot infringe." HID Opening Br. at 3, ECF No. 177. HID argues plaintiff would have known HID's products cannot infringe the '119 Patent if it had carried out a reasonable presuit investigation because "[s]imply looking at HID's card-based products shows that they do not" infringe. *Id.* Instead of continuing to litigate its claims implicating HID's card-based products, HID contends plaintiff should have withdrawn them when HID filed its motion to dismiss. *Id.* 6. Thus, HID asserts the Court should exercise its inherent authority to sanction plaintiff and compensate HID for its legal fees incurred

in defense of its products. *Id.* at 6–7.  Alternatively, HID argues the Court may award HID its attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2018), or sua sponte under RCFC 11(c)(3).  *See id.* at 17, 19.

According to plaintiff, HID failed to carry its burden to establish it is entitled to recover attorneys' fees under the Court's inherent power because plaintiff conducted an adequate presuit investigation.  Pl.'s. Resp. to HID's Opening Supp. Br. ("Pl.'s Supp. Response") at 8, ECF No. 182.  Plaintiff disputes HID's representation that noninfringement would be apparent upon a simple visual inspection of the card-based products.  *Id.* at 9.  Plaintiff argues it has acted in good faith throughout the proceedings, including amending its complaint to remove claims implicating HID's card-based products early in the litigation.  *Id.* at 12.  Plaintiff also argues the Court lacks jurisdiction to award HID attorneys' fees under the EAJA because HID is a third-party defendant, and the Court lacks jurisdiction to entertain money claims between private parties.  *Id.* at 15–16.  Plaintiff also notes HID failed to satisfy the procedural requirements for sanctions under RCFC 11 and, moreover, sanctions under RCFC 11 would be inappropriate because plaintiff has not acted in bad faith.  *Id.* at 18–20.

The government takes no position on HID's entitlement to its attorneys' fees or whether plaintiff's conduct is sanctionable, except to disagree with HID's interpretation of § 2412(b) of the EAJA.  Def.'s. Resp. to HID's Opening Supp. Br. at 2, ECF No. 183.  According to the government, § 2412(b) is merely a waiver of sovereign immunity and does not provide the Court with jurisdiction to award attorneys' fees between private parties.  *Id.* at 3.

## III.   Legal Standard

### A.      Sanctions Under the Court's Inherent Authority

Federal courts must exercise restraint and discretion when exercising their inherent authority to sanction a party's conduct which abuses the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980)).  A court may assess attorneys' fees against the party responsible for the misconduct when the court finds "fraud has been practiced upon it or that the very temple of justice has been defiled." *Id.* at 46 (cleaned up); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994).  A party engages in sanctionable misconduct when it "act[s] in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers*, 501 U.S. at 45–46 (quotations omitted); *Amsted Indus., Inc.*, 23 F.3d at 378.  "Without a finding of fraud or bad faith whereby the 'very temple of justice has been defiled,' a court enjoys no discretion to employ inherent powers to impose sanctions."  *Amsted Industries, Inc.*, 23 F.3d at 378 (citing *Chambers*, 501 U.S. at 50–51; *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).  A specific finding of bad faith is required for sanctions pursuant to a court's inherent authority.  *Persyn v. United States*, 36 Fed. Cl. 708, 713 (1996), *aff'd in part, rev'd in part*, 135 F.3d 773 (Fed. Cir. 1997); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).

In patent infringement cases, a court starts from the "presumption that an assertion of infringement of a duly granted patent is made in good faith."  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375–76 (Fed. Cir. 2017) (citation omitted).  A party seeking

attorneys' fees bears the burden of proving a party brought or litigated its case in bad faith. *Cavelle v. Chi. Transit Auth.*, No. 17-cv-5409, 2020 WL 133277, at *4 (N.D. Ill. Jan. 13, 2020). "Bad faith implies that a litigant intentionally took a position he subjectively knew was unfounded." *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 561 n.4 (5th Cir. 2015); *see Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (citing the Second Circuit's definition for bad faith as requiring conduct "motivated by improper purposes such as harassment or delay"); *Bad Faith*, Black's Law Dictionary (10th ed. 2014) ("[d]ishonesty of belief, purpose, or motive").

### B.     Sanctions Under the Equal Access to Justice Act

"EAJA provides an exception to the general rule that plaintiffs cannot recover attorneys' fees and expenses against the United States." *Monroe v. United States*, No. 2021-1553, 2022 WL 807400, at *6 (Fed. Cir. Mar. 16, 2022) (citing *Scarborough v. Principi*, 541 U.S. 401, 404 (2004)). EAJA places the government on equal footing with private parties for the purpose of awarding attorneys' fees. *Gavette v. Off. of Pers. Mgmt.*, 808 F.2d 1456, 1460 (Fed. Cir. 1986) ("[T]he EAJA extended the common law and statutory exceptions to make the United States liable for attorney fees to the same extent that private parties would be liable."); *Knogo Corp. v. United States*, 228 Ct. Cl. 372, 377 (1981) ("the purpose behind the enactment of section 2412 was only to make equitable the award of costs as between the United States and a private party"). EAJA does not provide federal courts with jurisdiction to award attorneys' fees between private parties. *See Knogo Corp.*, 228 Ct. Cl. at 377–78 (holding EAJA bars attorneys' fees between private parties in cases where the United States is a defendant); *Thornton-Trump v. United States*, 12 Cl. Ct. 262, 262–63 (1987); *Lemelson v. United States*, 8 Cl. Ct. 789, 792 (1985).

### C.     Sanctions Under Rule 11(b)

Counsel must certify they have carried out "an inquiry reasonable under the circumstances" when alleging patent infringement in a complaint. RCFC 11(b). Counsel must also "interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). Such an interpretation must be "nonfrivolous." *Id.* A court may, on its own, order an attorney, law firm, or party to show cause why they have not violated RCFC 11(b) and to sanction them if they cannot. *Persyn*, 36 Fed. Cl. at 709. The court, however, "cannot impose sanctions [sua sponte under Rule 11] after a party is no longer able to withdraw or amend its challenged pleading unless the court makes a finding of subjective bad faith." *Castro v. Mitchell*, 727 F. Supp. 2d 302, 309 (S.D.N.Y. 2010); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (imposing sanctions sua sponte requires conduct "akin to a contempt of court").

## IV.     Whether the Court Should Exercise its Inherent Authority to Award Attorneys' Fees to HID

### A.     Whether the Court Should Apply the Pre-*Octane Fitness* Standard for Bad Faith

United States district courts apply 35 U.S.C. § 285 (2018) when determining whether to sanction a plaintiff for an alleged insufficient presuit investigation.  The Court of Federal Claims, however, lacks jurisdiction to award attorneys' fees under 35 U.S.C. § 285.  Op. & Order at 22, ECF No. 169 ("The Court lacks jurisdiction to grant HID's motion for entitlement to attorneys' fees under § 285.").  Thus, the Court must consider whether HID is entitled to attorneys' fees under theories other than § 285, such as the Court's inherent authority.[3]  *Id.*  The Court is not aware of any case law setting forth the standard for exercising inherent authority to sanction an insufficient presuit investigation in a patent case.  Tr. at 106:12–20.  HID argues, the Court should adopt the Federal Circuit's former standard for bad faith established in *Kilopass Tech, Inc. v. Sidense Corp.*  HID Opening Br. at 10 (citing the pre-*Octane Fitness* standard for bad faith).  This standard was used to determine whether a case was "exceptional" under 35 U.S.C. § 285 before the Supreme Court issued its decision in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.* with its interpretation of § 285.[4]  According to the Federal Circuit's pre-*Octane Fitness* precedents, a finding of subjective bad faith was necessary for a case to qualify as "exceptional."  *Brooks Furniture Mfg., Inc. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) ("Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."), *abrogated by Octane Fitness, LLC, v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

While the Supreme Court's decision in *Octane Fitness* was pending, the Federal Circuit issued *Kilopass Tech.* clarifying "subjective bad faith only requires proof that the 'lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known by the party asserting the claim.'"  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013).  In *Octane Fitness*, the Supreme Court recognized this and observed "the Federal Circuit appeared to cut back on the 'subjective bad faith' inquiry" in *Kilopass Tech.* and, "[m]ost importantly, the Federal Circuit stated that '[o]bjective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285 . . . .'"  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 551 n.4 (2014).  HID now asks the Court to apply a standard for bad faith that originated from the Federal Circuit's one-off statutory interpretation of § 285, was a significant departure from previous precedents such as *Brooks Furniture Mfg., Inc. v. Dutailier Int'l Inc.*, and was effective for only fifty days before being abrogated by the Supreme Court's decision in *Octane Fitness.*

---

[3] This Court's 14 October 2020 opinion addressing the parties' arguments related to fee awards under inherent authority articulated three circumstances in which the Court can exercise inherent authority to award attorneys' fees.  Op. & Order, ECF No. 168 at 11.  The three circumstances are:  "(1) when the award is 'to a party whose litigation efforts directly benefit others;' (2) 'as a sanction for the "willful disobedience of a court order;"' or (3) 'where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."'"  *Id.*  (quoting *Chambers v. NASCO*, Inc., 501 U.S. 32, 45-46 (1991)).  HID has not advanced a theory related to either of the first two circumstances, so the Court does not analyze them.

[4] The Supreme Court's decision in *Octane Fitness* reviews the standard set forth in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005).  The Federal Circuit, however, modified the *Brooks Furniture Mfg.* standard when it issued *Kilopass Tech.* after the Supreme Court granted certiorari in *Octane Fitness* but before it issued a decision abrogating the *Brooks Furniture Mfg.* standard.  The *Brooks Furniture* standard as modified by *KilopassTech.* is the "pre-*Octane Fitness* standard" HID references, and the term has this meaning throughout this opinion.

The standard for bad faith set forth in *Kilopass Tech.* is not a clear analogue for bad faith sufficient to award attorneys' fees under the Court's inherent authority.[5]  At oral argument HID was not able to identify a case where a court exercised its inherent authority to award attorneys' fees based on bad faith under the pre-*Octane Fitness* standard for exceptionality under § 285.  Tr. at 106:12–20.  Unlike the pre-*Octane Fitness* standard for bad faith, which contemplates sanctions for objective baselessness alone, most courts require a litigant to have some subjective knowledge of its unfounded position for sanctions under the court's inherent authority to be warranted.  *See Gate Guard Serv., L.P.*, 792 F.3d at 561 n.4 ("Bad faith implies that a litigant intentionally took a position he subjectively knew was unfounded."); *Advanced Magnetic Closures, Inc.*, 607 F.3d at 833 (citing the Second Circuit's definition for bad faith as requiring conduct "motivated by improper purposes such as harassment or delay"); *Monsanto Co. v. E.I. Du Pont de Nemours & Co.*, 748 F.3d 1189, 1197 (Fed. Cir. 2014).  Even the definition and ordinary meaning of the term *bad faith* includes a subjective element.  *Bad Faith*, Black's Law Dictionary (10th ed. 2014) ("[d]ishonesty of belief, purpose, or motive").

While there is little case law applying a court's inherent authority to sanction a litigant for an insufficient presuit investigation in a patent case, courts exercise their inherent authority to sanction parties in other types of cases.  The Supreme Court, for example, considered whether sanctions under a court's inherent authority were justified in a case where the plaintiff engaged in acts of fraud, filed false and frivolous pleadings, and used "tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance."  *Chambers*, 501 U.S. at 41 (citation omitted).  The Supreme Court explained sanctions under a federal court's inherent authority are appropriate when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and held the district court did not abuse its discretion in resorting to its inherent power under these circumstances.  *Id.* at 46; 50–51.

The Federal Circuit has also reviewed the limits of a court's inherent authority in several patent cases involving awarding expert witness fees under a court's inherent authority.  *See, e.g.*, *Amsted Indus. Inc. v. Buckey Steel Casings Co.*, 23 F.3d 374 (Fed. Cir. 1994); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381 (Fed. Cir. 2008); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012).  For example, the Federal Circuit reviewed whether a district court abused its discretion in awarding expert witness fees after finding the defendant practiced the underlying patent without a good faith belief the patent was invalid, denied infringement when confronted with evidence to the contrary, burdened the court with numerous motions, and violated a court order to refrain from filing additional motions.  *Amsted Indus.*, 23 F.3d at 379.  The Federal Circuit ruled the district court abused its discretion because such conduct "did not amount to a fraud on the court or an abuse of the judicial process."  *Id.*  The

---

[5] The Federal Circuit has noted the former standard for exceptionality under § 285 is not congruent with the standard for a court to exercise its inherent authority.  *Amsted*, 23 F.3d at 378 ("Indeed, not every case qualifying as 'exceptional' under [the pre-*Octane Fitness* interpretation of] Section 285 will qualify for sanctions under the court's inherent power."); *MarcTec, LLC*, 664 F.3d at 921 (Fed. Cir. 2012) ("Use of this inherent authority is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled." (quotations omitted)); *see also Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 12-CV-6781, 2018 WL 1596068, at *6 (S.D.N.Y. Mar. 28, 2018) (holding inherent authority sanctions "are more exacting than the 35 U.S.C. § 285 'exceptional cas[e]' threshold").  Thus, not every case that qualifies as exceptional under Section 285 also qualifies for sanctions under the court's inherent authority.

Federal Circuit distinguished *Amsted* from *Chambers* because the defendant's actions in *Amsted* "did not amount to a fraud on the court or an abuse of the judicial process" and the defendant "engaged in no fraudulent conduct, filed no false pleadings, and used no tactics of oppression and harassment." *Id.*

In *Takeda*, a patent infringement case involving drug products, the Federal Circuit reviewed a district court's decision awarding the patentee expert witness fees under the court's inherent authority. *See Takeda Chem. Indus., Ltd. v. Mylan Labs, Inc.*, 549 F.3d 549 F.3d 1381 (Fed. Cir. 2008). The Federal Circuit affirmed the district court's finding the defendants invalidity contentions were meritless and baseless and defendants engaged in litigation misconduct by taking and abandoning frivolous theories of invalidity during litigation without supporting evidence. *Id.* at 1384–85. The Federal Circuit concluded "the use of this inherent power is reserved for cases with a finding of fraud or abuse of the judicial process. While it is true that the [defendants'] conduct did not amount to fraud, courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes." *Id.* at 1391. The district court was entitled to use its inherent authority, the Federal Circuit explained, because it found numerous instances of bad faith and vexatious litigation conduct and could not award expert fees under any other statutory authority. *Id.*

The Federal Circuit considered a district court's decision awarding expert witness fees under its inherent authority in *MarcTec¸* a patent infringement case involving a patent for a surgical implant. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012). The Federal Circuit affirmed the district court's decision because its finding of bad faith was sufficiently supported by the plaintiff's litigation conduct. *Id.* at 921. The misconduct in that case included filing a frivolous action and bringing and pressing the suit without any basis for asserting infringement, continuing to litigate after receiving documentary evidence that refuted its allegations, and relying on "junk science." *MarcTec, LLC*, 664 F.3d at 921.

These cases demonstrate acts of fraud, false filings, frivolous pleadings, abuse of the judicial process, oppression, and harassment may constitute bad faith sufficient to award sanctions under a court's inherent authority. A common element here is intent on the part of the offending litigant to engage in fraud or abuse of the judicial process. *Amsted*, 23 F.3d at 378. None of these cases appears to find bad faith based entirely on a pleading's defects. *Chambers*, 501 U.S. at 41 (affirming inherent authority sanctions based on finding plaintiff also engaged in acts of fraud, false filings, oppression and harassment); *Takeda Chem. Indus., Ltd.*, 549 F.3d at 1384–85 (affirming inherent authority sanctions based on finding defendants also engaged in litigation misconduct); *MarcTec, LLC*, 664 F.3d at 921 (affirming inherent authority sanctions based on finding plaintiff also continued litigating frivolous action after receiving documentary evidence that refuted its allegations, and relying on "junk science" to support its infringement theory). Rather, a litigant demonstrates bad faith sufficient to warrant sanctions under the Court's inherent authority if its conduct is tantamount to fraud or defiles the very temple of justice. *Chambers*, 501 U.S. at 46.

For these reasons, the Court rejects HID's novel "pre-*Octane Fitness*" theory that subjective bad faith sufficient to justify sanctions under the Court's inherent authority "only requires proof that the 'lack of objective foundation for the claim was . . . so obvious that it

should have been known by the party . . . .'" HID Opening Br. at 10 (quoting *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1310 (Fed. Cir. 2013)). Instead, the Court relies on the well-established body of inherent authority case law set forth by the Supreme Court in *Chambers*, and the Federal Circuit in *Amsted*, *Takeda*, and *MarcTec*. Specifically, the Court may exercise its inherent authority to award attorneys' fees as a sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 2132–33 (cleaned up). This sanction is reserved for "egregious conduct" which "amount[s] to a fraud on the court or an abuse of the judicial process"; such as fraudulent conduct, false pleadings, and tactics of oppression and harassment. *Amsted*, 23 F.3d at 379. A finding of fraud or abuse of the judicial process is required unless the misconduct "cannot otherwise be reached by rules or statutes"; even in these instances a finding of bad faith is still necessary. *Takeda Chem. Indus., Ltd.*, 549 F.3d at 1391; *see MarcTec, LLC*, 664 F.3d at 921.

## B.      Whether Plaintiff Conducted Itself in Bad Faith

Whether plaintiff acted in bad faith depends on plaintiff's knowledge and intent in the course of prosecuting its action against the government. *Gate Guard Serv.*, 792 F.3d at 561 n.4 ("Bad faith implies that a litigant intentionally took a position he subjectively knew was unfounded."). The Court must make findings of fact concerning a party's conduct when considering whether to sanction such conduct under the Court's inherent authority. *See NASCO, Inc. v. Calcasieu Television and Radio, Inc.*, 124 F.R.D. 120, 142–43 (W.D. La. 1989) (making factual findings to support sanctions under the court's inherent authority), *aff'd and remanded*, 894 F.2d 696 (5th Cir. 1990), *aff'd sub nom. Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

HID admits there is no evidence plaintiff intentionally implicated HID's products, subjectively believing its claim was unfounded. Tr. at 98:8–17. Rather, HID contends plaintiff acted with reckless disregard in filing and maintaining "exceptionally weak" and "glaring[ly] and obvious[ly] flaw[ed]" infringement contentions implicating HID's card-based products.[6] HID Opening Br. at 2, 11. According to HID, its products "obviously cannot infringe," *id.* at 3, and "'a basic visual inspection' would have shown HID could not infringe," *id.* at 1 (citing Order on Att'y Fees at 4); Tr. at 19:21–24. This is so, according to HID, because plaintiff's complaint alleges HID's card-based products complied with the International Civil Aviation Organization's ("ICAO") technical requirements as defined in ICAO Doc. 9303. HID Opening Br. at 3. Compliance with that standard, according to HID, requires a "chip inside symbol" on the product and HID's products lack that symbol. *Id.* at 3–4. The chip-inside symbol can be thought of, at least for purposes of this proceeding, as a visual indicator the card contains a chip with sufficient storage to satisfy the elements of the asserted '119 Patent claims. *Id.* Since HID's products lack

---

[6] HID originally argued two distinct factual premises to support recovery of attorneys' fees: (1) Giesecke's original presuit investigation was insufficient; and (2) Giesecke's "dogged pursuit" of litigation through the motion to dismiss stage. HID Opening Br. at 3, 6. During oral argument, HID proffered a third independent ground to support recovery: the content of Giesecke's original complaint and the subsequent failure to remove HID as a party in the amended complaint despite the intervening disclosure of the government's contract with HID. Tr. 103:23–104:23. When pressed by the Court at oral argument, counsel consolidated the inquiry, contending "[a]ll of these issues, in combination, totality of the circumstances, which is the standard required by *Kilopass*, these all rise to that." Tr. 105:17–19. The Court, accordingly, considers Giesecke's actions in entirety when analyzing the alleged bad faith.

the chip-inside symbol, HID argues, its products obviously could not infringe the asserted '119 Patent claims.  *Id.*



Figure 1.  (a) An exemplary product having a chip-inside symbol; (b) chip-inside symbol; (c) an exemplary HID product lacking a chip-inside symbol.

Plaintiff disputes HID's construction of the '119 Patent claims, a claim construction the Court never adopted.  Tr. at 81:1–5 ("[W]e disagree with HID's arguments and assessments of what does or doesn't infringe.  They're clearly making claim construction arguments . . . that, in our view, would be contrary to the law.").  HID admitted at oral argument neither the claims nor the specification references the ICAO standard or the chip-inside symbol:

> THE COURT: . . . [W]here is the "chip inside" symbol in the claims?
> [HID]:  You have to tie that to the ICAO standard.  The ICAO standard is what requires the "chip inside" symbol.
> THE COURT:  Is the "chip inside" symbol in the specification?
> [HID]:  It is not, Your Honor.
> THE COURT:  Is the standard in the specification?
> [HID]:  It is not, but the claims are read by the Plaintiff on the specification.
> THE COURT:  So it's a two- or three-step process then in order to understand what the claims are covering . . . .
> [HID]:  Yes, Your Honor.

Tr. at 73:13–74:13.  HID also admitted it is possible for a product to comply with certain parts of the ICAO standard without carrying the chip-inside symbol:

> THE COURT:  . . . [Y]ou agree . . . that a card can comply with the ICAO standard but not have the [chip-inside] marking on it.
> [HID]:  Certain parts of the standard.  It depends on which standard you're looking at, which part of the standard.  That's correct.

Tr. at 84:5–10.  In sum, HID's theory of noninfringement requires a claim construction that is not directly supported by the asserted patent claims or specification, plaintiff continues to dispute

- 11 -

HID's theory, and the Court never adopted it.  HID's theory that a simple visual inspection of its card-based products reveals noninfringement is unpersuasive.  "[T]here is a presumption that an assertion of infringement of a duly granted patent is made in good faith," and HID's theory that a basic visual inspection would have shown its products do not infringe the asserted '119 Patent claims does not overcome this presumption.  *Checkpoint Sys.*, 858 F.3d at 1375–76 (citation omitted).

As plaintiff further notes, and as HID admits, HID did not make this argument concerning the chip-inside symbol in its motion to dismiss.  Tr. at 34:18–35:6, 87:7–12; *see* HID MTD.  Neither did HID raise the argument in its reply in support of its motion to dismiss.  *See* HID's Reply, ECF No. 45.  Throughout briefing on HID's motion to dismiss, plaintiff continued to subjectively believe HID's products infringed the asserted '119 Patent claims.  *See* Pl. Opp'n to MTD.  HID argues it failed to raise these arguments because it was in an "investigatory phase."  Tr. 88:17–25.  Plaintiff argues, and the timeline in the record demonstrates it was not until the parties held informal discussions after briefing on HID's motion to dismiss that plaintiff's infringement theory was clarified and plaintiff learned HID's card-based products did not operate as plaintiff had alleged.  Tr. at 38:15–20 ("THE COURT:  . . . [D]id anything in those informal discussions prompt [p]laintiff to amend its complaint?  [PLAINTIFF]:  Your Honor, that was certainly a part of the consideration that prompted the amendment of the complaint.").  "[I]t was during that . . . time frame that [technical information about the card-based products] came to light from the [g]overnment, that Giesecke did not previously have."  Tr. at 37:21–24.  "It was the [g]overnment's representation," plaintiff explains, "that information, once disclosed, would establish noninfringement as it related to the cards."  Tr. at 37:7–9.

Instead of pursuing discovery to investigate the government's representations, plaintiff accepted them and proposed the government agree to a declaration confirming certain technical aspects of the accused products; plaintiff, in turn, would amend its complaint to remove the claims implicating the card-based products.  *See* Ex. 1, ECF. No. 54-1 ("Further to our discussions, we set forth below draft language for a proposed declaration from the U.S. that we believe would be sufficient to allow [plaintiff] to withdraw its claims against the card devices.");  Tr. at 39:1–8, 43:13–25.  The text of plaintiff's proposed declaration asked the government to confirm several fact issues that would not have been apparent upon a visual inspection of the accused cards, including:  (1) whether the accused cards use basic access control or certain other access control protocols; (2) whether data from a bar code or machine readable zone is used for authentication between an inspection system and a radio frequency identification chip in the accused cards; (3) whether data from any bar code or machine-readable zone of the accused cards is used to gain access to any data stored in any RFID chip of the accused cards; (4) whether data from any bar code or machine readable zone of the accused cards is used to derive any key (e.g., cryptographic key); (5) whether access to data stored in any RFID chip of the accused cards is predicated on any data that is optically read from the accused cards; and (6) whether the accused cards contain any secure storage area for storing any data or records.  Ex. 1 at 1–2, ECF No. 54-1.  Plaintiff's efforts to confirm this information with the government demonstrate it lacked technical information it could not reasonably obtain without discovery, and weigh in favor of finding plaintiff's conduct was not so egregious as to warrant sanctions under the Court's inherent authority.  *Amsted Indus., Inc.*, 23 F.3d at 378.

The government did not agree to plaintiff's declaration—not because it disagreed with the language of the declaration, but for practical reasons related to whom the declaration would come from.[7]  Tr. at 44:8–15 ("We reviewed it, and from our perspective, it was not workable. To be clear, it's not that I . . . or . . . anybody at any of our agencies had disagreement with the language . . . ."); Tr. at 45:21–46:13 ("[O]ur primary issue . . . was who the declaration would come from. . . .  I can't speak on behalf of an agency in that manner . . . .  So there was a gating question of who this [declaration] would be coming from . . . .").  Indeed, the government went so far as to discuss the substance of the proposed declaration with relevant agencies—though it insists the declaration was a nonstarter.  Tr. 48:18–25 ("[F]rom the Department of Justice's perspective, the declaration . . . was effectively a nonstarter. . . .  [W]e certainly communicated the substance of the declaration to our agency partners and had conversations with them . . . .").  Two days after plaintiff emailed the government with the text of its proposed declaration, HID served plaintiff with a letter laying out its argument that the card-based products could not infringe the '119 Patent because they lacked the chip-inside symbol and threatening sanctions under Rule 11.  *See* Ex. 2, ECF No. 52-2; Tr. at 35:10–16.  Less than three weeks later plaintiff moved to amend its complaint to withdraw claims implicating HID's card-based products.  *See* Pl.'s Opposed Mot. for Leave to Am. Compl., ECF No. 52.

The parties agree plaintiff's email to the government demonstrates plaintiff's thoughts and intent, but they interpret the meaning of the email differently.  Tr. at 53:9–14 ("THE COURT:  Well, it seems like the email . . . is the culmination of [plaintiff]'s thoughts or understanding or reasons for continuing with the lawsuit, and it's . . . the last thing in the record before moving to remove the card-based products.  [HID]:  Fully agree, Your Honor.").  While plaintiff argues the email "was sent . . . as a sign of a continuing good-faith discussion with the [g]overnment," Tr. at 54:13–16, HID contends plaintiff knew it did not have a good infringement case concerning HID's card-based products and sent its proposed declaration to the government as a "face-saving maneuver."  Tr. at 51:24–52:9.  When asked whether plaintiff's email to the government was sent in bad faith, HID initially declined to take a position.  Tr. at 51:17–21 ("THE COURT:  . . . [W]as [the email] sent in bad faith?  [HID]:  . . . HID has not taken [that] position specifically [on] the email.").  Later, HID argued the email was indeed sent in bad faith.  Tr. 55:11–56:18.  When asked if plaintiff had any dishonest belief, purpose, or motive for implicating HID products in its complaint, HID answered "[a] specific subjective bad faith, no," then argued the totality of the circumstances including plaintiff's alleged careless allegations amount to "vexatious, wanton, or oppressive . . . conduct."  Tr. at 96:11–18.

HID argues plaintiff could have easily searched the internet to find images of permanent resident cards for its presuit investigation.  Tr. 68:12–17 ("[HID]:  . . . I just Googled permanent resident card, and there are hundreds of permanent resident cards on Google that one can look at.").  The Court accepts plaintiff could have found images of permanent resident cards, but the Court does not accept plaintiff would have known the permanent resident cards do not infringe the '119 Patent simply by looking at pictures of them.  The information plaintiff sought to confirm with the government is not information that can be confirmed with a simple visual inspection.  *See* Ex. 1 at 1–2, ECF No. 54-1 (draft declaration language).

---

[7] While the government says it responded to plaintiff's email, the government's response is not contained in the record.  The government's description of its response was given at oral argument.

Even with a permanent resident card in hand, the card's personal, noncommercial nature makes it difficult to discover this information by deconstructing and reverse engineering it. Permanent resident cards are not commercially available. Tr. at 69:20–23 ("THE COURT: . . . So for . . . physically obtaining a card, it's not a[n] [off-the] shelf product. [HID]: The card itself, I would agree with that, Your Honor."). Rather, access to these cards is carefully controlled for national security purposes. *See* Ex. M at 36, ECF No. 7-13 (requiring contractor to safeguard sensitive card items in their custody and control). When asked how plaintiff procured a permanent resident card for its presuit investigation, plaintiff explained it visually inspected a permanent resident card issued to one of its counsel.[8] Tr. at 67:10–25 ("Mr. Chae [counsel for plaintiff] actually has a global permanent resident card and a green card . . . and so that's how we were able to obtain and view the cards themselves."). Thus, plaintiff could not examine the cards' internal components without destroying counsel's proof of legal residency. Plaintiff could have used a commercial card reader to read the unique identifier stored on the card, Tr. at 64:9–13, but that information would not reveal how the government's system interfaces with the card, Tr. at 63:14–23 ("that interface is something that is built for the [g]overnment, and certainly the handling of the data is confidential."). According to the government, there are aspects of the card-based products that are confidential. Tr. at 66:3–10. Although the government says these are "not aspects that have anything to do with the methods that are claimed in [plaintiff's] patents," *id.*, there is nothing in the record to suggest plaintiff would have known this. The Court concludes it would not have been obvious from a visual inspection that HID's card-based products could not infringe the '119 Patent. Some elements of the '119 Patent claims (e.g., whether the storage area is readable only after authenticating the data carrier and the reading device) cannot be visually inspected. This finding weighs in favor of finding plaintiff's conduct did not rise to the level of bad faith sufficient to justify sanctions under the Court's inherent authority. *Amsted Indus., Inc.*, 23 F.3d at 378.

For the first time at oral argument, HID further contended the information plaintiff sought to confirm with the government was determinable from the government's contract with HID; and—according to HID—plaintiff incorporated the contract into its amended complaint.[9] Tr. at 55:11–56:18. HID did not identify which portions of the contract disclose the information plaintiff sought to confirm with the government, and the Court could not find any statement in the contract directly on point with plaintiff's proposed declaration. For example, the contract

---

[8] Counsel for HID suggested permanent resident cards are widely available and pointed to the fact plaintiff's counsel personally possessed a permanent resident card and noted HID's counsel's housekeeper also has one. The Court recognizes some, if not many, individuals may possess permanent resident cards. Tr. 68:24–69:4 ("[COUNSEL FOR HID]: I certainly would not agree that it is impossible to access a permanent resident card, as Mr. Chae himself has one and was able to look at it, and they're readily available. My housekeeper has one. They would be the easiest thing to access, I would say, Your Honor."). Being connected to someone who happens to have a personal permanent resident card, however, is not equivalent to purchasing a card for a presuit investigation. A plaintiff carrying out a reasonable presuit investigation may not be able to inspect a permanent resident card belonging to plaintiff's counsel or HID's counsel's housekeeper the same way it might inspect an off-the-shelf product. A personal card belonging to another person may not be disassembled and inspected the same way a disposable card purchased solely for investigation could be.

[9] The Court was not able to find a reference to the government's contract with HID in plaintiff's amended complaint. The contract, however, was attached as an exhibit to the government's motion to notice third parties under Rule 14(b), and thus was in the record when plaintiff amended its complaint. *See* Ex. M.

does not mention whether the card-based products use basic access control or certain other access control protocols, a point plaintiff sought to clarify with the government. The contract appears to speak of the card-based products in terms of minimum requirements, so the fact it does not mention whether the card-based products use basic access control or certain other access control protocols does not foreclose the possibility they do. *See* Ex. M at 21. The contract also requires compliance with ICAO Doc. 9303, Ex. M at 30, and requires sufficient storage to comply with the standard. Even if the contract specifies a minimum amount of storage that is insufficient to comply with the standard, it does not foreclose the possibility card-based products contained more storage than the minimum required by the contract. Because the contract also requires compliance with ICAO Doc. 9303—which requires more storage than the contract does—it would not be unreasonable for plaintiff to believe the card-based products contained more storage than the minimum required by the contract. HID Opening Supp. Br. at 5. Thus, the Court finds the government's contract does not conclusively demonstrate the card-based products do not infringe the asserted '119 Patent claims.

The record demonstrates plaintiff had ample reason to believe the accused products were technically compliant with ICAO Doc. 9303 and possibly infringed the asserted '119 Patent claims. First, HID admits its website advertised compliance with at least parts of the ICAO standard. Tr. at 83:9–84:10; *see* Pl. Opp'n to MTD at 3. This public statement about HID's own products at least creates some confusion regarding whether its products are technically compliant with the ICAO standard. Also, the United States is a charter member of ICAO and requires compliance with ICAO standards. First Am. Compl. ¶ 21; Pl. Opp'n to MTD at 1 n.1. It was not frivolous, therefore, for plaintiff to believe the government would require HID's card-based products to comply with ICAO Doc. 9303—that is, after all, what the government's contract with HID requires. Ex. M at 30 ("the cards shall be in accordance with . . . ICAO 9303 standards."). Accordingly, plaintiff did not act vexatiously or wantonly in maintaining its infringement position because plaintiff subjectively believed HID's products infringed the '119 Patent. *Gate Guard Servs.*, 792 F.3d at 561 n.4 ("wantonness suggests that a litigant has recklessly pressed an objectively frivolous position"); Tr. at 103:18–22 (HID's counsel citing *Gate Guard Servs.* for this definition).

Plaintiff maintained this nonfrivolous position consistently from its complaint to its response in opposition to HID's motion to dismiss, indicating it subjectively believed HID's card-based products infringed the asserted '119 Patent claims. First Am. Compl. ¶ 20; Pl. Opp'n to MTD at 3. Before learning otherwise from the government after briefing on HID's motion to dismiss was complete, plaintiff could have reasonably maintained its card-based products were compliant with ICAO Doc. 9303 and thus technically capable of infringing the asserted '119 Patent claims. Without knowing its allegations of infringement could not succeed, plaintiff's conduct does not amount to bad faith. *Gate Guard Serv.,* 792 F.3d at n.4.

In sum, the Court finds it would not have been obvious from a visual inspection that HID's card-based products could not infringe the '119 Patent. The Court finds plaintiff's account of discussions following briefing on HID's motion to dismiss is credible and plaintiff sent its proposed declaration to the government in good faith. *See NASCO, Inc.*, 124 F.R.D. at 142–43. Plaintiff's efforts to confirm the technical information in the declaration with the government demonstrates plaintiff could not reasonably obtain the information without

discovery.  The government's contract with HID does not conclusively demonstrate the card-based products do not infringe the asserted '119 Patent claims, nor was it frivolous for plaintiff to believe the government would require HID's card-based products to comply with ICAO Doc. 9303.  Ex. M at 30.  Within a few weeks of discussions with the government, and less than three weeks after receiving HID's letter threatening sanctions under RCFC 11, plaintiff amended its complaint to remove claims implicating HID's products—a relatively prompt response to reduce needless litigation.  *See* Pl.'s Opposed Mot. for Leave to Am. Compl.  The "very temple of justice" is not "defiled" by the above conduct.  *Amsted Industries, Inc.*, 23 F.3d at 378.  The Court, therefore, finds plaintiff did not conduct itself in bad faith sufficient to justify sanctions under the Court's inherent authority for asserting infringement allegations against HID's card-based products.  *Id.*  Given plaintiff did not conduct itself in bad faith, there is no need for the Court to consider whether it should exercise its inherent authority to sanction plaintiff to deter future misconduct.[10]

## C.     Whether Plaintiff's Presuit Investigation Warrants Sanctions

When filing a complaint, counsel must certify they have carried out "an inquiry reasonable under the circumstances."  RCFC 11(b).  The Rules of the Court of Federal Claims and Federal Circuit precedent also require counsel in a patent case to "interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement."  *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002); RCFC 11(b).  Such an interpretation must be "nonfrivolous."  *Antonious*, 275 F.3d at 1072.

Plaintiff supported its prefiling investigation efforts with a declaration from Mr. D. Yoon Chae.  *See* Chae Decl., ECF No. 182-1.  The declaration explains plaintiff performed a preliminary claim construction analysis, Chae Decl. ¶ 5, and plaintiff provided the Court with a "preliminary and exemplary" claim chart for one of the asserted claims, Pl.'s Sur-Reply in Opp'n to HID's Mot. for Att'y's Fees and Costs at 6–7, ECF No. 99.  Plaintiff also researched and reviewed publicly available information on the accused products, Chae Decl. ¶ 6, visually inspected the accused products, *id.* ¶ 7, and observed certain technical features necessary to practice the asserted patent claims, such as the presence of an RFID chip and a machine-readable zone, *id.* ¶ 15.  Plaintiff's research suggested the accused products were also required to comply with the ICAO Doc. 9303 standard.  *Id.* ¶ 10.  Based on this information, plaintiff determined the accused products infringed the asserted patent claims.  *Id.* ¶ 11.

HID counters this evidence by arguing Mr. Chae's declaration is "self-serving" and emphasizes plaintiff has not submitted any *contemporaneous* evidence of its presuit investigation.  HID Opening Supp. Br. at 14, 17; Tr. at 82:12–22.  The Court would have preferred contemporaneous evidence of plaintiff's investigation.  Nevertheless, Mr. Chae's unrebutted declaration is still evidence weighing in plaintiff's favor—if only slightly—and the

---

[10] HID also fails to establish plaintiff conducted itself in bad faith under the pre-*Octane Fitness* standard it proposes because it was not objectively obvious under the circumstances the card-based products did not infringe the '119 Patent.  *See Kilopass Tech*, 738 F.3d at 1310 ("subjective bad faith only requires proof that the 'lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known by the party asserting the claim.").

Court has already found plaintiff's infringement contentions were nonfrivolous. *See Apple Comput., Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 27 (Fed. Cir. 2000) (affirming the district court's conclusion plaintiff conducted a sufficient pretrial investigation because "the court must have been satisfied based on all of the evidence, *including the declaration of counsel for [plaintiff]* and the court's familiarity with the parties based on their conduct during the entire course of the trial, that [plaintiff] conducted an adequate pretrial investigation." (emphasis added)); *see also Princeton Digital Image Corp. v. Off. Depot Inc.*, No. CV 13-239, 2016 WL 1533697, at *14 (D. Del. Mar. 31, 2016) (accepting counsel's unrebutted representations in its declarations regarding its presuit investigation as true and finding those representations weighed against finding exceptionality under 35 U.S.C. § 285); *GN Resound A/S v. Callpod, Inc.*, No. C 11-04673, 2013 WL 5443046, at *3–4 (N.D. Cal., 2013) (finding counsel's declaration describing its presuit investigation was sufficient to show plaintiff performed an adequate prefiling inquiry).

Case law regarding a court's inherent authority to sanction a plaintiff for failing to carry out an adequate presuit investigation is sparse. Tr. at 98:18–100:9 (HID explaining there is little case law on the subject because most courts award fees for an inadequate presuit investigation in a patent case under 35 U.S.C. § 285); Pl.'s Supp. Response at 6–7 (noting plaintiff could not identify any decision where a court exercised its inherent authority to award attorneys' fees based solely on an inadequate presuit investigation.). HID identifies two cases it argues the Court should follow: *Parallel Iron LLC v. NetApp Inc.*, 70 F. Supp. 3d 585 (D. Del. 2014), and *Olguin v. Florida's Ultimate Heavy Hauling*, No. 17-61756-CIV, 2019 WL 3426539 (S.D. Fla. June 5, 2019), *report and recommendation adopted*, 2019 WL 5290856 (S.D. Fla. July 23, 2019).

According to HID, this case is like *Parallel Iron* because the plaintiff in that case initiated the suit without a good-faith belief of infringement and persisted in litigating its claim for an extended period. HID Opening Br. at 16. The court in *Parallel Iron* could not award attorneys' fees under 35 U.S.C. § 285 because the defendant was not a prevailing party within the meaning of the statute. *Parallel Iron LLC*, 70 F. Supp. 3d at 590. The *Parallel Iron* parties jointly dismissed the case with prejudice after entering into a license agreement, and the court had not made findings regarding any substantive issue in the case. *Id.* at 589–90. The district court, however, assessed attorneys' fees under its inherent authority after finding the plaintiff acted in bad faith because it failed to carry out even a minimal presuit investigation, continued litigating unfounded infringement claims for over a year, and only admitted it had no intention of accusing products its complaint originally implicated when asked directly in an interrogatory. *Id.* at 591–92. The plaintiff in *Parallel Iron* produced its own documents, including claim charts and public materials it relied on in its presuit investigation. *Id.* at 592. Upon reviewing those documents the court found there was no evidence to suggest the plaintiff carried out even a minimal investigation into the allegedly infringing products at issue. *Id.*

*Parallel Iron* is factually and procedurally distinguishable from this case. First, the court in *Parallel Iron* found the plaintiff "strung the [d]efendant along for one year, one month, and eighteen days stating that they were accusing [the defendant's] products [of patent infringement], only to state, when directly asked in an interrogatory, that they had no intention of accusing [those] products . . . ." *Id.* at 591–92. In this case, there is no indication plaintiff knew the card-

based products could not technically infringe the '119 Patent for an unreasonable period of time before seeking to amend its complaint. The *Parallel Iron* court also found it was apparent from the documents the plaintiff produced there was no evidence of even a minimal investigation. *Id.* at 592. In this case, plaintiff carried out a presuit investigation by evaluating HID's card-based products and the publicly available information on those products. Chae Decl. ¶¶ 6–7. That investigation was hampered by plaintiff's inability to discover how the government's system interacts with the card-based products and its inability to disassemble or reverse engineer the products without destroying them. *See Supra* Section III.B. Nevertheless, plaintiff carried out a sufficient investigation and reasonably relied on information suggesting HID's card-based products were compliant with the ICAO Doc. 9303 standard. Chae Decl. ¶ 10.

This case is also distinguishable from *Parallel Iron* because the plaintiff in that case filed over a dozen related suits involving the same patents. *Parallel Iron*, 70 F. Supp. 3d at 587; Stipulation and Order to Stay at 1, *Parallel Iron, LLC v. NetApp, Inc.*, No. 12-769 (Oct. 10, 2013), ECF No. 50. The *Parallel Iron* plaintiff also devoted its presuit investigation efforts to determining whether a certain standardized system infringed its patent and levied infringement allegations against a variety of products from different sources while neglecting to evaluate the particular product. *Parallel Iron, LLC*, 70 F.Supp.3d at 592. Here, plaintiff filed a single lawsuit against a single defendant and the evidence suggests plaintiff individually evaluated the alleged infringing products. Chae Decl. ¶¶ 6–7. Further, when plaintiff learned the products did not operate as it supposed, it promptly amended its complaint to remove claims implicating those products. *See* Pl.'s Opposed Mot. for Leave to Am. Compl.

Regarding *Olguin*, plaintiff's counsel in that case failed to realize before trial a statutory exemption applied and yet continued to litigate after receiving evidence of the exemption. HID's Opening Br. at 17. *Olguin* was a suit to recover minimum wages and unpaid overtime—not patent infringement. *Olguin*, 2019 WL 3426539, at *1–2. *Olguin* is dissimilar from this case. Besides the obvious differences in the nature of a patent infringement suit, here plaintiff promptly amended its complaint to remove claims implicating HID's products after accepting the government's representations indicating the card-based products could not infringe the asserted '119 Patent claims. *See* Pl.'s Opposed Mot. for Leave to Am. Compl. As such, the Court finds *Olguin* inapposite.

The Court is unpersuaded by HID's appeal to these nonprecedential cases. In the absence of contrary evidence, the Court finds plaintiff conducted an adequate presuit investigation. *Antonious*, 275 F.3d at 1072; RCFC 11(b). Rule 11(b) requires counsel to make a "nonfrivolous" interpretation of the claims at issue and perform a reasonable inquiry under the circumstances. RCFC 11(b); *Antonious*, 275 F.3d at 1072. The Court has reviewed the "preliminary and exemplary" constructions plaintiff submitted, Pl.'s Sur-Reply in Opp'n to HID Global Corp.'s Mot. for Att'y's Fees and Costs at 6–7, and concludes—without adopting any particular claim construction—plaintiff's preliminary claim construction was at minimum nonfrivolous. Plaintiff also submitted evidence of a reasonable investigation that included researching and reviewing publicly available information on the accused products, visually inspecting the accused products, and observing certain technical features, such as an RFID chip and machine-readable zone, necessary to practice the asserted patent claims. *See* Chae Decl.

This is sufficient for a presuit investigation under RCFC 11(b). *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000); *Antonious*, 275 F.3d at 1072.

## V.     Whether HID is Entitled to Attorneys' Fees Under EAJA

HID further makes the argument that EAJA grants the Court jurisdiction to award it attorneys' fees because "[a]ny prevailing party may recover attorneys' fees" under the statute. HID Opening Supp. Br. at 17.  Plaintiff opposes and the government also disagrees with HID's interpretation of the statute.  Def.'s. Resp. to HID's Opening Supp. Br. at 2 ("The [g]overnment does not share HID's reading of § 2412(b)."); Pl.'s Supp. Response at 15–18.  The text of the statute says:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b) (2018).

This court has previously held it lacks jurisdiction to grant a third-party defendant's request for attorneys' fees from a plaintiff under this statute.  *Thornton-Trump v. United States*, 12 Cl. Ct. 262, 262–63 (1987) ("[W]e are without power to render judgment against a plaintiff on a third-party defendant's claim for attorney's fees under 28 U.S.C. § 2412[.]"); *Lemelson v. United States*, 8 Cl. Ct. 789, 792 (1985) ("[T]he EAJA cannot form the basis for an award of fees as between plaintiff and third-party defendants.").  In *Thornton-Trump*, the court cited a precedential Court of Claims panel opinion, *Knogo Corp. v. United States*, which held in suits against the United States there can be no liability for attorneys' fees and expenses from a plaintiff to a third-party intervenor.[11]  *Thornton-Trump*, 12 Cl. Ct. at 262 (citing *Knogo Corp. v. United States*, 228 Ct. Cl. 372, 377–78 (1981) *cert. denied sub nom. Checkpoint Systems, Inc. v. Knogo Corp.*, 454 U.S. 1124 (1981)).  The Federal Circuit recently noted EAJA's purpose is for a plaintiff's recovery of attorneys' fees *from the government.  See Monroe*, 2022 WL 807400, at *6 ("EAJA provides an exception to the general rule that plaintiffs cannot recover attorneys' fees

---

[11] Shortly after its creation in 1982, the Federal Circuit adopted the body of law that was developed by its predecessor courts, the Court of Claims and the United States Court of Customs and Patent Appeals. *S. Corp. v. United States*, 690 F.2d 1368, 1369 (Fed. Cir. 1982) ("We hold that the holdings of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals, announced by those courts . . . shall be binding as precedent in this Court."); *Ginsburg v. United States*, 922 F.3d 1320, 1325 n.4 (Fed. Cir. 2019).  The Court of Claims' prior precedential decisions remain precedential until they are overturned en banc. *Kimberly-Clark Corp. v. Fort Howard Paper Co.*, 772 F.2d 860, 863 (Fed. Cir. 1985) ("[A] panel of this court is bound by prior precedential decisions unless and until overturned *in banc*.  Thus, statements in opinions of this court must be read harmoniously with prior precedent, not in isolation."); *Arroyo v. United States*, 116 Fed. Cl. 691, 699 n.12 (2014) ("Court of Claims decisions are binding on this Court unless overruled by the Federal Circuit.") (citing *South Corp.*, 690 F.2d at 1370–71).

and expenses against the United States." (citing *Scarborough v. Principi*, 541 U.S. 401, 404 (2004))).

HID admits these holdings would preclude awarding attorneys' fees between private parties under § 2412(b), but argues they were wrongly decided and not precedential.  Tr. at 125:24–126:10 ("THE COURT:  Doesn't [the holding in *Thornton-Trump*] preclude awarding attorneys' fees between private parties under 2412(b)?  [HID]:  Yes . . . .  But we don't believe that [the holdings in *Thornton-Trump* and *Lemelson*] are correct.").  This Court has previously explained 28 U.S.C. § 2412(b) is a jurisdictional statute subjecting the United States to this Court's jurisdiction.  *Stromness MPO, LLC v. United States*, 140 Fed. Cl. 415, 431 (2018) ("Because EAJA 'exposes the government to liability for attorney fees and expenses to which it would not otherwise be subjected, it is a waiver of sovereign immunity.'" (citation omitted));  *Brickwood Contractors, Inc. v. United States*, 49 Fed. Cl. 148, 152 (2001);  *St. Paul Fire & Marine Ins. Co. v. United States*, 4 Cl. Ct. 762, 766 (1984) ("The EAJA added section 2412(b)— a waiver of sovereign immunity with regard to attorney's fees.").  HID, however, urges the Court to follow the Fifth Circuit Court of Appeals' holding in *American Trucking, Assoc. v. ICC*, in which the court awarded attorneys' fees against the government to an intervenor who made significant contributions to prosecution of the case.  *American Trucking Ass'ns v. ICC*, 666 F.2d 167, 169 (5th Cir. 1982).[12]  The *government* was liable for attorneys' fees in that case, not the plaintiff.  *Id.*  Notably, none of the cases HID cites involve the court awarding attorneys' fees between private parties under § 2412(b).  *Gavette*, 808 F.2d at 1460 (en banc) (awarding attorneys' fees from the government to plaintiff);  *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 562 (5th Cir. 2015) (awarding attorneys' fees from the government to plaintiff);  *St. Paul Fire & Marine Ins.*, 4 Cl. Ct. at 766 (awarding attorneys' fees to the government);  *SUFI Network Servs., Inc. v. United States*, 128 Fed. Cl. 683, 693 (2016) (awarding attorneys' fees from the government to plaintiff);  *Nat'l Wildlife Fed'n v. FERC*, 870 F.2d 542, 546 (9th Cir. 1989) (awarding attorneys' fees from the government to a third-party plaintiff intervenor).

The Court is not persuaded by HID's interpretation of § 2412(b) and related case law.  First, the plain language of the statute supports interpreting § 2412(b) as merely a jurisdictional statute.  For example, the statute, which falls under the heading "United States as Party Generally, Costs and Fees," expressly states:  "The *United States shall be liable* for such fees and expenses to the same extent that any other party would be liable . . . ."  28 U.S.C. § 2412(b) (emphasis added).  The statute says nothing of private parties' liability to one another for attorneys' fees, only that the United States shall be liable to the same extent a private party would be.  *Id.*  Further, there is no indication in the statutory text or structure that § 2412(b) was intended to extend this Court's jurisdiction to encompass disputes between private parties.  *Id.*

Second, HID's suggested interpretation of the statute is inconsistent with binding Court of Claims panel precedent holding the court lacks jurisdiction to award third-party defendants attorneys' fees against a plaintiff under § 2412(b).  *Knogo Corp.*, 228 Ct. Cl. at 377–78;

---

[12] For the first time at oral argument, HID asserted *American Trucking* was precedential for this Court because the question whether § 2412(b) allows attorneys' fees between private parties is not a matter specific to the Federal Circuit's jurisdiction.  Tr. at 126:25–127:23 ("if [the legal issue is] not specific to patent law, which it's not here, then the regional circuit law would be precedential to the Court of Federal Claims.").  HID provided no support for this proposition, and agreed *American Trucking* is factually distinguishable from this case.  Tr. 127:16–128:11.

*Thornton-Trump*, 12 Cl. Ct. at 262 (holding the Court of Federal Claims is "without power to render judgment against a plaintiff on a third-party defendant's claim for attorney's fees under 28 U.S.C. § 2412." (citing *Knogo Corp*, 228 Ct. Cl. at 377–78)); *Lemelson*, 8 Cl. Ct. at 792 ("[T]he Equal Access to Justice Act . . . is of no avail to third-party defendants. The EAJA was meant to effect a limited waiver of sovereign immunity only as between the government and a private litigant."); *see also Arroyo*, 116 Fed. Cl. at 699 n.12. Thus, the Court concludes 28 U.S.C. § 2412(b) does not authorize the Court to award attorneys' fees between plaintiff and HID. *Id.*

## VI.   Whether the Court Should Sanction Plaintiff Sua Sponte Under Rule 11

As the Court stated in its 14 October 2020 opinion in this case, ECF No. 168, RCFC 11(c) vests in the Court the ability to grant sanctions "[i]f, after notice and a reasonable opportunity to respond, the court determines that RCFC 11(b) has been violated." The potentially sanctionable conduct provided in RCFC 11(b) includes: presenting material to the court "for any improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" presenting frivolous arguments; making factual contentions lacking evidentiary support; or the unwarranted denial of factual contentions. Pursuant to RCFC 11(c)(4), sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." "[T]he central purpose of Rule 11 is to deter baseless filings in district courts and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Rule 11 is thus "aimed at curbing abuses of the judicial system." *Id.* at 397.

As discussed *supra* Section III, the Court does not find plaintiff engaged in any sanctionable misconduct in this case. The Court further notes it "cannot impose sanctions [sua sponte under Rule 11] after a party is no longer able to withdraw or amend its challenged pleading unless the court makes a finding of subjective bad faith." *Castro v. Mitchell*, 727 F. Supp. 2d 302, 309 (S.D.N.Y. 2010); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (imposing sanctions sua sponte requires conduct "akin to a contempt of court"). For these reasons, the Court declines to sanction plaintiff sua sponte under Rule 11. *Id.*

Aside from a lack of misconduct, it is questionable how plaintiff's conduct is responsible for "burden[ing] [HID] with needless expense." HID Opening Br. at 19 (quoting *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997)). Unlike an action filed in a United States district court, the United States is always the defendant in an action brought in the Court of Federal Claims under the Tucker Act. 28 U.S.C. § 1491 (2018) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim *against the United States* . . . .") (emphasis added). While third parties may receive notice under RCFC 14 of an interest they may have in the action, their intervention is not mandatory. *See* RCFC 14(c) ("A person served with a notice issued under this rule *may* file an appropriate pleading setting forth the person's interest . . . .") (emphasis added); *see also* RCFC 24; Notice at 5, ECF No. 11 ("If you have an interest in the subject matter of this case . . . you *may* file a complaint or answer herein in accordance with Rule 14.") (emphasis added). It is "to be emphasized" when third parties are "noticed" under Rule 14, they are "noticed," not "'summoned' in as parties." *Midwest Indus. Painting of Fla. v. United States*, 1 Cl. Ct. 209, 211 (1983). Third-

parties "have a right to participate in order to protect their interests in the matter being litigated" but "such a party cannot be forced to appear and participate." *Id.*

> It is immaterial, when the notice provisions of [RCFC] 14(a)(1) are utilized, that the court does not have jurisdiction to grant relief to [third-party defendant], that [third-party defendant] can decline to appear, that [third-party defendant] cannot be forced to appear and participate in the action, and that [third-party defendant] may be nonetheless bound in a later suit in another court by certain determinations made in this case by this court. The notice provision gives [third-party defendants] the opportunity, without compulsion to appear in this litigation and protect its interests. This option rests with [third-party defendant].

*Myrtle Beach Pipeline Co. v. United States*, 6 Cl. Ct. 363, 365–66 (1984) (citations omitted). "If the notice declines to appear in the matter, 'the noticed entity remains a nonparty until it appears voluntarily.'"[13] *Pac. Gas & Elec. Co. v. United States*, 98 Fed. Cl. 699, 701 (2011) (citing *Oak Forest, Inc. v. United States*, 26 Cl. Ct. 1397, 1399 (1992) and *Midwest Indus. Painting of Fla. v. United States*, 1 Cl. Ct. 209, 211 (1983)); *see also* Tr. at 17:23–18:9 ("THE COURT: . . . [I]s there anything about a Rule 14 notice that makes joinder mandatory for a noticed third party?  [GOVERNMENT]: No, Your Honor.").

Different considerations factor into a party's decision to intervene in a Court of Federal Claims proceeding than in a district court proceeding. In a district court proceeding, for example, a party may choose to intervene to defend its interests in the event the named defendant will not "adequately represent that interest." Fed. R. Civ. P. 24; *see also Jordan v. Michigan Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000) ("The [would-be intervenor's] only argument [supporting its motion to intervene] is that [it] would be more vigorous in pursuing its claim for reimbursement than [p]laintiffs."). A party may also choose to intervene in a district court proceeding because there may be a chance the named defendant will not appear and will default. *Crum & Forster Specialty Ins. Co. v. Strong Contractors, Inc.*, 488 F. Supp. 3d 192, 195, 197 (E.D. Pa. 2020) (describing how a party with an "economic interest in the outcome of" an action sought to intervene because the defendant "never filed an [a]nswer or otherwise responded to the [c]omplaint"). These considerations do not typically factor into a decision to intervene in a Court of Federal Claims proceeding because the United States is represented by the Department of Justice and, as the government said at oral argument, "the [g]overnment is not going to default." Tr. at 31:24–32:12 (GOVERNMENT: "In the Court of Federal Claims, the [g]overnment is not going to default. . . . THE COURT: The [g]overnment always shows up.  [GOVERNMENT]: That is certainly our intention [as] the Department [of Justice]."); *see also Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*, 695 F.3d 1310, 1317 (Fed. Cir. 2012) ("[B]ecause [plaintiff] can show no divergence in either motivations or approaches between itself and the government as to this case, [plaintiff] also failed to overcome the presumption that the government as sovereign can

---

[13] If the noticed party "fails to appear in response to the . . . notice, it may not, in later litigation for the enforcement of the indemnity against it, assert that this court incorrectly decided that plaintiff's patent is valid and was infringed by the apparatus furnished by the third party." *Bowser, Inc. v. United States*, 420 F.2d 1057, 1060 (Ct. Cl. 1970).

adequately represent its interests" to the "utmost, just as [plaintiff] would do were it a party.");
*see also* Tr. at 11:6–14 ("THE COURT: But the [g]overnment did not compel HID to join the
lawsuit. [HID]: It's not mandatory. That's correct, Your Honor. . . . HID could sit back and let
the [g]overnment defend it . . . .").

In this case, the government filed a motion under RCFC 14 to notify HID of this
lawsuit—not to compel it to join, but to discharge the government's duty to notify all parties
with a potential interest in the litigation. *See* RCFC 14(c) ("A person served with a notice issued
under this rule *may* file an appropriate pleading setting forth the person's interest . . . .")
(emphasis added); Tr. at 26:18–27:4 ("[GOVERNMENT]: . . . [W]e were discharging our
duties by noticing any and all parties that had any potential interest in the litigation. THE
COURT: And then leaving it up to them to make their decision on the allegations in the
complaint and the need to join. [GOVERNMENT]: Exactly."). HID chose to intervene in the
action even though, in its view, plaintiff's complaint was "exceptionally weak," and so
"glaring[ly] and obvious[ly] flaw[ed]" that "simply looking at HID's card-based products shows
that they do not [infringe the '119 patent]." HID Opening Supp. Br. at 2–3, 11. Thirty-five
interested parties received notice of this case under RCFC 14, five of those intervened, and only
one—HID—filed a motion to dismiss. *See* United States Unopposed Mot. Notice Third Parties,
ECF No. 7. To the extent an award of attorneys' fees is intended to make a party whole or curb
abuse of the judicial system, it may not be appropriate to award attorneys' fees to a third-party
who subjects itself to "exceptionally weak" litigation voluntarily. HID Opening Supp. Br. at 2.
A motion for attorneys' fees in such a case should perhaps be carefully scrutinized. The Court,
however, does not decide the issue here because it finds HID is not entitled to attorneys' fees
under RCFC 11 on other grounds. *See supra* Section III; *Castro*, 727 F. Supp. 2d at 309;
*Hadges*, 48 F.3d at 1329.

**VII.   Conclusion**

For the reasons discussed *supra*, the Court **DENIES** the remainder of HID's arguments
for its entitlement to attorneys' fees contained in its motion for attorneys' fees and costs, ECF
No. 63, and its supplemental briefing on such, ECF Nos. 177, 184. Since HID is not entitled to
attorneys' fees and costs, the Court accordingly **DENIES as MOOT** HID's motion for quantum
of attorneys' fees and costs, ECF No. 140. The Clerk is directed to **TERMINATE** HID's status
as an interested party.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge