# In the United States Court of Federal Claims

No. 17-1812
(Filed: 7 November 2024)[*]

```
*****************************************
GIESECKE & DEVRIENT GMBH,               *
                                        *
            Plaintiff,                  *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
            Defendant,                  *
                                        *
and                                     *
                                        *
IDEMIA IDENTITY                         *
& SECURITY USA, LLC,                    *
                                        *
            Third-Party Defendant.      *
                                        *
*****************************************
```

*John G. Flaim*, Baker & McKenzie, LLP, with whom were *Nicholas O. Kennedy* and *Mackenzie M. Martin*, all of Dallas, TX, and *Shima Roy*, of Chicago, IL, for plaintiff.

*Michel E. Souaya*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Conrad DeWitte* and *Grant Johnson*, all of Washington, DC, for defendant.

*Richard L. Brophy*, Armstrong Teasdale, LLP, with whom were *Kyle Gottuso*, all of St. Louis, MO, and *Charlie Jonas*, of New York, NY, for third-party defendant Idemia Identity & Security USA, LLC.

## ORDER

**HOLTE, Judge.**

Third-party defendant Idemia sought to depose a former Idemia employee, Tom Kinneging, in the eleventh hour of fact discovery. Given the impending fact discovery deadline, Idemia proposed only a narrow window in which this new deposition could occur. According to

---

[*] This Order was initially filed under seal on 31 October 2024 under the protective order in this case. The Court provided the parties the opportunity to submit proposed redactions at or before 5:00 p.m. (ET) on 5 November 2024. As the parties confirmed via email they have no redactions, this Order is now reissued in its original form with a few minor, non-substantive corrections.

Idemia, Mr. Kinneging was an invaluable fact witness and his deposition was imperative to the case. Plaintiff opposed the deposition and asked the Court to compel Idemia to produce all its communications with Mr. Kinneging. While the parties eventually agreed to allow the deposition to proceed, the issue over the production of the communications remained. Idemia initially claimed privilege over the communications, but unbeknownst to plaintiff and the Court, Mr. Kinneging held a dual role in this case—he was also a retained non-testifying expert—resulting in Idemia to further claim the communications were protected under Rule 26 of the Rule of the United States Court of Federal Claims ("RCFC"). Plaintiff disagreed, claiming not only was the dual role improper, but the communications were not privileged and otherwise discoverable. The parties spilled much ink over the communications but ultimately agreed to the production of some communications and the termination of Mr. Kinneging's dual role. Several communications, however, remain at issue. The Court ordered Idemia to produce to plaintiff redacted versions of the remaining communications and full versions of the communications to the Court for *in camera* review. The Court must now decide what communications, if any, are privileged or otherwise beyond the scope of discovery and, whether the further reductions are warranted. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's Supplemental Motion to Compel.

## I.      Background Related to Plaintiff's Supplemental Motion to Compel

The Court begins with the background of Mr. Kinneging—the witness at the center of the parties' current dispute. Mr. Kinneging is an engineer with a background in electronics and software engineering, *see* 9 Oct. 2024 Oral Arg. Tr. ("Day 2 Tr.") at 35:16–19, ECF No. 389, and was employed by Idemia from 2001 to 2021, *see* Day 2 Tr. at 35:9–15. As a part of his employment at Idemia, he "served as the senior advisor" of the International Civil Aviation Organization ("ICAO"), *see* Idemia's Opp. to Suppl. Mot. to Compel ("Idemia's SMTC Opp.") at 3, ECF. No. 375; 24 Sept. 2024 Oral Arg. Tr. ("Day 1 Tr.") at 79:1–7, ECF No. 381; Day 2 Tr. at 36:1–3, "a standard-setting organization that deals with a number of different things relating to airports," *see* Day 1 Tr. at 77:12–24. Through his work with the ICAO, Mr. Kinneging gained "extensive personal knowledge regarding the historical development of ePassport technologies and standards governing the reading of ePassports." Idemia's Mot. for Leave to Depose Kinneging After Fact Discovery Deadline ("Idemia's Mot. for Leave") at 5, ECF No. 366.

As described by Idemia, Mr. Kinneging held roles as both a fact witness and non-testifying expert throughout this case. *See id.* Mr. Kinneging's role as a fact witness includes "providing fact testimony regarding his first-hand experience working with the ICAO organization on behalf of Idemia to develop the very concepts that [plaintiff] improperly patented," Idemia's Suppl. Br. in Resp. to ECF No. 376 ("Idemia's 1st Round Suppl. Br.") at 2 (emphasis omitted), ECF No. 383, "collecting documents (e.g., searching for, uploading, and/or analyzing documents relating to his work with ICAO), sharing background relating to those documents (including identifying a presentation he gave to [plaintiff]'s employees that conveyed the very invention plaintiff later patented), and reviewing materials in preparation for deposition as a fact witness," *id.* at 4. While Mr. Kinneging's role as a non-testifying expert role involve "gathering his expert feedback on a particular prior-art reference," Idemia's Suppl. Br. in Resp. to ECF No. 391 ("Idemia's 2nd Round Suppl. Br.") at 3, ECF No. 392, and Idemia intended to rely on Mr. Kinneging's "extensive expertise in the area of ePassports and security mechanisms

to counsel Idemia's attorneys as they prepare for trial," Idemia's 1st Round Suppl. Br. at 2.

### A. Factual Background Regarding the Dispute to Depose Mr. Kinneging

The current motions come after a series of discovery disputes between the parties.[1]  On 6 August 2024, pursuant to the Court's 11 July 2024 Order, ECF No. 351, the parties filed a joint status report ("JSR") providing the parties' views on all pending discovery issues.  *See* 6 Aug. 2024 JSR at 1, ECF No. 357.  The JSR detailed the parties' positions on several discovery deficiencies, including the possible need to reschedule Mr. Kinneging's deposition due to health complications.  *See id.* at 2, 2 n.2, 7–8.

On 16 August 2024, plaintiff filed an Emergency Motion to Compel the Deposition of Idemia's Witnesses, asking the Court to order Idemia to "designate and produce a 30(b)(6) deposition witness to testify as to Idemia's knowledge regarding [plaintiff]'s 30(b)(6) notice topic[s]" related to "Idemia's allegations of inequitable conduct, unenforceability, and invalidity" of the asserted patents, Pl.'s Emergency Mot. to Compel ("Pl.'s EMTC") at 4 n.4, 7, ECF No. 360, as Mr. Kinneging was no longer available to testify due to a "health setback," *id.* at 4–5.  Following Mr. Kinneging's health setback, Idemia requested plaintiff "agree to extend the fact discovery cut off" to await his recovery*, id.* at 4–5, and argued in its Opposition, the Court should extend fact discovery for "the narrow purpose of permitting Mr. Kinneging" to recover from his ailment and be deposed later, Idemia's Opp. to Pl.'s Emergency Mot. to Compel ("Idemia's EMTC Opp.") at 8, ECF No. 362.  On 20 August 2024, the Court granted plaintiff's Motion "as to its request to compel Idemia to produce a[nother] 30(b)(6) witness by 30 August 2024" finding "no good cause" justified extending the fact discovery deadline.  20 August 2024 Order at 7, ECF No. 364 (emphasis omitted).

The dispute over Mr. Kinneging's deposition, however, was not over.  On 29 August 2024, Idemia sought leave to depose Mr. Kinneging "as a third-party fact witness" regarding Mr. Kinneging's knowledge on ePassport technology and work experience at Idemia.  Idemia's Mot. for Leave at 5.  Specifically, Idemia requested Mr. Kinneging to be deposed virtually due to his health setback.  *Id.* at 2, 2 n.1.  In its Opposition, plaintiff opposed the extension of fact discovery deadline and for the first time requested Idemia to produce its communications with Mr. Kinneging.  Pl.'s Opp. to Idemia's Mot. for Leave to Depose Kinneging After Fact Discovery Deadline ("Pl.'s Mot. for Leave Opp.") at 1, 5–7, ECF No. 369.

On 6 September 2024, "[a]fter considering the parties' briefing on whether the deposition of Mr. Kinneging should occur, the Court [was] inclined to grant Idemia's Motion as the Court 'has wide discretion in setting the limits of discovery.'"  6 Sept. 2024 Order at 2, ECF No. 371 (citation omitted).  The Court, however, ordered supplemental briefing from both parties "as the issue on privileged communications ha[d] not been fully briefed."  *Id.*

---

[1] A complete history of discovery disputes in this case and the Court's plan to resolve such disputes can be found in the Court's 20 August 2024 Opinion and Order and 6 September 2024 Order.  *See* 20 Aug. 2024 Opinion and Order, ECF No. 364; 6 Sept. 2024 Order, ECF No. 371; *see also* 6 Aug. 2024 JSR, ECF No. 357; 7 Aug. Order, ECF No. 358; 30 Aug. 2024 JSR, ECF No. 367.

On 10 September 2024, plaintiff filed a supplemental motion to compel, seeking the Court to order Idemia to produce the following categories of documents:  "(1) [post-retirement] cover emails between Mr. Kinneging and Idemia's counsel attaching prior art . . . ; (2) [post-retirement] correspondence from Mr. Kinneging in which he describes his work history with Idemia and participation in ICAO and other similar organizations; and (3) [post-retirement] correspondence relating to logistics and scheduling of Mr. Kinneging's deposition."  Pl.'s Suppl. Mot. to Compel ("Pl.'s SMTC") at 1, ECF No. 372.  Plaintiff further requested the deposition to be in person should the Court grant Idemia's Motion for Leave.  *See id.* at 5.

Following plaintiff's Supplemental Motion to Compel, Idemia agreed to produce document categories (1) and (3), so long as their production did not constitute waiver of privilege for the other documents being withheld.  *See* 24 Sept. 2024 Order at 1–2, ECF No. 380.  Idemia, however, refused to produce the rest of the emails, based on attorney-client privilege and work product doctrine.  *See* Idemia's SMTC Opp. at 2, 5.  In claiming the documents were properly withheld, Idemia also disclosed for the first time that Mr. Kinneging was "retained as a consultant by Idemia (through counsel) in connection with this lawsuit," and Mr. Kinneging's consulting role "provide[d] a further reason for denying [plaintiff]'s [M]otion."  *Id.* at 4.

In its Reply, plaintiff requested "Idemia [to] disclose the terms of the consulting agreement . . . including the nature of Mr. Kinneging's relationship with Idemia, fees or payments under the agreement, and the date on which this agreement was offered and signed." Pl.'s Reply in Supp. of Suppl. Mot. to Compel ("Pl.'s SMTC Reply") at 2, ECF No. 376. Plaintiff further requested the Court to order "Idemia to elect whether Mr. Kinneging is a fact or consulting witness" and "produce all of Mr. Kinneging's post-employment documents or require a log and review them *in camera* to determine whether they are subject to a privilege."  *Id.* at 5.

Before the 24 September 2024 oral argument, Idemia shared a privilege log with plaintiff and the Court regarding all communications it continued to withhold.  *See* 24 Sept. 2024 Order at 1.  As a result of the privilege log, a fourth category of withheld documents—"documents around the negotiation of Mr. Kinneging's engagement or consulting agreement with Idemia and the payments made" to him—was identified.  Day 1 Tr. at 30:6–14.  While discussing the privilege log at oral argument, the parties agreed Idemia would "submit the communications withheld based on privilege for the Court to review *in camera*" and would "produce to plaintiff their consulting and engagement agreements with Mr. Kinneging and any invoices for payments to him."  24 Sept. 2024 Order at 2.

**B. Party Agreements Regarding Mr. Kinneging's Deposition and Communications**

As discussed *supra* Section I.A, prior to the 24 September 2024 oral argument, Idemia agreed to produce document categories (1) and (3) and the "consulting and engagement agreements with Mr. Kinneging and any invoices for payments to him."  24 Sept. 2024 Order at 1–2.  At the 9 October 2024 oral argument, the parties reached further agreements on several of the outstanding issues.  First, the parties agreed Mr. Kinneging would serve "solely [a]s a fact witness" moving forward*, see* Day 2 Tr. at 7:2–5, and Idemia specifically agreed to terminate its consulting agreement with Mr. Kinneging as of 9 October 2024, *see* Day 2 Tr. at 25:8–15, 67:10–13.  Second, while during the 24 September 2024 oral argument plaintiff seemed open to

having Mr. Kinneging be deposed after the close of fact discovery, *see* Day 1 Tr. at 26:1–5, 28:4–5, plaintiff confirmed it had "no objection" to Mr. Kinneging being deposed "so long as he testifies as a fact witness," Day 2 Tr. at 9:6–16, 10:5–13. In fact, plaintiff agreed there was no surprise Mr. Kinneging would be deposed as a fact witness because it was "aware of Mr. Kinneging having relevant information in this case in association with the Rule 26 disclosures." *See* Day 2 Tr. at 8:22–9:6. Third, given the parties had conducted "only one" deposition remotely[2] and the large volume of documents the parties planned to cover during Mr. Kinneging's deposition, the parties agreed for Mr. Kinneging's deposition to be "in person." *See* Day 2 Tr. at 10:14–20, 12:19–21. Fourth, the parties agreed Idemia's counsel, Armstrong Teasdale, could represent Mr. Kinneging as a former employee fact witness for the purposes of the deposition.[3] *See* Day 2 Tr. at 23:22–24:18, 27:3–8, 31:21–25. In fact, plaintiff's counsel confirmed it had "represented all of [plaintiff]'s ex-employees in all of their depositions." Day 2 Tr. at 27:18–21; *see* Day 2 Tr. at 27:22–28:5. Fifth, the parties agreed Mr. Kinneging's $160 per hour rate is reasonable for all work performed in connection with the case. *See* Day 2 Tr. at 17:2–16, 22:9–20, 21:18, 23:3–9. Finally, Idemia voluntarily agreed to produce Email Chains 1 and 9–11, *see* Day 2 Tr. at 91:9–94:11, 134:2–135:4, and redacted versions of Email Chains 2–8, 12–14, and 16. *See* Day 2 Tr. at 109:20–24.

## C. Remaining Issues Prior to Mr. Kinneging's Deposition

Based on the parties' agreements at the 9 October 2024 oral argument, the Court extended fact discovery to allow Idemia and plaintiff to conduct Mr. Kinneging's deposition in person. *See* 10 Oct. 2024 Order at 1–2, ECF No. 390; *see also* 20 Aug. 2024 Order at 5 (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (explaining the court's discretion in setting the limits of discovery and noting the court "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." (citation omitted)). Before the Court now is whether the remainder of the documents are properly withheld and what the scope of plaintiff's questioning of Mr. Kinneging would be during the deposition.

## II. Relevant Procedural History

---

[2] During the 9 October 2024 oral argument, plaintiff explained the parties "had agreed previously" to "depose Mr. Kinneging in person," Day 2 Tr. at 11:23–24, and the one remote deposition was exceptional. *See* Day 2 Tr. at 10:18–11:1 ("[THE COURT:] [H]ow many remote depositions have the parties conducted so far in this case? [PLAINTIFF:] Only one, Your Honor. . . . and that was due to scheduling issues . . . . [T]hat was the last day of fact discovery, and the parties were loaded up with depositions . . . that week, so we had agreed to conduct [the] deposition by video.").

[3] Plaintiff originally objected to Idemia's counsel, Armstrong Teasdale, representing Mr. Kinneging as a former employee at Mr. Kinneging's deposition. *See* Pl. 1st Round Suppl. Br. at 7. At oral argument, when the Court clarified the caselaw, however, plaintiff agreed it had no objection to Armstrong Teasdale representing Mr. Kinneging as a former employee at his deposition. *See* Day 2 Tr. at 27:3–8 ("[THE COURT:] [D]oes [p]laintiff object to Armstrong Teasdale representing Mr. Kinneging as a former employee/fact witness for the purposes of his deposition? [PLAINTIFF:] . . . [W]e don't object to the representation of Mr. Kinneging as a former employee[.]"); Day 2 Tr. at 31:21–25 ("THE COURT: But for now . . . [p]laintiff has no objection for Armstrong Teasdale to represent Mr. Kinneging at his deposition as a former employee fact witness. [PLAINTIFF:] Correct.").

Throughout the case, the parties have undertaken multiple rounds of briefing and supplemental briefing related to the dispute over Mr. Kinneging's deposition and production of communications between Mr. Kinneging and Idemia's counsel.

### A.  Idemia's Motion for Leave to Depose Mr. Kinneging as a Fact Witness

On 16 August 2024, plaintiff filed an emergency motion to compel the deposition of Idemia's witnesses, seeking the Court to order Idemia to designate and produce a 30(b)(6) witness. Pl.'s EMTC at 4 n.4, 7.  Idemia filed its Opposition on 17 August 2024.  Idemia's EMTC Opp. at 8.  On 19 August 2024, plaintiff filed its Reply.  *See* Pl.'s Reply in Supp. of Emergency Mot. to Compel, ECF No. 363.  On 20 August 2024, the Court granted plaintiff's Motion to Compel the deposition of Idemia's 30(b)(6) witness.  *See* 20 Aug. 2024 Order at 7.

On 29 August 2024, Idemia filed its Motion for Leave to Depose Mr. Kinneging After Fact Discovery Deadline.  Idemia's Mot. for Leave at 5.  Shortly after, on 3 September 2024, plaintiff filed its Opposition.  Pl.'s Mot. for Leave Opp. at 1, 5–7.  On 5 September 2024, Idemia replied.  *See* Idemia's Reply to Mot. for Leave to Depose Kinneging After Fact Discovery Deadline ("Idemia's Mot. for Leave Reply") at 1, ECF No. 370.

### B.  Plaintiff's Supplemental Motion to Compel Documents and Correspondence Between Idemia and Mr. Kinneging

On 6 September 2024, the Court ordered supplemental briefing on the issue of privileged communications between Idemia and Mr. Kinneging.  *See* 6 Sept. 2024 Order.  On 10 September 2024, plaintiff filed a supplemental motion to compel, arguing for production of the withheld communications with Mr. Kinneging.  *See* Pl.'s SMTC.  On 13 September 2024, Idemia filed its Opposition.  *See* Idemia's SMTC Opp.  Plaintiff filed its Reply on 16 September 2024.  *See* Pl.'s SMTC Reply.

On 24 September 2024, the Court held oral argument regarding third-party defendant Idemia's Motion for Leave to depose Mr. Kinneging as a fact witness and plaintiff's Supplemental Motion to Compel production of Mr. Kinneging's post-retirement communications with Idemia.  *See* 24 Sept. 2024 Order at 1.  During the 24 September 2024 oral argument, the Court ordered the parties to file supplemental briefing regarding Mr. Kinneging's role as a non-testifying expert and payments to him.  *See id.* at 2.  On 27 September 2024, Idemia filed a supplemental brief.  *See* Idemia's 1st Round Suppl. Br.  Plaintiff then filed a supplemental brief on 2 October 2024.  *See* Pl.'s Suppl. Reply to Idemia's Suppl. Br. in Resp. to ECF No. 376 ("Pl.'s 1st Round Suppl. Br.") at 2, ECF No. 386.

The Court held a follow-up oral argument on 9 October 2024.  *See* 10 Oct. 2024 Order at 1.  During the 9 October 2024 oral argument, the Court extended fact discovery for Mr. Kinneging's deposition to occur and ordered the deposition to be held in person.  *See id.* at 1–2. The Court also ordered Idemia to produce redacted versions of the withheld documents.  *See id.* at 2 (ordering redactions to be "targeted redactions of communications Idemia believes to be privileged, consistent with Idemia's positions during the 9 October 2024 oral argument").  The Court further ordered the parties to file a second round of supplemental briefing.  *See id.*

(ordering the parties "to provide any additional arguments and law, including caselaw regarding refusal for witnesses serving as both fact witness and litigation consultants and permitting discovery into documents and communications"). On 15 October 2024, plaintiff filed another supplemental brief. *See* Pl.'s Suppl. Br. in Supp. of its Suppl. Mot. to Compel ("Pl.'s 2nd Round Suppl. Br."), ECF No. 391. Idemia then filed another supplemental brief on 16 October 2024. *See* Idemia's 2nd Round Suppl. Br.

## III.   Party Arguments

### A.  Idemia's Motion for Leave to Depose Mr. Kinneging as a Fact Witness

In its Motion for Leave, Idemia argued good cause exists because Mr. Kinneging "is an important fact witness in this case" considering: (1) Mr. Kinneging "developed the very concepts" plaintiff patented "after Kinneging shared those concepts with" plaintiff; (2) Mr. Kinneging's work with the ICAO which provided him with "extensive personal knowledge regarding the historical development of ePassport technologies and standards governing the reading of ePassports"; and (3) Mr. Kinneging's "personal experience developing ePassport technologies and standards dates back to approximately 2000–2001—years before the earliest priority dates" plaintiffs asserted patents. Idemia's Mot. for Leave at 1 (emphasis omitted). In its Opposition, plaintiff argued no good cause exits to extend fact discovery because it would "prejudice" plaintiff and Idemia was "not diligent in attempting to meet the discovery schedule." Pl.'s Mot. for Leave Opp. at 1. In its Reply, Idemia argued: (1) "it was diligent in pursuing Mr. Kinneging's testimony" as it scheduled Mr. Kinneging's deposition "to occur within the fact discovery period" and "had no control over" Mr. Kinneging's health or "its coincidence with his scheduled deposition;" and (2) Mr. Kinneging's deposition allows plaintiff to "question Mr. Kinneging before he testifies at trial" on "prior art material that Idemia contends invalidate [plaintiff]'s patent claims." Idemia's Mot. for Leave Reply at 1, 3–4.

### B.  Plaintiff's Supplemental Motion to Compel Documents and Correspondence Between Idemia and Mr. Kinneging Withheld Based on Attorney-Client Privilege and Work Product Doctrine

In its Supplemental Motion to Compel, plaintiff argued the presumption of attorney-client privilege does not apply to Idemia's emails because "no privilege extended to Mr. Kinneging, a former employee, in the first place" and "Idemia has expressly disclaimed an attorney-client relationship with Mr. Kinneging." Pl.'s SMTC at 2. According to plaintiff, "Mr. Kinneging has no attorney-client relationship with Idemia, nor its counsel, and does not have any stake in the outcome of this litigation." *Id.* Additionally, plaintiff argued Idemia "obstructed discovery" by preventing plaintiff from contacting Mr. Kinneging "on its own accord based on a misrepresentation that he was represented by counsel only to disclaim an attorney-client relationship at the eleventh hour." *Id.* at 3 n.3.

In its Opposition, Idemia "contends these materials are protected communications" and are subject to the protections of attorney-client privilege or work product doctrine. *See* Idemia's SMTC Opp. at 1. According to Idemia, based on Justice Berger's concurrence in *Upjohn Company v. United States*, 449 U.S. 383 (1981), "many courts have extended the important

protections of attorney-client privilege to former employees." Idemia's SMTC Opp. at 2. Based on those decisions, Idemia argued, communications between Mr. Kinneging and Idemia's counsel regarding his employment with Idemia and the activities with ICAO as an Idemia employee are protected. *See id.* at 4. Idemia further argued plaintiff's Motion should be denied because Mr. Kinneging was retained as a consultant through counsel "in connection with this lawsuit considering his valuable insight into the ICAO related activities and disclosures gained during his" employment at Idemia. *Id.*

In its Reply, plaintiff accuses Idemia of "engaging improperly in gamesmanship around its relationship with Mr. Kinneging and his role in this litigation." Pl.'s SMTC Reply at 1. Plaintiff argued Idemia disclosed for the first time in its Opposition on 16 September 2024 that Mr. Kinneging was a consultant in this case and "never disclosed Mr. Kinneging as a consultant in this case pursuant to the Protective Order or in prior briefing on this issue." *Id.* at 1. Plaintiff further argued Idemia offers no information as to "when the parties entered into that supposed agreement." *Id.*

### C. Parties' Supplemental Briefings Regarding Mr. Kinneging's Former Role as a Non-Testifying Expert

In the supplemental briefings, Idemia argued while it voluntarily agreed to limit Mr. Kinneging's role to only a fact witness, Mr. Kinneging's former dual role—as a fact witness and a non-testifying expert—was proper because the two roles were distinct, *see* Idemia's 1st Round Suppl. Br. at 2–3, as Mr. Kinneging's "assistance as a consulting expert did not overlap with the information about which Mr. Kinneging will testify as a fact witness," Idemia's 2nd Round Suppl. Br. at 3. Idemia also argued no legal authority warrants removing RCFC 26(b)(4)(D) protections from Mr. Kinneging's former role as a non-testifying expert and the caselaw plaintiff "relies heavily on" is "inapplicable" and "inapposite to the present situation." *Id.*

In response, plaintiff argued Mr. Kinneging's former non-testifying expert role and fact witness role were "one and the same" because all of Mr. Kinneging's experience was "derived from his work at Idemia." Pl.'s 1st Round Suppl. Br. at 2. According to plaintiff, none of the authority relied upon by Idemia supports its position Mr. Kinneging's dual role was proper. *See id.* at 3. Plaintiff further argued Idemia should not "have free reign to designate Mr. Kinneging as it wishes, without regard to subject matter," because it would allow Idemia to "manipulate the privilege afforded to non-testifying witnesses." *Id.* Per plaintiff, "[t]o the extent Idemia chose to provide Mr. Kinneging with documents or testimony relating to inventorship or prior art, it did so at its own peril." *Id.* at 5. Plaintiff also argued "privilege has been waived" because "Idemia never asserted Rule 26 privilege over any documents or communications in its privilege log or any other filings." Pl.'s 2nd Round Suppl. Br. at 3. Even if privilege was not waived, plaintiff argued the documents and testimony claimed to be protected under RCFC 26(b)(4)(D) "must relate to subject matter that is distinct from the fact witness testimony for a dual-role witness like Mr. Kinneging," but here, "prior art and invalidity and/or unenforceability are precisely what Mr. Kinneging will admittedly testify about as a fact witness," so it cannot be protected under RCFC 26(b)(4)(D). *Id.* at 7–8.

### IV.    Applicable Law

This court's application of the RCFC is guided by case law interpreting the Federal Rules of Civil Procedure ("FRCP").  *See* RCFC at i, 2002 Rules Committee Note Revision ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").  Regarding the scope of discovery, the rules of this court provide:

> [P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1).  "Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court."  *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) (citations omitted); *see also Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (noting a "trial court 'has wide discretion in setting the limits of discovery'") (citation omitted)).  The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery."  *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016), *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018).  The Court "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.'"  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting FED. R. CIV. P. 26(b)(1) advisory committee's note to 1983 amendment).

Pursuant to RCFC 26(b)(5)(A), a party may "withhold[] information otherwise discoverable by claiming that the information is privileged."  RCFC 26(b)(5)(A).  "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice."  *Genentech, Inc. v. United States Int'l Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (citing *American Std. Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987)).  "The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients by assuring clients that their disclosures will be held in confidence."  *American Std. Inc.*, 828 F.2d at 745 (citing *Upjohn Co. v. United* States, 449 U.S. 383, 389 (1981)).  Attorney-client privilege "protects communications made in confidence . . . for the purpose of obtaining legal advice."  *Id.*  This privilege "does not protect either factual information or business advice."  *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)).  "To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case.  The attorney-client privilege cannot at once be used as a shield and a sword.  But, while the sword stays sheathed, the privilege stands."  *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (cleaned up).

"Generally[,] disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items."  *Genentech*, 122 F.3d at 1415.  "A party who discloses communications subject to the privilege, . . . waives the privilege with respect to the materials disclosed."  *Cormack v. United States*, 118 Fed. Cl. 39, 43 (2014) (citing *Genentech*, 122 F.3d at 1415).  Although a waiver

- 9 -

"applies to all other communications relating to the same subject matter," there is "no bright line test for determining what constitutes the subject matter of a waiver." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005) (citing *Genetech*, 122 F.3d at 1416). Rather, courts must "weigh the circumstances of the disclosure, the nature of the legal advice sought[,] and the prejudice to the parties of permitting or prohibiting further disclosures." *Id.* at 1349–50.

Under RCFC 26(b)(4)(D), "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." RCFC 26(b)(4)(D). A party, however, "may do so only: (i) as allowed in RCFC 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.* RCFC 26(b)(4)(D), however, "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness." Fed. R. Civ. P. 26(b)(4)[4] (advisory committee's notes to 1970 Amendment).

## V.    Whether Idemia Must Produce its Communications with Former Idemia Employee Mr. Kinneging

In response to Idemia's Motion for Leave, plaintiff requested Idemia to produce its communications with Mr. Kinneging. *See* Pl.'s Mot. for Leave Opp. at 1, 5–7. As discussed *supra* Section I, the parties initially disputed Idemia withholding four categories of documents based on privilege. *See* Idemia's SMTC Opp. at 1; Day 1 Tr. at 30:10–14. Before the 24 September 2024 oral argument, Idemia voluntarily agreed to produce categories (1) and (3), *see* 24 Sept. 2024 Order at 1–2, but still withheld categories (2) and (4), consisting of 16 email chains, *see* 10 Oct. 2024 Order at 1. During the 24 September 2024 oral argument, Idemia voluntarily agreed to also produce Email Chain 15—*i.e.*, its engagement agreement with Mr. Kinneging—and its consulting agreement with Mr. Kinneging and any invoices for payments to him. *See* 24 Sept. 2024 Order at 2. Further, during the 9 October 2024 oral argument, Idemia voluntarily agreed to produce Email Chains 1 and 9–11, *see* Day 2 Tr. at 91:9–94:11, 134:2–135:4, and agreed to produce redacted versions of the other Email Chains, *see, e.g.*, Day 2 Tr. at 110:21–111:8.

In producing redacted Email Chains 2–8, 12–14, and 16, Idemia redacted a total of about 60 lines across around 33 unique pages. Of the 60 redacted lines, 11 lines were Mr. Kinneging's personal notes from the time of his employment with Idemia copied-and-pasted into an email. Idemia later produced updated redactions to Email Chain 2 *sua sponte*, un-redacting Mr. Kinneging's personal notes. In providing updated redactions, however, Idemia failed to redact another line of Mr. Kinneging's notes—directly above the newly un-redacted lines. According to Idemia, following the updated redactions, the "only past communications that have not been produced (as they are redacted) fall separately into one of the following categories: (1) communications between Idemia's litigation counsel and Idemia's former employee, Mr. Kinneging, in preparation for trial about facts and circumstances that occurred during Mr.

---

[4] The Court notes RCFC 26(b)(4)(D) is identical to FRCP 26(b)(4)(D).

Kinneging's employment with Idemia[;] and (2) communications between Idemia's litigation counsel and Mr. Kinneging during his time as a[] non-testifying expert consultant (gathering his expert feedback on a particular prior-art reference)."  Idemia's 2nd Round Suppl. Br. at 2–3.

Before the Court now, after *in camera* review, is whether Idemia's final redactions are proper and justified.  The Court evaluates Idemia's arguments for redacting its counsel's communications with Mr. Kinneging based on:  (1) attorney-client privilege, *see* Idemia's SMTC Opp. at 3; (2) attorney work product doctrine, *see id.* at 4; and (3) RCFC 26(b)(4)(D) protections to non-testifying experts, *see* Idemia's 1st Suppl. Round Br. at 7.  The Court first analyzes the caselaw cited in the parties' briefings to determine the standard for protecting Mr. Kinneging's communications.  The Court then evaluates the appropriateness of Idemia's redactions.  Finally, the Court determines whether further narrowing of the redactions is necessary.

### A.  Whether Caselaw Supports Shielding Mr. Kinneging's Communications Under Privilege, Work Product, or RCFC 26(b)(4)(D)

To examine Idemia's arguments for withholding its documents, the Court reviewed the various cases cited in the parties' briefing.  The Court notes—and the parties agree—there is no binding precedent on these issues considering the lack of guidance from the Supreme Court and the Federal Circuit.  *See, e.g.*, Day 2 Tr. at 38:11–19 ("[THE COURT:]  So regarding the legal standard of things . . . you agree that there's no clear binding authority on whether a former employee's communications with . . . a former employer's counsel are privilege.  Is that correct?  [PLAINTIFF:]  Yes, Your Honor.").  As such, the Court begins by discussing the framework for attorney-client privilege and work product doctrine, set forth by the Supreme Court in *Upjohn Co. v. United* States, 449 U.S. 383 (1981), and then examines a variety of district court decisions reviewing similar arguments regarding attorney-client privilege and work product doctrine as they are applied to former employees.  Further, given Mr. Kinneging's former role as a non-testifying witness and additional protections asserted under RCFC 26(b)(4)(D), the Court examines several district court decisions discussing Rule 26(b)(4)(D) protections.

As an initial matter, the Supreme Court in *Upjohn* set forth the framework for protections under attorney-client privilege and work product doctrine.  On the issue of attorney work product, the majority in *Upjohn* held "Rule 26 accords special protection to work product revealing the attorney's mental processes," but the "rule permits disclosure of documents and tangible things constituting attorney work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship."  *Upjohn*, 449 U.S. at 400.  On attorney-client privilege, the Court held privilege applies to employees' communications with corporate counsel if the communications were from employees to counsel "at the direction of corporate superiors," the "communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were questioned in order that the corporation could obtain legal advice."  *Id.* at 394.  The majority in *Upjohn* "*decline[d] to decide*" whether "privilege should . . . apply to communications by . . . *former employees* concerning *activities during their period of employment*."  *Id.* at 394 n.3 (emphasis added).  The concurrence, however, argued for "a general rule" expanding privilege to former employees, stating:  "a communication is privileged at least when . . . an employee or *former employee* speaks at the direction of the management with an attorney regarding conduct

or proposed conduct within the scope of employment." *Id.* at 402–03 (Burger, C.J., concurring) (emphasis added). Considering the lack of Supreme Court guidance, the lower courts differ on whether attorney-client privilege should apply to former employees.

The Fourth Circuit in *In re Allen*, followed the concurrence in *Upjohn*, holding "the analysis applied by the Supreme Court in *Upjohn* to determine which employees fall within the scope of privilege applie[d] equally to former employees." 106 F.3d 582, 606 (4th Cir.1997), *cert. denied*, 522 U.S. 1047 (1998). In doing so, the court reasoned: "attorney-client privilege 'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out,'" *id.* (citing *Trammel v. United States*, 445 U.S. 40, 51 (1980)), and "'the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice,'" *id.* (citing *Upjohn*, 449 U.S. at 390). The court further noted "[m]ost lower courts have followed the [concurrence]'s reasoning and granted the privilege to communications between a client's counsel and the client's former employees."[5]

Idemia argued the Court should follow *Upjohn*'s concurrence and the reasoning in *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 39–42 (D. Conn. 1999). *See* Idemia's SMTC Opp. at 2–3. In *Peralta*, a former employee "had spoken with" a former employer's attorney prior to the deposition, and the former employer's counsel objected to questions regarding the contents of those conversations. *Id.* at 39. The District of Connecticut "conclude[d] that any privileged information obtained by [the former employee] while an employee of [the former employer], including any information conveyed by counsel during that period, remains privileged upon the termination of [] employment" because "attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves." *Peralta*, 190 F.R.D. at 41 (citation omitted). The court, however, noted although "the parties did not address the issue in their letter briefs, the communications [] may be shielded by the work-product doctrine." *Id.* at 42. According to the court, "[t]o the extent the communications are specifically [former employer's] conclusions or opinions, they may be covered by work product protection" because "the purpose of the work product doctrine is not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and [opposing counsel's] client, and disclosure of work product information to third persons does not waive the work-product immunity." *Id.* (cleaned up).

In contrast, plaintiff, in its Supplemental Motion to Compel, argued the Court should follow the District Court for the District of Columbia's reasoning on attorney-client privilege in *United States v. Philip Morris USA, Inc.* CV 99-2496 (GK), 2005 WL 8156890 (D.D.C. Jan. 21, 2005). *See* Pl.'s SMTC at 2. There, a former employee, who had served as general counsel,

---

[5] In a footnote, the Ninth Circuit also discussed how the *Upjohn* rationale applies to "ex-employees" because they "may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties" and "attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves." *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 658 F.2d 1355, 1361 n.7 (9th Cir. 1981), *cert. denied*, 455 U.S. 990 (1982).

"had three meetings" with the former employer's counsel "between the time he learned he would be called as a [] witness" and "when [] direct testimony was filed." *Philip Morris*, 2005 WL 8156890, at *1. During the testimony, the former employer's counsel "interposed privilege objections" as to the "content of those meetings." *Id.* "Under the circumstances presented," the court found "no attorney-client relationship to be protected" because the former employee "was no longer, at the time of the meetings," employed by the former employer, nor was "a 'client' seeking advice from" the former employer's counsel. *Id.* at *2. The court further noted "courts have relied on the *Upjohn* reasoning in limiting its applicability to current employees." *Id.* (citing caselaw from District of Columbia, Eastern District of Michigan, Southern District of New York, and Northern District of Illinois). While holding attorney-client privilege protection was unavailable, the court denied discovery into the meetings because "[t]estimony by [the former employee] about the substance of [] meetings with [the former employer's] counsel would reveal the latter's opinions, judgments, and thought processes[—]paradigmatic work product which is fully protected from disclosure." *Id.* at *3.

Plaintiff further cited *Corcoran v. HCA-HealthONE LLC*, No. 21-CV-02377-NRN, 2022 WL 1605296 (D. Colo. May 20, 2022). *See* Pl.'s 1st Round Suppl. Br. at 5. There, the District of Colorado found *Peralta*'s approach "reasonable and consistent with the objectives of preserving the corporate entity's privilege, while recognizing that the adversary has a right to know if the witnesses' testimony has been influenced in any way." *Corcoran*, 2022 WL 1605296, at *4. The court, however, did not adopt *Peralta*'s discussion of work product doctrine, holding work product shared by a former employer's counsel with the former employee was not protected if the opposing counsel seeks the work product while deposing the former employee. *See id.* The court explained "the fact that work product might have been shown by a lawyer to a third party does not mean that it can then be obtained directly from the lawyer" because "the showing of the document to a third party does not waive the work product protection," and emphasized "a third party has no duty to maintain such post-employment communications of trial strategy as confidential." *Id.* (citation omitted).

Idemia "fundamentally disagree[d]" with the court's reasoning in *Corcoran* regarding work product doctrine and argued Mr. Kinneging's former role as non-testifying expert provides further ground for shielding Mr. Kinneging's communications. *See* Day 2 Tr. at 62:22–63:1; Idemia's SMTC Opp. at 4. According to Idemia, Mr. Kinneging's former role as a non-testifying expert was proper and his communications are therefore protected under RCFC 26(b)(4)(D), based on the discussion and reasoning in *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, No. 1:04-CV-073-LJM-DML, 2009 WL 10861095 (S.D. Ind. Sept. 29, 2009). *See* Idemia's 1st Round Suppl. Br. at 2–3, 7–8. In *Centillion*, the Southern District of Indiana allowed a former employee fact witness to serve as a non-testifying expert for defendant. *See* 2009 WL 10861095, at *1–2, 4. There, the former employer refused plaintiff's request for "documents related to communications" between the former employer's counsel and the former employee serving as a non-testifying expert. *Id.* at *2. The court found the former employee served the former employer "as a consulting expert in anticipation of litigation" and the former employee's service was separate and distinct from providing the former employer

with factual details as a fact witness. *See id.* at *4. The court further concluded the inquiry on allowing such a dual role must be "whether the purported non-testifying expert consultant gathered new and different information during the consulting role." *Id.*

Idemia also cited *Sensormatic Electronics. Corp. v. WG Security Products, Inc.*, No. 2:04-CV-167, 2006 WL 1305166 (E.D. Tex. May 11, 2006)—which *Centillion* also cited—arguing Idemia's use of Mr. Kinneging as a non-testifying expert was proper. *See* Idemia's 1st Round Suppl. Br. at 2, 5–6. In *Sensormatic*, the Eastern District of Texas allowed a witness to have a dual role. *See* 2006 WL 1305166. There, after the former employee left the company, the former employee was retained by the company's counsel "as a non-testifying expert consultant" to assist in preparing for trial. *Id.* at *1. As part of the former employee's duties as a non-testifying expert, the former employee "analyzed [d]efendant's source code [never before seen] and compared it to the claims in the [asserted] patent." *Id.* Plaintiff also designated the former employee as a 30(b)(6) witness to testify on facts relating to "the development of the invention of the [asserted] patent" and "products that embody the patented technology." *Id.* The court held "opinions of [d]efendant's source code" were protected because the former employee "gained such . . . opinion after being employed as a consulting expert," and there was no "adequate showing of exceptional circumstances" to warrant deposition on the topic. *Id.*

Other courts have further allowed a witness to have a dual role and refined RCFC 26(b)(4)(D) protections to non-testifying experts to protect *only* information acquired or opinions formed *during the consulting role* and *in anticipation of litigation*. For example, in *Atari Corp. v. Sega of America*—which *Centillion* also cited—the Northern District of California allowed a former employee fact witness to serve as a non-testifying expert for defendant, but held "an expert may be deposed concerning information acquired or opinions formed prior to his employment by a party." 161 F.R.D. 417, 421 (N.D. Cal. 1994). Specifically, as the court held, the former employee, "as a fact witness, may be deposed with regard to knowledge he obtained and opinions he held as an actor," and "must give . . . opinions and facts known, except to the extent that they were obtained *exclusively* in anticipation or in preparation for trial" as a non-testifying expert. *Id.* at 421–22 (emphasis in original). The court further noted "where [plaintiff]'s discovery 'overlaps' information conveyed to [the former employee] as trial preparation material, [plaintiff] is entitled to that information to the extent [the former employee] can answer questions without reference to information obtained solely from [defendant] in anticipation of litigation." *Id.* at 422. The burden of proving an issue is "beyond discovery rests squarely with the party using the dual role expert." *Id.*

Likewise, in *Emerson Electric Co. v. Suzhou Cleva Electric Appliance Co.*—where Idemia's current counsel then represented plaintiff Emerson Electric Co.—the Eastern District of Missouri allowed for "a possible fact witness [to be] retained as a non-testifying expert" and "'wear two hats.'" No. 4:13-CV-01043 SPM, 2014 WL 5529152, at *3 (E.D. Mo. Nov. 3, 2014). Citing *Atari*, the court held in such circumstances, "courts have generally held Rule 26(b)(4)(D) precludes discovery of facts learned and opinions created during the expert's consulting work, but does not preclude discovery of facts and opinions that pre-date the expert's retention." The court noted the following guidance for the deposition of the dual role witness:

If [the fact witness] could have answered the question even without having done the consulting work for [plaintiff] that relates to this litigation, based on expertise and knowledge [the fact witness] formed prior to that consulting work, [the fact witness] must answer it—even if the answer might overlap with facts or opinions [the fact witness] provided to [plaintiff] during [the fact witness's] consulting work. On the other hand, if [the fact witness] can answer the question only because of [the fact witness's] consulting work for [plaintiff] (for example, because [plaintiff] provided him with information during the consultation that makes it possible for [the fact witness] to answer the question, or because a study of the patents he did during his consultation makes it possible for [the fact witness] to answer the question), [the fact witness] need not answer the question. . . . Thus, for example, if [d]efendants show [the fact witness] a picture of one of the Accused Products and ask [a question about it, the fact witness] must consider whether [the fact witness] could have answered that question . . . before [the fact witness's] consulting work for [plaintiff] began. If [the fact witness] could have, [the fact witness] must answer it, even if [the fact witness] answered a similar question for [plaintiff] after [the fact witness] was retained. If [the fact witness] could not have, [the fact witness] need not answer the question.

*Id.* at *4.

All these cases share a common theme—"privilege 'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out,'" and "'exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *In re Allen*, 106 F.3d at 606 (citations omitted). Considering the common theme in the various non-binding cases, the Court finds *Peralta* persuasive and consistent with the purpose of attorney-client privilege—"to encourage full and frank communication between attorneys and their clients." *Upjohn*, 449 U.S. at 389. In fact, plaintiff's counsel agreed with the reasoning in *Peralta* when asked at oral argument. *See* Day 2 Tr. at 45:10–20 ("[THE COURT:] [A]re the employee's communications with the attorney regarding responsibilities from when he used to work at the company subject to privilege[?] . . . [PLAINTIFF:] I would agree with that if the purpose of the communication is to render legal advice."); Day 2 Tr. at 45:24–47:14 ("[THE COURT:] [A]re the employee's communications with the attorney regarding interactions with the [p]laintiff in the lawsuit during the time he worked at the company privileged if those were within the scope of his employment? . . . [PLAINTIFF:] The communication with counsel, to the extent that recitation relates to . . . rendering of legal advice, would be privileged. . . . The communication from counsel would perhaps be privileged, but not the facts."); Day 2 Tr. at 82:3–9 ("[PLAINTIFF:] With respect to privilege, . . . I think I'm in agreement with [Idemia] that Peralta would . . . apply to communications with former employees[.]").

As discussed *supra*, an attorney's ability to use privilege to carry out its professional mission is not unrestricted. *See Upjohn*, 449 U.S. at 389. Specifically, as explained in *Corcoran*, work product protection is not waived just because a lawyer might have shown work product to a third party, but the "third party has no duty maintain such post-employment communications of trial strategy as confidential." 2022 WL 1605296, at *4. The Court agrees.[6] *See id.* ("If a lawyer is dumb enough to tell [] trial strategy to a former employee of the client, and the former employee has no ongoing duty of confidentiality with respect to information learned post-employment, then opposing counsel is free to inquire about it and the former employee can answer questions in deposition without infringing on the attorney work product doctrine."). Still, plaintiff's counsel agreed, during oral argument, there were no examples where courts allowed unfettered discovery into a dual role non-testifying expert's communications with counsel. *See* Day 2 Tr. at 122:24–123:3. In fact, plaintiff's reliance upon *Atari* and *Emerson* undermines its argument because both cases allowed for a witness to serve a dual role—a fact witness and non-testifying expert—and shielded the expert's opinions formed in anticipation of litigation. *Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4. The Court agrees with the reasonings in *Atari* and *Emerson* and finds their analysis helpful with respect to Mr. Kinneging's communications with Idemia in his non-testifying expert. Therefore, where, as here, the third-party is a non-testifying expert, RCFC 26(b)(4)(D) can protect the information acquired or opinion formed by the non-testifying expert *only in the scope of the consulting role and in anticipation of litigation*. *See Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4.

### B.  General Overview of Idemia's Redactions

Having considered the caselaw cited, the Court next examines Idemia's remaining redactions. As discussed *supra*, Idemia voluntarily agreed to fully produce all documents from Email Chains 1, 9–11, and 15 and redacted versions of Email Chains 2–8, 12–14, and 16. Idemia originally redacted about 60 lines across around 33 unique pages, but later un-redacted 10 lines (of the 60 lines originally redacted) from Email Chain 2 appearing to be Mr. Kinneging's personal notes, which were taken outside the scope of this litigation and copied-and-pasted into Email Chain 2. Per Idemia, the only remaining redactions include communications between Mr. Kinneging and Idemia's counsel: (1) "in preparation for trial about facts and circumstances that occurred during Mr. Kinneging's employment with Idemia" or (2) "during his time as a non-testifying expert consultant." Idemia's 2nd Round Suppl. Br. at 2–3.

---

[6] The Court is aware of one district court finding work product doctrine does not extend to communications and documents where third-party fact witnesses have "assisted counsel in litigation" and communicated with counsel regarding an "opinion letter." *Gonzales v. United States*, 2010 U.S. Dist. LEXIS 52950, at *5, *9 (N.D. Cal., May 4, 2010). There, the Northern District of California was not specific on the content of the communications and documents withheld based on work product doctrine, but noted plaintiff created a "dilemma by communicating with a third party witness . . . rather than hiring an . . . expert who was not involved in the underlying transaction," and ordered plaintiff to produce the documents withheld based on attorney work product. *See id.* at *5–7, *9–11 ("Plaintiff took a risk in using a fact witness to provide information rather than a legal expert who was not involved with the underlying transaction.").

Specifically, as discussed with Idemia during the *in camera* review, the redacted portions of Email Chain 2 contain a list of names of already-produced documents Mr. Kinneging provided to Idemia's counsel, which, according to Idemia, "relate to his employment." *See* Day 2 Tr. at 95:4–11.  Other redacted portions of Email Chain 2 contain Mr. Kinneging's descriptions of and commentary on the documents, which according to Idemia, are "communications back and forth with an ex-employee." *See* Day 2 Tr. at 96:25–97:9.

Email Chains 3–5, 12–14, and 16 are related and contain multiple repeated pages. Specifically, the redacted portions of Email Chains 3, 4, 12, and 16 contain correspondence to Mr. Kinneging "to understand facts pertaining to his role as an employee of Idemia and the interplay between those facts and this case," Day 2 Tr. at 101:18–24, communications regarding Mr. Kinneging's employment and "the timing of issues," Day 2 Tr. at 105:15–20, and "commentary relating to exchange of facts," Day 2 Tr. at 107:8–10.  The redacted portions of Email Chains 5, 13, and 14 also contain new information conveyed to Mr. Kinneging for his role as a non-testifying expert, *see* Day 2 Tr. at 125:10–16, "materials" sent to Mr. Kinneging "germane to his role as an ex-employee," *see* Day 2 Tr. at 125:2–9, an academic paper's title Idemia's counsel shared with Mr. Kinneging, which he did not know about before his role as a non-testifying expert, *see* Day 2 Tr. at 125:10–16, and communications with Mr. Kinneging regarding work experience at Idemia, *see* Day 2 Tr. at 128:12–25.  Email Chain 14 further contains Idemia's counsel's communications with Mr. Kinneging, seeking to "confirm certain factual aspects" of Mr. Kinneging's employment at Idemia.  *See* Day 2 Tr. at 137:15–140:25.

Finally, the redacted portions of Email Chains 6–8 contain the name of already-produced documents, which Mr. Kinneging "generated during his employment with Idemia," as well as Mr. Kinneging's commentary on the documents made during his time as a non-testifying expert. *See* Day 2 Tr. at 131:7–17, 133:6–17.

## C.  Whether the Redacted Contents Need to Be Further Un-Redacted

Having considered the contents in Idemia's redactions, the Court next applies the caselaw discussed *supra* Section V.A to the redacted content identified *supra* Section V.B to determine whether the redactions are appropriate.  In doing so, the Court also provides a guidance on which communications with Mr. Kinneging are protected.

### 1.  Whether the Redacted Information Is Protected as Attorney-Client Privilege

While plaintiff argued against *Peralta* in the supplemental briefs, plaintiff appeared to agree with *Peralta*'s reasoning at the 9 October 2024 oral argument.  *See supra* Section V.A.  To the extent plaintiff still disagrees, the Court finds the reasoning in *Peralta* persuasive and evaluates the redactions as such.  *See id.*

Although the communications between Idemia's counsel and Mr. Kinneging may be privileged, the parties agree "the underlying facts" are not.  *See supra* Section V.A.  The parties' agreement is consistent with the holding of *Upjohn*—"privilege only protects disclosure communications" and "does not protect disclosure of the underlying facts."  449 U.S. at 395. Given *Upjohn*'s holding, unless another protection such as RCFC 26(b)(4)(D) applies, facts—

whether Mr. Kinneging learned the facts before, during, or after his employment—cannot be protected. *See Upjohn* 449 U.S. at 395; *Peralta*, 190 F.R.D. at 41–42. Specifically, as discussed *supra* Section V.A, RCFC 26(b)(4)(D) protects the information acquired or opinion formed by Mr. Kinneging *only in the scope of his consulting role and in anticipation of litigation*. *See Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4. Accordingly, to the extent the communications are not protected by RCFC 26(b)(4)(D), if the "nature and purpose" of Mr. Kinneging's communications with Idemia was to learn facts related to" information Mr. Kinneging was aware of because of employment at Idemia, "such communications are [] privileged, whenever they occurred." *See Peralta*, 190 F.R.D. at 41. "To the extent that conversations between [Mr. Kinneging] and [Idemia] went beyond [Mr. Kinneging]'s knowledge" of the facts Mr. Kinneging was aware of during employment at Idemia or beyond "activities within the course of" Mr. Kinneging's former employment at Idemia, such communications are not privileged. *See id.* "If, for example, [Mr. Kinneging] informed [Idemia] of facts developed during the litigation, such as testimony of other witnesses, of which [Mr. Kinneging] would not have had prior or independent personal knowledge, such communications would" be discoverable *so long as* they are not protected by RCFC 26(b)(4)(D). *Id.*; *see supra* Section V.A.

As an example, the specifics of Mr. Kinneging's employment—apart from the communications—including his duties, the events he attended, his interactions in those events, and any other fact regarding Mr. Kinneging's employment or facts Mr. Kinneging was aware of during his employment at Idemia are not privileged. *See Peralta*, 190 F.R.D. at 41–42. Similarly, facts about Mr. Kinneging's employment he learned at Idemia are not privileged. Nor are they protected under RCFC 26(b)(4)(D) because, as Idemia agreed, such facts are inherently separate from Mr. Kinneging's role as a non-testifying expert. *See* Day 2 Tr. at 47:18–24 ("[THE COURT:] [T]he employee's communications with the attorney regarding the employee's opinions of the lawsuit against the ex-employer, opinions regarding the [p]laintiff suing the ex-employer or the claims of the lawsuit, are those subject to privilege under Peralta? [IDEMIA:] Your Honor, most likely no[.]"); Day 2 Tr. at 70:17–19 ("[IDEMIA:] [Plaintiff] can ask [Mr. Kinneging] whatever questions they want through deposition about [Mr. Kinneging's] experience at Idemia, what [Mr. Kinneging] did, what the documents say."); Day 2 Tr. at 118:23–119:3 ("[IDEMIA:] [Idemia is] not offering Mr. Kinneging to provide any opinions. He is not an expert witness . . . [or] a testifying expert in this case. . . . He's testifying about facts."); *compare* Idemia's 2nd Round Suppl. Br. at 3 ("Mr. Kinneging during his time as an non-testifying expert consultant ([Idemia] gather[ed] [Mr. Kinneging's] expert feedback on a particular prior-art reference)."), *with* Idemia's 1st Round Suppl. Br. at 2 ("Mr. Kinneging may be . . . a fact witness (e.g., providing fact testimony regarding his first-hand experience working with the ICAO organization on behalf of Idemia to develop the very concepts that [plaintiff] improperly patented and is now attempting to enforce against the U.S.).").

## 2. Whether the Redacted Information Is Protected as Attorney Work Product

As noted *supra* Section V.A, work product doctrine does not apply to communications between Idemia and Mr. Kinneging not involving Mr. Kinneging's role as an expert. Therefore, Idemia cannot claim attorney work product for any information not protected by RCFC 26(b)(4)(D) or attorney-client privilege under *Peralta*. *See supra* Section V.C.1; *infra* Section

V.C.3. The Court also notes Idemia failed to provide any argument regarding why its communications with Mr. Kinneging, in his role as a fact witness, are protected under work product doctrine. *See* Day 1 Tr. at 81:6–82:3; *see also* Day 1 Tr. at 82:5–8 ("THE COURT:  Are there any mental impressions of Idemia's attorneys that are in the communication[s]? [IDEMIA:]  Your Honor, sitting here at this moment I can't identify one to you."). Further, during *in camera* review, the Court could not identify any information in the redacted contents qualifying as attorney work product, outside of RCFC 26(b)(4)(D) protections.

### 3.  Whether the Redacted Information Is Protected Under RCFC 26(b)(4)(D)

The parties agree Mr. Kinneging will no longer serve as a consultant as of 9 October 2024. *See supra* Section I.B. Idemia further agreed, and the signed consulting agreement produced by Idemia shows, Mr. Kinneging signed the consulting agreement on 9 October 2023. *See* Day 2 Tr. at 36:12–15 ("THE COURT:  . . . [Mr. Kinneging] signed [the] consulting agreement on 9 October 2023[?] . . . [IDEMIA:]  Yes, correct."). Idemia and plaintiff also agree Mr. Kinneging will no longer serve as a consultant moving forward, and the consulting agreement was terminated on 9 October 2024. *See* Day 2 Tr. at 25:8–15 ("[IDEMIA:]  [N]ow that we've indicated that Idemia is not going to rely on the consulting on a moving forward basis, I think it makes sense for us to simply terminate that agreement with him and avoid the issue altogether. It sounds to me like my colleague would agree, and that would resolve this issue. THE COURT:  [Plaintiff], is that correct?  [PLAINTIFF:]  That's correct, Your Honor."); Day 2 Tr. at 67:10–13 ("[THE COURT:]  [Y]our position is that Idemia used Mr. Kinneging as a consultant but no longer will use Mr. Kinneging as a consultant, correct?  [IDEMIA:]  Correct, Your Honor, yes."). RCFC 26(b)(4)(D)'s protections therefore apply only to communications between Idemia's counsel and Mr. Kinneging, in his role as a non-testifying expert, that occurred between 9 October 2023 and 9 October 2024. *See supra* Section V.A; *see also Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4. Thus, communications outside that window are not protected by RCFC 26(b)(4)(D). *See supra* Section V.A. The remaining issue before the Court is whether the communications between Idemia's counsel and Mr. Kinneging within the one-year window are protected under Rule 26(b)(4)(D).

In its briefs and during the 9 October 2024 oral argument, plaintiff argued Mr. Kinneging's former role as a non-testifying expert was improper and his communications with Idemia as a non-testifying expert are therefore not protected under RCFC 26(b)(4)(D). *See supra* Section V.A. During oral argument, plaintiff could not recite any case where a court allowed discovery into information acquired and opinions formed by a non-testifying expert in preparation of litigation. *See* Day 2 Tr. at 121:16–124:22. The Court provided plaintiff additional opportunity to cite authority where the non-testifying expert's opinions learned during the course of litigation and formed in preparation of litigation were discoverable—yet, plaintiff again failed to cite a single case where a court held RCFC 26(b)(4)(D) did not apply. *See* Pl.'s 1st Round Suppl. Br.; Pl.'s 2nd Round Suppl. Br. In fact, as discussed *supra* Section V.A, all cases plaintiff cited allow a fact witness to serve as a non-testifying witness and allow only limited discovery into the information acquired and opinions formed by the non-testifying expert in anticipation of trial.

Plaintiff further argued RCFC 26(b)(4)(D) does not protect Mr. Kinneging's communications as non-testifying expert with Idemia's counsel because "there is no distinction between Mr. Kinneging's factual knowledge and the facts . . . advised on as a consultant." Pl.'s 1st Round Suppl. Br. at 3. Idemia, however, explained Mr. Kinneging's roles as a fact witness and non-testifying expert are distinct. *See* Day 2 Tr. at 118:23–119:3 ("[IDEMIA:] [Idemia] is not offering Mr. Kinneging to provide any opinions. He is not an expert witness . . . . [or] a testifying expert in this case. . . . He's testifying about facts."); *compare* Idemia's 2nd Round Suppl. Br. at 3 ("Mr. Kinneging during his time as an non-testifying expert consultant ("[Idemia] gather[ed] [Mr. Kinneging's] expert feedback on a particular prior-art reference)[.]"), *with* Idemia's 1st Round Suppl. Br. at 2 ("Mr. Kinneging may be . . . a fact witness (e.g., providing fact testimony regarding his first-hand experience working with the ICAO organization on behalf of Idemia to develop the very concepts that [plaintiff] improperly patented and is now attempting to enforce against the U.S.)[.]"). Having closely reviewed the withheld documents *in camera*, the Court was able to confirm Mr. Kinneging's roles as fact witness and non-testifying expert were separable—making the roles of non-testifying expert and former Idemia employee fact witness distinct. The separability and distinctiveness of Mr. Kinneging's former dual role therefore weighs in favor of protecting the communications under RCFC 26(b)(4)(D). *See Sensormatic*, 2006 WL 1305166, at *1–2; *Centillion*, 2009 WL 10861095, at *4.

Plaintiff cited *Atari* and *Emerson* to support the proposition RCFC 26(b)(4)(D) does not preclude discovery into Mr. Kinneging's communications, as "the scope of" Mr. Kinneging's "consultancy is the same as, or overlaps with, the information" Mr. Kinneging "knows as a result of being a fact witness in dispute." Pl.'s 2nd Round Suppl. Br. at 8–9. As discussed *supra*, however, Idemia was able to delineate separability and the Court did not see any evidence in the emails suggesting Mr. Kinneging's consultancy scope overlaps with the information Mr. Kinneging knows as a fact witness. *See* Day 2 Tr. at 118:23–119:3; *compare* Idemia's 2nd Round Suppl. Br. at 3, *with* Idemia's 1st Round Suppl. Br. at 2. Plaintiff also failed to provide any exceptional circumstances warranting plaintiff to inquire about Mr. Kinneging's opinions and facts learned in Mr. Kinneging's expert role. *See Sensormatic*, 2006 WL 1305166, at *2. Thus, the Court applies RCFC 26(b)(4)(d) protections to the communications surrounding Mr. Kinneging's role as a non-testifying expert during the consulting role and agrees with *Atari* and *Emerson*, holding "a fact witness, may be deposed with regard to knowledge he obtained and opinions he held as an actor," and "must give . . . opinions and facts known, except to the extent that they were obtained *exclusively* in anticipation or in preparation for trial as an expert for [defendant]." *Atari*, 161 F.R.D. at 421–22 (emphasis added); *see also Emerson*, 2014 WL 5529152, at *4 ("[I]f [the fact witness] can answer the question only because of [the fact witness's] consulting work for [plaintiff] (for example, because [plaintiff] provided [the fact witness] with information during the consultation that makes it possible for [the fact witness] to answer the question, or because a study of the patents [done] during [] consultation makes it possible for [the fact witness] to answer the question), [the fact witness] need not answer the question.").

### D.  Specific Documents Should Be Further Un-Redacted

Considering the standard outlined *supra* Section V.A, the redacted contents *supra* Section V.B, and application of the standard to the redacted contents discussed *supra* Sections V.C.1–3, the Court next makes specific rulings on the redacted contents. As an initial matter, the Court closely examined Idemia's redactions during *in camera* review and found no "smoking guns;" the remaining redactions, in fact, seemed "fairly innocuous." *See* Day 2 Tr. 106:10–15. The Court, however, examines the redactions to determine whether further redaction is required.

Regarding Email Chain 2, Idemia agreed portions of the redactions in Email Chain 2 are facts. *See* Day 2 Tr. at 96:2–5 ("THE COURT: So you would agree that that's all [the] facts on the list[?] [IDEMIA:] The list identifies the set of documents that are facts."). Specifically, Idemia repeatedly agreed the names of the documents attached in the emails are facts and cannot be privileged. *See* Day 2 Tr. at 42:22–23 ("[IDEMIA:] [N]o fact would be privileged pretty much under any circumstances."); Day 2 Tr. at 54:24–25 ("[IDEMIA:] So the underlying facts are discoverable."); Day 2 Tr. at 96:25–97:9 ("[IDEMIA:] [T]he underlying documents themselves are not [privileged]."). As facts cannot be privileged, the document names in the 1 December and 4 December 2023 emails cannot be privileged and therefore should be un-redacted. *See Upjohn*, 449 U.S. at 395. In the 1 December and 4 December 2023 emails, there are two sets of bulleted lists containing document names and Mr. Kinneging's commentary regarding the documents. Idemia must un-redact the document names referenced in both lists from Email Chain 2, specifically: (1) in the 1 December 2023 email, Idemia must un-redact the bolded names of documents immediately following the bullet points and before the en dashes; and (2) in the 4 December 2023 email, Idemia must un-redact the names of documents immediately following the bullet points and before any en dashes. The remaining redacted portions in those emails, however, are new discussions and commentary between Idemia's counsel and Mr. Kinneging about facts surrounding his former employment, *see* Day 2 Tr. at 96:25–97:9, 102:7–10, and are therefore privileged. *See Peralta*, 190 F.R.D. at 41–42. Specifically, Idemia averred, and the Court agrees, some portions of Email Chain 2 contain "commentary associated with" the facts, which did not exist during Mr. Kinneging's employment at Idemia and were drafted at Idemia's counsel's request. *See* Day 2 Tr. at 96:8–9. As Idemia explained, the commentaries did not "exist at the time [Mr. Kinneging] was an employee" and were "generated subsequently . . . at the request of Idemia's counsel, because Idemia's counsel [was] trying to understand what [Mr. Kinneging] was doing during his time as an Idemia employee." Day 2 Tr. at 98:20–99:5. Accordingly, the remaining Email Chain 2 redactions of the 1 December and 4 December 2023 emails specifically, all presently redacted information in the bulleted lists following the en dashes after the document names—are privileged and properly redacted as they are *communications* and *commentary* relating to facts surrounding Mr. Kinneging's former employment at Idemia. *See Peralta*, 190 F.R.D. at 41–42.

As discussed *supra* Section V.B, Idemia initially redacted 22 lines of the 1 December 2023 email in Email Chain 2, of which 11 lines appear to be personal notes taken by Mr. Kinneging during his former employment. Specifically, the 11 lines of notes appear to have likely been taken by Mr. Kinneging during his employment at Idemia for his personal use and not at a direction of Idemia's counsel. *See* Day 2 Tr. at 99:9–101:10 ("THE COURT: . . . [D]o you agree that the language there are notes that were taken during the time of employment? [IDEMIA:] That is my understanding, yes, Your Honor . . . . These were notes collected during a presentation by an individual identified at the top of the blue section. THE COURT: If that's

the case . . . the notes were not taken at the direction of any attorney, correct?  [IDMEIA:]  I believe that's correct, Your Honor, yes[.]").  Following the 9 October 2024 oral argument, Idemia produced a redacted version of Email Chain 2, in which all 11 lines of Mr. Kinneging's notes were redacted, but Idemia later produced a revised version of its redactions *sua sponte*.  In the revised version, Idemia un-redacted 10 of the 11 lines of Mr. Kinneging's personal notes, but chose to leave one line un-redacted.  Under *Upjohn*, an employee's notes cannot be privileged unless taken "at the direction of corporate supervisors" or counsel.  449 U.S. at 394.  As Idemia failed to provide any evidence suggesting the remaining redacted line was taken at the direction of Idemia's supervisors or counsel during Mr. Kinneging's former employment, Idemia must remove the redactions from the remaining line.  *See id.*  Specifically, Idemia must un-redact the line beginning with "Discuss" immediately above the 10 lines of recently un-redacted notes in the 1 December 2023 email in Email Chain 2.  *See id.*

Furthermore, for the reasons discussed *supra* Sections V.C.1–2, the Court determines the 15 September and 27 September 2023 emails in Email Chains 3–5, 12–14, and 16 do not relate to any facts from the time of Mr. Kinneging's employment and cannot be privileged.  *See Peralta*, 190 F.R.D. at 41–42.  Also, for the reasons discussed *supra* Section V.C.3, these emails were communicated before the consulting agreement was signed, *see* Day 2 Tr. at 36:12–15 ("THE COURT:  . . . [Mr. Kinneging] signed [the] consulting agreement on 9 October 2023[?] . . .  [IDEMIA:]  Yes, correct."), and are not entitled to RCFC 26(b)(4)(D) protections.  *See Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4; *Centillion*, 2009 WL 10861095, at *4.  The 15 September and 27 September 2023 emails in Email Chains 3–5, 13–14, and 16 are thus improperly redacted.  Idemia must un-redact and produce the 15 September and 27 September 2023 emails.  Additionally, in looking at the redactions of the 2 November 2023 email in Email Chains 3–5, 13–14, and 16 the Court determines these redactions are proper and protected under RCFC 26(b)(4)(D) as the email occurred after the consulting agreement was signed, *see* Day 2 Tr. at 36:12–15, and the email related to Mr. Kinneging's role as a non-testifying expert, *see Atari*, 161 F.R.D. at 421; *Emerson*, 2014 WL 5529152, at *3–4.

Moreover, for the reasons discussed *supra* Sections V.C.1–2, to the extent portions of the 10 November, 16 November, and 21 November 2023 emails[7] contain communications with Mr. Kinneging regarding his employment experience at Idemia, those communications are privileged.  *See Peralta*, 190 F.R.D. at 41–42.  For the reasons discussed *supra* Section V.C.3, the remaining portions of those emails relating to Mr. Kinneging's role as a non-testifying expert are also protected under RCFC 26(b)(4)(D) given those emails were sent after the consulting agreement was signed.  *See* Day 2 Tr. at 36:12–15.  Specifically, portions of the 10 November 2023 email is protected under RCFC 26(b)(4)(D) because Mr. Kinneging did not have knowledge of those items prior to his role as a non-testifying expert.[8]  *See* Day 2 Tr. 125:10–16;

---

[7] The 10 November, 16 November, and 21 November 2023 emails also appear in some of Email Chains 5 and 13–14.

[8] In reviewing Idemia's redactions to the 10 November 2023 email, the Court specifically asked Idemia's counsel to discuss the list numbered 1–5 and explain how each line was privileged.  Idemia claimed a host of protections covering the enumerated list.  When the Court went through the list line-by-line, Idemia supplied a multitude of justifications as to why the information was privileged.  Idemia's answered ranged from "pertain[s] to employment," "separate retained experts privileged communication," "materials created during [Mr. Kinneging's] time at Idemia,"

*Centillion*, 2009 WL 10861095, at *4; *Atari*, 161 F.R.D. at 421–22; *Emerson*, 2014 WL 5529152, at *3–4. Further, as established *supra*, the information Mr. Kinneging gained in his capacity as a non-testifying expert is distinct and separable from Mr. Kinneging's knowledge of the facts as a former Idemia employee. *See Sensormatic*, 2006 WL 1305166, at *1–2; *Centillion*, 2009 WL 10861095, at *4. The redacted portions of the 10 November, 16 November, and 21 November 2023 emails are protected under RCFC 26(b)(4)(D) and are therefore properly redacted. *See Centillion*, 2009 WL 10861095, at *4; *see also Atari*, 161 F.R.D. at 421–22; *Emerson*, 2014 WL 5529152, at *3–4; *Sensormatic*, 2006 WL 1305166, at *1–2.

Finally, the first redacted line of the 2 May 2024 email in Email Chains 6–8 and the first half of the redacted portion in the 26 June 2024 email in Email Chain 6 appear to be the name of the documents Mr. Kinneging generated during his employment at Idemia, *see* Day 2 Tr. 131:12–14, 132:11–12, and are restatements of facts, *see* Day 2 Tr. at 96:2–5. As Idemia repeatedly agreed that facts—including the document names included in the emails—cannot be privileged, *see* Day 2 Tr. at 42:22–23, 54:24–25, 96:25–97:9, those redactions are therefore improper. *See Upjohn*, 449 U.S. at 395. As such, Idemia must un-redact the entirety of the first redacted line in the 2 May 2024 email. Likewise, Idemia must un-redact the first half of the redacted portion of the 26 June 2024 email—specifically, un-redacting the redacted text until the "closing parentheses" and just before the word "that." The remaining redacted portions of the 2 May 2024 email in Email Chains 6–8 and the 26 June 2024 email in Email Chain 6, however, are privileged and properly redacted as they are purely communications and discussions between Mr. Kinneging and Idemia's counsel about his work at Idemia. *See Peralta*, 190 F.R.D. at 41–42.

## VI.    The Scope of Plaintiff's Questioning of Mr. Kinneging in the Deposition

Having ruled on Idemia's redactions, the Court next determines the scope of Mr. Kinneging's deposition. The Court anticipates Idemia might make the following objections during Mr. Kinneging's deposition to plaintiff's questions: (1) attorney-client privilege, *see* Idemia's SMTC Opp. at 3; (2) attorney work product doctrine, *see id.* at 4; and (3) RCFC 26(b)(4)(D) protections to non-testifying experts, *see* Idemia's 1st Suppl. Round at 7. The Court finds the standard outlined *supra* Section V is applicable to the scope of Mr. Kinneging's deposition. With that standard in mind, the Court next applies the caselaw to determine the scope of Mr. Kinneging's deposition. *See supra* Section V.

### A. Whether Mr. Kinneging's Post-Retirement Communications with Idemia's Counsel Is Protected as Attorney-Client Privilege

"exchange of communication with [a] retained nontestifying expert," to "[RCFC] 26(b)(4)(D)." *See* Day 2 Tr. at 115:5–117:17. In reviewing the enumerated list, the Court finds everything contained in the list relates to RCFC 26(b)(4)(D) consulting work. In keeping with agreement concerning Mr. Kinneging's ability to maintain a dual role during the time period he was retained as a non-testifying expert, and in staying consistent with other courts, like *Centillion*, the Court determines because the information contained in the enumerated list could not be asked about at a deposition, it should remain shielded from discovery and therefore redacted. *See Centillion*, 2009 WL 10861095, at *4; *see also Atari*, 161 F.R.D. at 421–22; *Emerson*, 2014 WL 5529152, at *3–4; *Sensormatic*, 2006 WL 1305166, at *1–2.

As discussed *supra* Sections V.A and V.C.1, the Court finds the reasoning in *Peralta* persuasive. Therefore, Mr. Kinneging's post-employment communications will be privileged based on the framework set out in *Peralta*. *See supra* Sections V.A, V.C.1. Accordingly, to the extent Mr. Kinneging's communications are not protected by RCFC 26(b)(4)(D), *see supra* Sections V.A and V.C.1, "if the nature and purpose of [Idemia's] communications with [Mr. Kinneging] was to learn facts related to" facts Mr. Kinneging "was aware of as a result of his former employment at Idemia, "such communications are . . . privileged, whenever they occurred." *See Peralta*, 190 F.R.D. at 41. And "[t]o the extent that conversations between [Mr. Kinneging] and [Idemia] went beyond [Mr. Kinneging]'s knowledge of the" facts Mr. Kinneging was aware of when he was employed at Idemia or beyond "activities within the course of" Mr. Kinneging's former employment at Idemia, such communications are not privileged. *See id.* "If, for example, [Mr. Kinneging] informed [Idemia] of facts developed during the litigation, such as testimony of other witnesses, of which [Mr. Kinneging] would not have had prior or independent personal knowledge, such communications would" be discoverable *so long as* they are not protected by RCFC 26(b)(4)(D). *See id.*

### B. Whether Mr. Kinneging's Post-Retirement Communications with Idemia's Counsel Is Protected as Attorney Work Product

The Court's reasoning discussed *supra* Sections V.A and V.C.2 are applicable to the scope of objections made during the deposition of Mr. Kinneging based on work product doctrine.

### C. Whether Mr. Kinneging's Communications with Idemia's Counsel Are Protected Under RCFC 26(b)(4)(D)

As discussed in Section V.C.3, considering the dates the consulting agreement was signed and terminated, the consulting agreement may protect under Rule 26(b)(4)(D) *only* communications between Idemia's counsel and Mr. Kinneging that occurred between 9 October 2023 and 9 October 2024, and relate to Mr. Kinneging's non-testifying expert role. *See supra* Sections V.A, V.C.3.

In addition to the guidance provided in Section V.C.3, the Court notes plaintiff can depose Mr. Kinneging regarding his insights on historical facts, such as recollection regarding inventorship of the asserted patents. *See supra* Sections V.A, V.C.3–1. To the extent Idemia prevents plaintiff from deposing Mr. Kinneging regarding his opinions related to his experiences prior to serving as a non-testifying expert, Idemia is precluded from introducing such testimony on those issues at trial. The Court's approach: (1) "ensures that [Idemia] cannot immunize from discovery the facts known and opinions held by a fact witness simply by retaining [the fact witness] as an expert and asking [the fact witness] questions about those facts and opinions[;]" and (2) "guards against the unfairness of allowing [plaintiff] to benefit from the effort and expense [Idemia] has incurred in hiring and working with a consulting witness to prepare its case." *Emerson*, 2014 WL 5529152, at *4. Moreover, given the technology at issue dates back two decades, the Court's approach is consistent with allowing defendants access to necessary information needed to adequately mount defenses through consulting former employees as experts, and asking questions regarding background on decades-old technology. *See id.*

## VII.    Conclusion

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's Supplemental Motion to Compel, ECF No. 372.  The Court hereby **DIRECTS** Idemia to **UN-REDACT** specific portions of Email Chains 2–8, 12–14, and 16 according to the instructions outlined *supra* Section V.D, and produce the updated Email Chains to plaintiff and the Court by **8:00 a.m. (ET) on 3 November 2024** to accommodate the early November deposition schedule clarified by the parties at the 9 October 2024 oral argument.

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge