# In the United States Court of Federal Claims

No. 17-1812

(Filed: 27 January 2025)[*]

```
***************************************
GIESECKE & DEVRIENT GMBH,               *
                                        *
                 Plaintiff,             *
                                        *
v.                                      *
                                        *
THE UNITED STATES,                      *
                                        *
                 Defendant,             *
                                        *
and                                     *
                                        *
IDEMIA IDENTITY                         *
& SECURITY USA, LLC,                    *
                                        *
                 Third-Party Defendant. *
                                        *
***************************************
```

    *John G. Flaim*, Baker & McKenzie, LLP, with whom were *Nicholas O. Kennedy* and *Mackenzie M. Martin*, all of Dallas, TX, and *Shima Roy*, of Chicago, IL, for plaintiff.

    *Michel E. Souaya*, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were *Conrad DeWitte* and *Grant Johnson*, as well as *Michael Kondrad*, Trade & Customs and Border Protection, with whom was *Benjamin Wastler*, all of Washington, DC, for defendant.

    *Richard L. Brophy*, Armstrong Teasdale, LLP, with whom were *Kyle Gottuso*, all of St. Louis, MO, and *Charlie Jonas*, of New York, NY, for third-party defendant Idemia Identity & Security USA, LLC.

## OPINION AND ORDER

**HOLTE, Judge.**

---

[*] This Order was initially filed under seal on 14 January 2025 pursuant to the Protective Order in this case, ECF No. 244. *See* 14 Jan. 2025 Order, ECF No. 419. The Court provided the parties the opportunity to submit proposed redactions by 5:00 p.m. (ET) on 21 January 2025. On 24 January 2025—three days after the Court's deadline—Idemia submitted proposed redactions without providing any explanation or justification. Upon inquiry by the Court regarding the basis for Idemia's proposed redactions, Idemia withdrew all its previously proposed redactions. The government submitted proposed redactions at the same time as Idemia, but its redactions were limited and minor in scope. The Court therefore accepts the government's redactions. Accordingly, the Court hereby reissues the Opinion, with a few minor, non-substantive corrections, and redacted language replaced with "[XXX]."

Plaintiff filed this 2017 action accusing the government of infringing patents related to e-passport readers. The Court issued a claim construction order on 6 January 2023. Discovery was initially set to close on 26 January 2024, but was extended until 22 November 2024 to accommodate significant discovery delays. Amid the parties' numerous discovery disputes, plaintiff filed two Motions to Compel—one against the government and another against third-party intervenor-defendant Idemia.

In its Motion to Compel the government, plaintiff requested the government to produce documents and source code related to newly accused devices identified in the parties' joint status reports and produce information related to e-passport personalization, quality control, and assurance. Plaintiff also requested the government to update its interrogatory responses, specifically seeking the government to provide greater specificity as to newly discovered information. At the 8 January 2025 oral argument, the government agreed to identify or produce all information responsive to plaintiff's Motion, unless subject to law enforcement privilege. The government and plaintiff further agreed to meet and confer to attempt to resolve issues regarding information being withheld based on law enforcement privilege. For the reasons *infra*, the Court grants-in-part plaintiff's Motion to Compel the government, ECF No. 373, and defers ruling on the issue of law enforcement privilege to allow the parties time to potentially reach resolution.

In its Motion to Compel Third-Party Defendant Idemia, plaintiff sought documents and source code relating to Idemia's legacy software for the B5000 Reader, arguing the legacy software operates similarly to third-party Secunet's software the parties agreed is relevant but could not be obtained during discovery. Plaintiff also sought documents related to the sale of Credential Authentication Technology ("CAT") systems to third-parties Vertex and K2, who then donate the CAT systems to the government. In this curious donation program, Vertex and K2—as airline representatives—purchase the CAT systems from Idemia and gift them to federal airports. The donors first establish a Memorandum of Understanding ("MOU") with the Transportation Security Administration ("TSA") to establish business need for an airport. Next, with an MOU and release letter from TSA approving purchase of CAT systems, the donors contract a procurement vehicle with Idemia to acquire and deliver the CAT systems. *See infra* Section V. Further, plaintiff requested Idemia to produce information related to the testing of the third-party's off-the-shelf Desko Reader, which Idemia incorporates into its kiosks. Lastly, plaintiff sought Idemia's profit and loss data for 2014–2016, which Idemia produced shortly after plaintiff's Motion, rendering this issue moot. During oral argument, plaintiff and Idemia further resolved their dispute over the production of information related to the testing of the Desko Reader. For the reasons *infra*, the Court grants-in-part plaintiff's remaining requests in its Motion to Compel Idemia, ECF No. 374.

**I. Factual Background and Procedural History Related to the Motions to Compel**

Since the Court's 6 January 2023 claim Construction Order, *see* ECF No. 293, the parties have navigated a number of discovery disputes.[1] The Court initially ordered fact discovery to

---

[1] A complete history of discovery disputes in this case and the Court's orders resolving the disputes can be found in the Court's 20 August, 6 September, and 7 November 2024 Orders. *See* 20 Aug. 2024 Opinion and Order, ECF No.

close on 26 January 2024. *See* 13 Feb. 2023 Order at 5, ECF No. 296. After extensions to accommodate discovery delays, however, discovery was set to close on 22 November 2024. *See* 18 Nov. 2024, ECF No. 407; 10 Oct. 2024 Order, ECF No. 390; 7 Aug. 2024 Order, ECF No. 358; 2 June 2024 Order, ECF No. 336; 2 Feb. 2024 Order, ECF No. 315. The current discovery disputes partially stem from various ongoing discovery disputes between the parties.

As to the Motions to Compel relating to Idemia, third-party intervenor-defendant Idemia filed a motion to compel plaintiff to produce source code and documents from plaintiff's subsidiary Secunet on 25 September 2023. *See* ECF No. 299. At the 22 May 2024 oral argument relating to that motion, *see* 26 Apr. 2024 Order, ECF No. 324; 17 May 2024 Order, ECF No. 327, Idemia repeatedly represented Secunet documents and source code is relevant to this case, *see* 22 May 2024 Oral Arg. Tr. at 12:4–10, 17:1–24 ("[IDEMIA:] And we don't know how the Secu[n]et software internally functions. And that internal function is, in our view, directly relevant to this case."), ECF No. 322; *see also* Idemia's Mot. to Compel at 9, ECF No. 300. Plaintiff also acknowledged this information is relevant given "discovery . . . sweeps broadly." *See* Pl.'s Resp. to Idemia's Mot. to Compel at 3, ECF No. 302; *see also* 22 May 2024 Oral Arg. Tr. at 23:13–23 ("[PLAINTIFF:] [T]o try . . . to parse [the product] into 'this is the Secu[n]et functionality,' or 'this is not the Secu[n]et functionality' *could have implications* [for plaintiff's infringement claims]." (emphasis added)). The Court agreed with both parties regarding relevance, but ultimately denied Idemia's Motion to Compel because "there [was] no indication [plaintiff] ha[d] the right, authority, or practical ability to obtain the source code-related documents Idemia s[ought]." 19 June 2024 Order, ECF No. 342. As such, the parties stipulated: "plaintiff will not rely on any source code of [Secunet] . . . which was requested by [Idemia] . . . and that [Secunet] has declined to produce [documents], in support of its infringement allegations or defense in this case . . . . This stipulation does not impact the parties' ability to rely on all other evidence, including the source code functionality of the Idemia products to the extent produced." *See id.* at 13 (internal quotations omitted).

Later, on 16 August 2024, plaintiff filed an emergency motion to compel Idemia to produce witnesses and the following information: (1) "source code . . . for Idemia's own legacy passport authentication software (and all related documents or communications)," and (2) "documents related to Idemia's sale of CAT systems to K2 and Vertex[] for use by the [g]overnment." *See* Pl.'s Emergency Mot. to Compel the Deposition of Idemia's Witnesses and the Production of Source Code at 2, ECF No. 360. Given the urgency of the issue, the Court addressed the issues in that motion only related to deposition of witnesses and deferred ruling on the production of information, but noted "given RCFC 26(b)(1) permits discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,' the 'legacy source code' from the B5000 reader is likely discoverable as it relates to the history and development of an accused reader." 20 Aug. 2024 Order at 3 n.3, ECF No. 364.

---

364; 6 Sept. 2024 Order, ECF No. 371; 7 Nov. 2024 Order, ECF No. 403; *see also* 6 Aug. 2024 JSR, ECF No. 357; 7 Aug. Order, ECF No. 358; 30 Aug. 2024 JSR, ECF No. 367; 15 Nov. 2024 JSR, ECF No. 406; 9 Dec. 2024 JSR, ECF No. 410.

As the Motions to Compel relating to the government, plaintiff initially filed a motion on 17 May 2024 to compel the government to produce: (1) documents and responses related to accused instrumentalities (e.g., [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXX]); and (2) supplemental responses to interrogatory No. 6 (*i.e.*, non-infringement contentions)). *See* Pl.'s Mot. to Compel Discovery Resps. at 10–14, ECF No. 328. After hearing arguments relating to this motion at a 22 May 2024 oral argument and 11 July 2024 status conference, the Court found plaintiff's motion moot because the parties had reached an agreement and plaintiff "could wait and see what the government request[ed] for supplementing its non-infringement contentions." *See* 11 July 2024 Order at 2, ECF No. 351.[2]

In a 6 August 2024 joint status report ("JSR"), plaintiff identified a set of instrumentalities ("6 August JSR Accused Instrumentalities") for which the government had not produced documents and/or source code. *See generally* 6 Aug. 2024 JSR, ECF No. 357. Then in a 30 August 2024 JSR, plaintiff further identified another set of instrumentalities ("30 August JSR Accused Instrumentalities") for which the government had failed to complete production. *See generally* 30 Aug. 2024 JSR, ECF No. 368.

Unable to resolve its discovery disputes with Idemia and the government, plaintiff filed the two Motions to Compel on 10 September 2024—one against each of defendants. *See* Pl.'s Mot. to Compel Gov't' to Produce Certain Source Code, Documents, Comms., and Things ("MTC Gov't"), ECF No. 373; Pl.'s Mot. to Compel Idemia to Produce Certain Source Code, Documents, and Comms. ("MTC Idemia"), ECF No. 374. The government and Idemia responded on 17 September 2024. *See* Gov't's Opp. to Pl.'s Mot. to Compel, ECF No. 378; Idemia's Opp. to Pl.'s Mot. to Compel ("Idemia's Opp."), ECF No. 377. On 30 September 2024, Giesecke replied. *See* Pl.'s Reply in Supp. of MTC Idemia ("Reply MTC Idemia"); ECF No. 384; Pl.'s Reply in Supp. of MTC Gov't, ECF No. 385.

Specifically, plaintiff's Motion to Compel the government sought the following: (1) information related to the 6 August JSR Accused Instrumentalities; (2) information related to the 30 August JSR Accused Instrumentalities; (3) documents related to e-passport personalization, quality control, and assurance testing; and (4) updated responses to plaintiff's interrogatories. *See* Pl.'s MTC Gov't. Plaintiff's Motion to Compel Idemia further involved four categories of documents: (1) legacy source code for the accused B5000 Reader and related documents and communications; (2) contracts and communications concerning the sale of CAT systems to third-parties for TSA; (3) testing documentation for the third-party, off-the-shelf Desko Reader; and (4) Idemia's profit and loss data from 2014–2016. *See* Pl.'s MTC Idemia.

On 5 December 2024, while plaintiff's Motions to Compel were pending, plaintiff filed a motion to partially strike defendants' invalidity contentions. *See* Pl.'s Mot. for an Order to Show Cause and to Partially Strike Defs.' Untimely Invalidity Contentions ("Motion to Strike"), ECF Nos. 408, 409. Defendants responded on 27 December 2024. *See* Defs.' Opp. to Mot. to Partially Strike Defs.' Invalidity Contentions, ECF Nos. 413, 414. Plaintiff replied on 7 January

---

[2] On 20 May 2024, the government filed a motion to compel plaintiff to produce documents related to the inventorship of U.S. Patent No. 7,837,119, *see* ECF No. 329, but the Court denied the government's Motion based on of attorney-client privilege. *See* 11 July 2024 Order at 2–3, ECF No. 351; 1 Aug. 2024 Order, ECF No. 354.

- 4 -

2025.  *See* Pl.'s Reply in Supp. of Its Mot. for an Order to Show Cause and to Partially Strike Defs.' Untimely Invalidity Contentions, ECF No. 416.

On 8 January 2025, the Court held an in-person, sealed oral argument regarding plaintiff's Motions to Compel and to substantively discuss other outstanding issues in the case. *See* 16 Dec. 2024 Order, ECF No. 414; *see also* 7 Jan. 2025 Order, ECF No. 416.  Specifically, the Court covered the following enumerated items:

(1) Designation of Mr. Tom Kinneging for his testimony in this case, *see* 9 Dec. 2024 JSR at 3–4, ECF No. 410;
(2) the government's production or confirmation of production of the 6 August JSR Accused Instrumentalities and all related documents, communications, and source code, *see* Pl.'s MTC Gov't at 6–8;
(3) the government's production of the 30 August JSR Accused Instrumentalities and all related documents, communications, and source code, including caselaw cited by the parties related to law enforcement privilege, *see id.* at 8–10;
(4) the government's production of information related to e-passport personalization and quality control and assurance testing, *see id.* at 10–11;
(5) the government's update of its interrogatory responses, *see id.* at 11–12;
(6) Idemia's production of its profit and loss data from 2014–2016, *see* Pl.'s MTC Idemia at 15–16;
(7) Idemia's production of information and source code relating to history of the B5000 Reader, *see id.* at 4–11;
(8) Idemia's production of documents relating to the sale of CAT systems for TSA, *see id.* at 11–14;
(9) Idemia's production of documents relating to the testing of the Desko Reader, *see id.* at 14–15;
(10) plaintiff's Motion to for Order to Show Cause and to Partially Strike Defendants' Invalidity Contentions, *see* Motion to Strike;
(11) plaintiff's notes regarding a forthcoming motion for sanctions, *see* 9 Dec. 2024 JSR at 2–3, 8–11; and
(12) the case schedule moving forward.

*See* 8 Jan. 2025 Oral Arg. Tr. ("Tr.") at 5:15–7:8, ECF No. 418.  As other issues arose following the completion of the parties' briefings, the Court also held substantive discussions regarding the government's production of the accused instrumentalities identified after the 30 August 2024 JSR ("Post-30 August JSR Accused Instrumentalities") and all related documents, communications, and source code, *see* 15 Nov. 2024 JSR at 2–8, ECF No. 406, and Idemia's denial of plaintiff's request to inspect the B5000 Reader, *see* 9 Dec. 2024 JSR at 2, 7–8.  *See* Tr. at 64:4–66:18, 74:5–75:19, 151:13–23.

## II.  Applicable Law

This Court's interpretation of the Rules of the Court of Federal Claims ("RCFC") is guided by case law interpreting the Federal Rules of Civil Procedure.  *See* 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (as amended July 1, 2019)

- 5 -

("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). RCFC 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." The Court's rules further permit a party to investigate matters within the scope of discovery under RCFC 26(b) through serving on any other party written interrogatories, *see* RCFC 33, and requesting the production or inspection of designated documents, electronically stored information, or things, *see* RCFC 34. Specifically, RCFC 34(a)(1)(A) permits a party to request the production of "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or compilations—stored in any medium from which information can be obtained. . . ."

Whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). The Court also "has wide discretion in setting the limits of discovery." *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (citation and internal quotation marks omitted); *see McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1357 (Fed. Cir. 2001) ("Trial courts are given broad latitude in managing and scheduling cases."). "Questions of the scope and conduct of discovery are . . . committed to the discretion of the trial court." *Florsheim Shoe Co., Div. of Interco, Inc. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984) (citation omitted)*; see also Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38, 62 (2020) (holding whether to grant or deny a motion to compel is within the Court's discretion). The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery." *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *and cert denied*, 139 S. Ct. 478 (mem.) (2018). In deciding the proper scope of discovery, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment).

## III. Parties' Agreements Reached During Oral Argument

At the 8 January 2025 oral argument, the Court held substantive discussions regarding the parties' positions related to the various discovery disputes. *See supra* Section I. As a result, the parties were able to resolve several issues through agreement.

For Issue (1)—Mr. Kinneging's designation for his testimony in this case—the parties agreed Mr. Kinneging's current designation, testifying in his individual capacity, will not be changed at this time, while acknowledging the parties may later challenge specific uses of Mr. Kinneging's testimony. *See* Tr. at 13:4–15 ("THE COURT: It sounds like it's a box of which rule the testimony fits in that might be the grey area, and the end result is going to be that Mr. Kinneging said what he said as a non-30(b)(6) witness, and to the extent that [Idemia] utilize[es] statements that [Mr. Kinneging] said [during his testimony] down the road, [plaintiff may] seek to block that as [im]proper 30(b)(6) statements that were not allowed for Mr. Kinneging. Is that

- 6 -

a fair assessment[?]  [PLAINTIFF]: Yes.  THE COURT: So it is what it is.  [IDEMIA]: Agreed."), 149:20–150:3 ("[THE COURT:]  So the first item was Mr. Kinneging's deposition, . . . so nothing to decide there. . . .  [PLAINTIFF]:  Correct. . . .  [IDEMIA]:  Yes, Your Honor, our position is the designations are what they are.").

On Issue (2)—the government's production or confirmation of production of the 6 August JSR Accused Instrumentalities and all related documents, communications, and source code—as agreed to by the government, the Court grants Issue (2) with respect to the AT10K, Regula 70X4M, Desko, AccessIS ATOM, Mercury OS NGP, and [XXXX] Test e-Passports accused instrumentalities.  *See* Tr. at 21:11–23, 24:14–27:7, 150:16–151:11.  Specifically, unless the government objects to production of the information based on law enforcement privilege, the government agreed it will produce information subject to Issue (2) and provide an explanation for why it was not produced earlier, or work with plaintiff to confirm completion of production of the information by identifying the already-produced documents.[3]  To avoid further delays, the government shall complete all production **on or before 22 January 2025**.  *See Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court has wide discretion in setting the limits of discovery.") (quotation marks omitted); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1357 (Fed. Cir. 2001) ("Trial courts are given broad latitude in managing and scheduling cases.").

Regarding Issue (3)—the government's production of the 30 August JSR Accused Instrumentalities and all related documents, communications, and source code—the government confirmed it has produced all information in its possession, custody, or control not subject to law enforcement privilege.  *See* Tr. at 31:8–33:8.  As to any information withheld based on law enforcement privilege—related to Issues (2), (3), (4), or (5)—the parties agreed to meet and confer to attempt to reach an agreement regarding production of the information **on or before 15 January 2025**.  *See* Tr. at 72:2–73:10, 151:11–152:11.  In doing so, the parties shall also consider modifying the protective order, if needed, to allow for the secure examination of sensitive information potentially subject to law enforcement privilege.  *See* Tr. at 151:24–152:25.  Should the parties fail to reach resolution on their own, the government agreed to prepare and submit a detailed privilege log—explaining the ground for withholding each item of information and accompanying legal authority for law enforcement privilege, such as application of law enforcement privilege in other patent cases and specifically the 3rd *Eye Surveillance, LLC v. United States* case discussed at oral argument—to plaintiff and the Court **on or before 29 January 2025**.  *See* 34:4–11, 39:5–12, 41:15–18, 46:25–47:5, 61:13–62:2, 72:2–73:10, 151:11–152:11.  To the extent the government will produce any documents not subject to law enforcement privilege, the government shall do so **on or before 22 January 2025**.  *See Schism*, 316 F.3d at 1300 ("A trial court has wide discretion in setting the limits of discovery.")

---

[3] Specifically, the government agreed to produce or confirm the completion of production of:  (1) Regula licenses; (2) communications between Customs and Border Protection ("CBP") and Gemalto/Thales regarding AT9000 and AT10K reader software changes, transitions, and troubleshooting; (3) the Government's source code, documents, and communications for integrating with the vendor SDKs for the accused Gemalto/Thales, Regula, and Access-IS readers; (4) CBP and vendor logs for the accused passport readers; (5) documents and communications regarding CBP's compliance and/or integration testing of e-Passports on behalf of the Department of State ("DOS") or Government Publishing Office ("GPO"); and (6) documents and communications regarding the use of the RTE8000 and AT9000 readers, or any others, by DOS, including in personalization/quality control/quality assurance of e-Passports.  *See* Tr. at 23:21–27:7; *see also* Pl.'s Reply in Supp. of MTC Gov't at 2–3, n.3, ECF No. 385.

(quotation marks omitted); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

For Issue (4)—the government's production of information related to e-passport personalization and quality control and assurance testing—the government confirmed it has produced documents not subject to law enforcement privilege. *See* Tr. at 68:22–69:21. The government further agreed to collaborate with plaintiff to identify the Bates numbers of—or otherwise produce—documents related to the Department of State's specific protocols for testing and reading of e-passports. *See* Tr. at 69:22–71:15, 153:1–10. To avoid further delays, the government shall do so **on or before 22 January 2025**. *See Schism*, 316 F.3d at 1300 ("A trial court has wide discretion in setting the limits of discovery.") (quotation marks omitted); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

As to Issue (5)—the government's update of its interrogatory responses—the government confirmed it has updated all its interrogatory responses, including responses to Interrogatory Nos. 2, 8, 10, and 11, absent using information subject to law enforcement privilege. *See* Tr. at 67:19–68:13, 153:11–18. The government further agreed to collaborate with plaintiff to ensure all corresponding documents are identified and produced. *See id.* To avoid further delays, the government shall do so **on or before 22 January 2025**. *See Schism*, 316 F.3d at 1300 ("A trial court has wide discretion in setting the limits of discovery.") (quotation marks omitted); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

For Issue (6)—Idemia's production of its profit and loss data from 2014–2016—the parties agreed Idemia produced all profit and loss data for those years prior to oral argument, making Issue (6) moot. *See* Tr. at 73:11–74:4 ("THE COURT: So is the discovery dispute as it relates to . . . [Issue (6)] . . . moot[?] [PLAINTIFF: Yes, Your Honor. . . . the profit and loss data was produced . . . a day or two before the response was filed.").

Regarding Issue (8)—production of documents relating to the sale of CAT systems for TSA's use—the government volunteered at oral argument to produce all existing documents and communications related to Idemia's sale of CAT systems for TSA's use to K2 or Vertex, such as emails, contracts, and purchase orders, **on or before 22 January 2025**. *See* Tr. at 109:13–24, 113:22–114:18, 154:22–155:14.

On Issue (9)—Idemia's production of documents relating to the testing of the Desko Reader—Idemia represented it already produced all relevant information to the extent they exist and explained they could not locate any further communication or documents related to the testing of the Desko Reader. *See* Tr. at 114:19–115:17, 121:17–19. Idemia further agreed to produce a short (1–2 sentence) declaration from Idemia's software engineer, Mr. Todd Picthall, confirming there is no further information responsive to the testing of the Desko Reader, subject to Request for Production Nos. 7 and 16. *See* Tr. 115:23–116:4, 121:20–122:1, 155:18–156:21.

Regarding Issue (10)—plaintiff's Motion for Order to Show Cause and to Partially Strike Defendants' Invalidity Contentions—the Court stayed plaintiff's Motion until at least after close

of discovery.  *See* Tr. at 137:16–138:2, 140:9–141:6, 156:22–157:3.  The parties agreed to meet and confer to narrow the issues without the Court's involvement.  *See id.*  After close of fact discovery and production of all documents, the parties shall then meet and confer to determine the scope of supplementation of contentions, serve supplemental contentions, and if any disputes regarding improper supplementation of the contentions remain, then file motions related to the final contentions.  *See id.*; *see also Schism*, 316 F.3d at 1300 ("A trial court has wide discretion in setting the limits of discovery.") (quotation marks omitted); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

For Issue (11)—plaintiff's notes regarding a forthcoming motion for sanctions—after hearing the parties' general positions, *see* Tr. at 141:7–149:12, the Court ordered the parties to further meet and confer.  *See* Tr. at 147:11–147:17 ("[THE COURT:]  Hopefully everybody can meet and confer as part of a discussion broadly and come to agreement on things . . . but to the extent [p]laintiff is having to go through motions to compel in order to get additional documents that are responsive, that very much seems to weigh in their favor."), 157:4–7.

Regarding Issue (12)—the case schedule moving forward—the parties agreed to propose a future schedule for any remaining discovery, and next steps in the case, with a JSR due **on or before 7 February 2025**.  *See* Tr. at 157:8–157:22 ("[THE COURT:]  [W]e'll order a JSR . . . in 30 days, and hopefully discovery will actually be closed then.").

As for the government's production of the Post-30 August JSR Accused Instrumentalities and all related documents, communications, and source code, the government agreed it will produce information related to the Post-30 August JSR Accused Instrumentalities and provide an explanation for why it was not produced, or work with plaintiff to confirm completion of production of the information by identifying the already-produced documents.  *See* Tr. at 64:11–66:18, 151:14–22.  To avoid further delays, the government shall do so **on or before 22 January 2025**.  *See Schism*, 316 F.3d at 1300 ("A trial court has wide discretion in setting the limits of discovery.") (quotation marks omitted); *McGinley*, 262 F.3d at 1357 ("Trial courts are given broad latitude in managing and scheduling cases.").

Regarding plaintiff's request to inspect Idemia's B5000 Reader, *see* 9 Dec. 2024 JSR at 2, Idemia agreed to allow plaintiff's expert to inspect the device as part of expert discovery.  *See* Tr. at 75:16–19 ("[THE COURT:]  [Idemia] will let [plaintiff's] expert inspect the B5000 reader?  [IDEMIA:]  Yes[.]").

### IV. The Court's Decision on Issue (7)—Idemia's Production of Information and Source Code Relating to History of the B5000 Readers

During oral argument, Idemia did not initially agree to produce documents related to Issue (7).  After the Court informed the parties it intended to grant plaintiff's Motion to Compel as it relates to Issue (7), however, Idemia's counsel agreed to consult with Idemia to search its databases and produce all relevant documents, communications, and source code subject to Issue

(7) **on or before 22 January 2025**. *See* Tr. at 95:24–96:7, 153:12–154:7. The Court granted Issue (7) for the following reasons.

For background, Idemia confirmed at oral argument it utilized its in-house legacy software for the B5000 Readers before its software operations were replaced with Secunet software. *See* Tr. at 81:20–83:23. Here, the parties dispute whether the legacy source code is relevant, however, as Secunet software replaced the legacy software, the relevance of Secunet software and its functionality bears on the relevance of the legacy source code. As such, the Court first determines whether the Secunet software is relevant. Throughout the course of this litigation, Idemia, in its own requests prior to January 2025, repeatedly represented Secunet documents and source code were relevant to the case. *See* 22 May 2024 Oral Arg. Tr. at 12:4–10 ([IDEMIA:] [W]e admit we call in the Secunet software. We admit we interface with the chip, but how we do that is directly relevant to the infringement issues in this case from our perspective. And without the source code, there's no way of knowing how that black box is operating."), 17:1–24 ("[IDEMIA:] We do not have any Secu[n]et source code . . . . [which is] compile[d] . . . in an object. And that object is in a machine language. It's not readable by a human anymore. That then becomes . . . a dynamically linked library . . . . So it is not correct to say that we know how the Secu[n]et software works. We do not. We know how to make calls into it. And we know that IT gives us information back out. What happens within that box is completely obscured to us 100 percent. So we don't have Secu[n]et source code. And we don't know how the Secu[n]et software internally functions. And that internal function is, in our view, directly relevant to this case."), ECF No. 322; *see also* Idemia's Mot. to Compel at 9, ECF No. 300. Plaintiff also previously conceded this information is relevant given "discovery . . . sweeps broadly." *See* Pl.'s Resp. to Idemia's Mot. to Compel at 3, ECF No. 302; *see also* 22 May 2024 Oral Arg. Tr. at 23:13–23 ("[PLAINTIFF:] [T]o try . . . to parse [the product] into 'this is the Secu[n]et functionality,' or 'this is not the Secu[n]et functionality' *could have implications* [for plaintiff's infringement claims]. I mean, we're looking at the product as a whole a[t] what it does, and we're not looking at it component by component and getting into the code.") (emphasis added). At the 8 January 2025 oral argument, Idemia further conceded the Secunet software is relevant. *See* Tr. at 76:7–77:20 ("THE COURT: So the parties agree that Secunet's software and its source code is relevant to this case? . . . [W]e spent like six months arguing about how it was. [IDEMIA]: We did."); *see also* Tr. at 83:10–16. As such, based on Idemia's own representations, information related to the Secunet software is relevant to the issues in this case.

Idemia argued its legacy source code is irrelevant because no accused instrumentality actually uses the legacy source code. *See* Idemia Opp. at 2, 3 n.3; Tr. 82:7–13, 86:17–21. A party need only satisfy the general provisions of RCFC 26(b)(1) when seeking the "discovery of the source code as relevant to its claims." *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 n.9 (Fed. Cir. 2013) (emphasis omitted); *see also Apple Inc. v. Samsung Elecs. Co.*, No. 11-1846, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012) ("There is, however, no source code exception to the production requirements of [Rule] 34. And so, subject to the proportionality and burden considerations imposed by [Rule] 26, when a patentee requests source code for one or more accused products, a defendant must produce it."). Here, Idemia replaced its in-house legacy software with the Secunet software, which performed *allegedly* similar functions to Idemia's legacy software. *See* Pl.'s MTC Idemia at 4–6; Tr. 83:10–83:23

("THE COURT: And is there any reason to assume the Secunet software ever operated similarly or provided a similar functionality as [Idemia]'s in-house software? [IDEMIA]: The only thing that we can assume is that both of them read an ePassport. As far as how they do it in the weeds, it is anyone's guess as to how that Secunet software works. THE COURT: So two phones both make phone calls, but an apple iPhone operates very differently than a Google Android phone? [IDEMIA]: Yes, and to know whether there is infringement, we need to be able to dig into the bits and bites to make sure we understand how it's actually making the phone call."); *see also* Tr. 84:9–85:5. Further, Idemia *allegedly* collaborated with Secunet in development of the Secunet software, providing its legacy software to Secunet in the process. *See* Tr. at 81:7–16 ("[IDEMIA:] [S]o, too, was our software a black box when it was given to Secunet."); *see also* Pl. MTC Idemia at 5–6; Tr. at 84:1–84:23, 88:2–10. At the oral argument, Idemia argued its provision of its legacy software to Secunet does not necessarily correlate to how the Secunet software operates because Idemia did not provide its source code to Secunet. *See* Tr. at 79:3–80:9 ("[IDEMIA]: We need to make a very clear distinction . . . between software and source code. . . . [Idemia] supplied the software that [it] created to Secunet. That is different from supplying the source code. The software does a thing, the source code explains how."). The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery." *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *and cert denied*, 139 S. Ct. 478 (mem.) (2018). Under such a "liberal treatment," the Court finds information related to Idemia's legacy source code relevant, especially given Idemia's provision of its software to Secunet and collaboration and communications related to the current software in operation. *See id.*; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)) ("[Relevance] has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *see also* 20 Aug. 2024 Order at 3 n.3 (noting "given RCFC 26(b)(1) permits discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,' the 'legacy source code' from the B5000 reader is likely discoverable as it relates to the history and development of an accused reader"), ECF No. 364.

Idemia next argued producing its legacy source code would be "unduly burdensome" because it is unclear "whether the code still compiles, works, or is in the correct database" as "Idemia does not maintain a debugged version." Idemia Opp. at 4–5. A party need only satisfy the general provisions of RCFC 26(b)(1) when seeking the "discovery of the source code as relevant to its claims." *Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 n.9 (Fed. Cir. 2013) (emphasis omitted); *see also Apple Inc. v. Samsung Elecs. Co.*, No. 11-1846, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012) ("There is, however, no source code exception to the production requirements of [Rule] 34. And so, subject to the proportionality and burden considerations imposed by [Rule] 26, when a patentee requests source code for one or more accused products, a defendant must produce it."). Whether the source code compiles, is debugged, or works is not at issue as the code—even if it contains bugs—could potentially be "relevant to determine how the device works, how it may have been changed over time, and the reasons for any such revisions." *See* Pl.'s MTC Idemia at 2. As to whether production of source code would be "unduly burdensome," at oral argument, Idemia conceded it had not completed an "exhaustive search" to determine what information related to Issue (7) has not been produced. *See* Tr. at 92:2–12 ("THE COURT: [I]s there any reason why there needs to be lengthy delay

and why that might take more time than should be expected to . . . . to search databases. [IDEMIA]: I don't think it should be lengthy. My understanding of the source code is that it does exists, but it's in a deprecated database, so there is going to need to be some breathing back to life of that[.]"); *see also* Tr. at 86:17–89:22, 92:2–19. As such, the Court does not find producing information related to Issue (7) unduly burdensome. *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 n.9 (Fed. Cir. 2013) (explaining "a party need only satisfy the general provisions of RCFC 26(b)(1) when seeking the "discovery of the source code as relevant to its claims." (emphasis omitted)); *Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38 (2020) ("There is no heightened burden on the discovery of source code in a patent infringement action.").

## V. The Court's Decision on Issue (8)—Idemia's Production of Documents relating to the Sale of CAT Systems for TSA's Free Use

The information disputed in Issue (8) relates to a unique procurement protocol regarding Idemia's sale of its CAT systems with integrated B5000 Readers to third-parties Vertex and K2, who then "donate" and "deliver" those systems to TSA to be used in federal airports free of charge. Pl.'s MTC Idemia at 2, 11–12; *see* Ex. I to Pl.'s MTC Idemia (6 Aug. 2024 Depo. Tr. of Idemia's 30(b)(6) Witness James Queenan) at 283:1–285:14 ("Q. So there was a subcontract between I[demia] and K2 to provide CAT system units to Delta? A. Yes. Q. And were CAT units manufactured and provided to Delta pursuant to that subcontract? A. They were not provided to Delta. They were delivered to TSA locations for donation to TSA by Delta, by Delta's representative, K2. Q. So I[demia] entered into a contract with K2, correct? A. Yes. Q. And the contract with K2 was for the manufacture and purchase of CAT systems, correct? A. Correct. . . . [T]his is arranged through TSA where through the CAP program, which is a donation process, donors need to establish a mem of understanding with TSA, which establishes business need for an airport. They then contract a procurement vehicle which may be a K2, who then contracts with us to prepare the units based on the fact that they've got an MOU from TSA and a release letter from TSA to us saying that, yes, it's okay to sell it to this organization for the purpose of this airport authority's use."), ECF No. 374-9. Strangely, instead of the government directly purchasing these CAT systems, Vertex and K2—as airline representatives—purchase them for TSA. *See* Pl.'s MTC Idemia at 11–12; *see also* Tr. at 96:14–97:18 ("[THE COURT:] [T]he CAT systems that I[demia] sells to third parties contain the B5000 reader? . . . [IDEMIA:] [E]ssentially [they are] identical to the product that is sold directly to the [g]overnment, . . . but [this volunteer program] seems to be a vehicle by which third parties can offset the cost of having these readers implemented at airports. . . . [S]ometimes airlines or other third party entities have an interest in things going more smoothly at certain airports, so they can take their resources and buy more of these systems and have them implemented at those airports. So it's not the [g]overnement saying, we want one of these units, it's a third-party buying th[ese] . . . [and Idemia] deliver[s] the unit to the third party and that third party presumably delivers it to be implemented at a certain airport. . . . [PLAINTIFF:] The [g]overnment enters into an MOU with a third party to supply a CAT system for TSA. Then that third party, in this case there were two third parties, contracts with I[demia] and issues a purchase order to I[demia] as opposed to the [g]overnment issuing a purchase order to I[demia]. I[demia] is getting paid by the third party to manufacture and supply a CAT system with a B5000 reader that is being used by TSA, but being paid for by a third party."). Although

Issue (8) was not directed at the government, at oral argument, the government volunteered to produce documents related to Issue (8).  *See supra* Section III.  At oral argument, Idemia did not initially agree to produce documents related to Issue (8), but when the Court informed Idemia it intended to grant plaintiff's Motion to Compel as it relates to Issue (8), Idemia's counsel agreed to produce documents related to Issue (8) **on or before 22 January 2025**.  *See* Tr. at 113:22–114:18, 154:22–155:14.  The Court now provides its reasoning for granting plaintiff's Motion as it relates to Issue (8).

In its briefing and at oral argument, Idemia argued this information is not relevant to the case.  *See* Idemia Opp. at 5–6; *see also* Tr. at 105:5–17.  The Court of Federal Claims generally "afford[s] a liberal treatment to the rules of discovery."  *Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *and cert denied*, 139 S. Ct. 478 (mem.) (2018).  Whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).  When questioned regarding relevance, Idemia agreed the information was relevant.  *See* Tr. at 102:22–103:1 ("THE COURT: I[demia]'s contracts and communications with the third parties discuss the donor program and the third parties donating the systems?  [IDEMIA]:  I believe those contracts have units and price information."), 103:15–19 ("THE COURT:  And I mean, you can't deny that the [g]overnment's use of the B5000 reader is [not] relevant to this case, correct?  [IDEMIA]:  The [g]overnment's use of the CAT system is certainly relevant to this case."), 110:17–112:2 ("THE COURT:  Because the actual products themselves are not related to the case?  [IDEMIA]:  The products themselves certainly are [relevant], the vehicle by which they make their way to the [g]overnment is curious, but again, proportionally speaking, there should be some terminus."); *see also* Tr. at 104:14–21.  In fact, Idemia previously agreed to produce the number of units sold to the government.  *See* Tr. at 106:5–9 ("THE COURT:  Well, so I[demia] already has provided [p]laintiff with information related to the number of unit[s] that might be in the [g]overnment's use now, correct?  [IDEMIA]:  Correct.").  As such, given the "liberal treatment" to discovery, the Court finds the information related to Issue (8) is relevant to this case as they relate to the sale of an allegedly infringing products for the purpose of the government's use.  *See Securiforce Int'l Am., LLC v. United States*, 127 Fed. Cl. 386, 400 (2016) *aff'd*, 879 F.3d 1354 (Fed. Cir. 2018), *and cert denied*, 139 S. Ct. 478 (mem.) (2018).  Whether information is relevant "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Next, the Court considers whether plaintiff could have obtained this information through other sources.  In deciding the proper scope of discovery, "the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."  *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1) Notes of Advisory Committee on Rules, 1983 Amendment).  Here, plaintiff learned about this "donation" program at the end of discovery.  *See* Tr. at 100:17–101:2 ("THE COURT:  When were V[ertex] and K2 first identified in this litigation? . . . [PLAINTIFF:] July [2024]. . . THE COURT:  And that's the first time that [p]laintiff learned about this donor program?  [PLAINTIFF]:  That's correct, Your Honor."); *see*

*also* Pl.'s MTC Idemia at 11–12 (citing deposition testimony of Idemia's witness from August 2024). At oral argument, Idemia recognized at this stage of litigation, plaintiff's only recourse for receiving the requested information is through Idemia. *See* Tr. at 100:1–14 ("THE COURT: So . . . you would agree that unless [p]laintiff serves a subpoena on [Vertex and K2], [p]laintiff's only way to receive these documents would be through [Idemia]? [IDEMIA]: I think that's right. . . . THE COURT: But by intervening in this case, the [Idemia] has subjected itself to discovery, correct? [IDEMIA]: With respect to the issues in this case, yes, Your Honor."). Given the relevance of the information to the case, and plaintiff's inability to otherwise obtain the information, the Court grants plaintiff's Motion to Compel as it relates to Issue (8). *See Heat*, 785 F.2d at 1024; *see also Univ. of W. Virginia Bd. of Trustees v. VanVoorhies*, 278 F.3d 1288, 1295–96 (Fed. Cir. 2002) (deferring to trial court's judgment "on matters closely associated with the standard functions of the adjudicative process," such as discovery matters, "as long as that judgment is not an abuse of the trial court's discretion"); *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court has wide discretion in setting the limits of discovery.").

Finally, at oral argument, Idemia claimed producing the documents would be duplicative, burdensome, and not proportional to the needs of the case, *see* Tr. at 103:23–106:4, but Idemia stated it lacked knowledge about what documents were even involved, *see* Tr. at 101:9–14 ("THE COURT: Roughly how many devices do we assume it to be? . . . [IDEMIA:] I don't know the number off the top of my head. . . . [PLAINTIFF:] You Honor, I think it's between 10 and 20 devices."), 103:8–14 ("THE COURT: Approximately how many documents are responsive to [p]laintiff's request? [IDEMIA]: I don't know the answer to that question, Your Honor. THE COURT: Is it dozens or hundreds? [IDEMIA]: I don't know the answer to that question, Your Honor."). The Court therefore finds production of the documents related to Issue (8) would not be unduly burdensome. *See Baron Servs., Inc. v. Media Weather Innovations LLC*, 717 F.3d 907, 913 n.9 (Fed. Cir. 2013) (explaining "a party need only satisfy the general provisions of RCFC 26(b)(1) when seeking the "discovery of the source code as relevant to its claims." (emphasis omitted)); *Thales Visionix, Inc. v. United States*, 149 Fed. Cl. 38 (2020) ("There is no heightened burden on the discovery of source code in a patent infringement action.").

## VI. Conclusion

As discussed in detail *supra*, the Court **GRANTS-IN-PART and DEFERS-IN-PART** plaintiff's Motion to Compel the government, ECF No. 373, and **GRANTS-IN-PART and FINDS MOOT-IN-PART** plaintiff's Motion to Compel Idemia, ECF No. 374. The Court also **STAYS** plaintiff's Motion to Strike, ECF Nos. 408, 409. The parties **SHALL** meet and confer and file a JSR **on or before 7 February 2025** to update the Court on completion of fact discovery and the parties' remaining disputes related to defendants' invalidity contentions. In the JSR, the parties **SHALL** further propose a case schedule moving forward.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE

- 15 -

                                                Judge